UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

BEGUALG INVESTMENT MANAGEMENT
INC., a Florida Corporation, GUSTAVO
RIOJAS, an individual, BERTHA A. SIMENTAL,
an individual,

      Plaintiffs,

v.

FOUR SEASONS HOTEL LIMITED, a Canadian
corporation,   FSM HOTEL LLC, a foreign
limited liability company,  MILLENNIUM PARTNERS,
LLC, a New York limited liability company,
MILLENNIUM PARTNERS FLORIDA
PROPERTY MANAGEMENT LLC, a foreign limited liability
company, MILLENNIUM TOWER CONDOMINIUM
HOTEL ASSOCIATION, INC., a Florida corporation
TERREMARK BRICKELL II, LTD., a
Florida limited partnership, TERREMARK BRICKELL II,
INC., a foreign corporation, INTERINVESTMENTS REALTY,
INC., a Florida corporation,

      Defendants.

_____/

## VERIFIED COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, Begualg Investment Management Inc., a Florida corporation, Gustavo Riojas,

an individual, and Bertha A. Simental, an individual (collectively "Plaintiffs"), sue Defendants

Four Seasons Hotels Limited, a Canadian corporation, FSM Hotel LLC, a New York limited

liability company, (collectively "Four Seasons") Millennium Partners, LLC, a New York limited

liability company, Millennium Partners Florida Property Management LLC, a foreign limited

liability company, Millennium Tower Condominium Hotel Association, Inc., a Florida

corporation, ("Millennium"), Terremark Brickell II, Ltd., a Florida limited partnership,

Terremark Brickell II, Inc., a foreign corporation (collectively "Terremark"), and Interinvestments Realty, Inc., a Florida corporation (collectively "Defendants") and state:

## INTRODUCTION

1.     This case involves a fraudulent scheme pursuant to which Defendants, acting in concert, lure unsuspecting purchasers into purchasing condo units in the "Four Seasons Hotel Miami" ("Four Seasons"), then subsequently persuade them to enter a sham Rental Program using false guarantees of "positive cash flows," "streams of income," and advertisements identifying Four Seasons's condo-hotel units as "great investment[s]."  Plaintiffs, who purchased six condo units for $4,072,705.00, fell victim to this fraudulent scheme.

2.     Contrary to guarantees of profit and steady revenue asserted by Defendants' agents, representatives and salespeople, Plaintiffs have been left in shambles.  Plaintiffs have yet to see their share of profits from rentals, repeatedly had access to their living quarters blocked, and have been forced to incur costs to maintain effectively vacant rental units.

3.     Defendants duped Plaintiffs into purchasing investments based on misrepresentations and false guarantees.  Through guarantees of positive cash flow from the Four Seasons' rental program, Defendants locked Plaintiffs into payments based on misrepresentations, all the while relying on the prestigious name: "Four Seasons."

4.     The allegations detailed below involve a scheme to commit fraud, including, but not limited to, mail and wire fraud, depriving Plaintiffs and other investors of capital and investment stability in violation of the Federal Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*., and Florida statutory and common law.  Defendants' racketeering enterprise involves a pattern of fraudulent misrepresentations and guarantees used to lock Plaintiffs into multi-million dollar contracts and sham agreements.  Defendants placed

Plaintiffs and other investors under the false belief that Defendants were capable of producing positive financial returns.  Defendants guaranteed this belief knowing it was false.  Plaintiffs are not the only victims – numerous other investors have been similarly harmed.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff, Begualg Investment Management, Inc.  ("Begualg") is a Florida for-profit corporation with its primary place of business at 1435 Brickell Avenue, Miami, FL 33131. A copy of Begualg's 2010 For-Profit Corporation Annual Report is attached as Exhibit "A."

6.      Plaintiff, Gustavo Riojas (Mr. Riojas) is the Vice President of Begualg Investment Management, Inc., and a resident of Mexico.

7.      Plaintiff, Bertha A. Simental (Ms. Simental), is the President of Begualg and a resident of Mexico.

8.      Defendant Four Seasons Hotels Limited ("Four Seasons") is an internationally recognized hotel chain with its principal place of business at 1165 Leslie Street, Don Mills, Ontario Canada, M3C 2K8.  Four Seasons currently has eighty-two (82) hotels in thirty-four (34) countries.  Exhibit "B" – Four Season's Website:  http://www.fourseasons.com/about_us/.

9.      Defendant FSM Hotel LLC, is a limited liability company established under the laws of Delaware with its principal place of business  at 1995 Broadway, 3rd Floor, New York, NY 10022.

10.      Defendant Millennium Partners LLC is a foreign limited liability company with its principal place of business at 1995 Broadway, New York, NY 10023.  Millennium Partners LLC is a developer of large-scale, mixed-use, luxury properties.  Exhibit "C" – Millennium Partners, *Homepage*, http://www.millenniumptrs.com/.

11.     Defendant Millennium Partners Florida Property Management LLC is a foreign limited liability company with its principal place of business at 1995 Broadway, New York, NY 10023.

12.     Defendant, Millennium Tower Condominium Hotel Association, Inc. is a Florida corporation, with its principal place of business at 1435 Brickell Ave., Miami, FL 33131.

13.     Defendant, Terremark Brickell II Ltd. is a foreign limited partnership with its principal place of business at 1995 Broadway, New York, NY 10023.

14.     Defendant, Terremark Brickell II Inc. is a foreign corporation with its principal place of business at 1995 Broadway, New York, NY 10023.

15.     Defendant, Interinvestments Realty, Inc., is a Florida corporation with its principal place of business at 730 N.W. 107 Ave., Suite 120, Miami, FL 33172.

16.     Pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) this Court has subject matter jurisdiction over the federal RICO claims.  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

17.     Pursuant to 18 U.S.C. § 1965(a), venue is proper in this district because Defendants are found, have agents, and/or transact business within the meaning of 18 U.S.C. § 1965 in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District.

18.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965(d).

## GENERAL ALLEGATIONS

19.     In or around July 2002, Mr. Riojas and Ms. Simental visited Southern Florida to explore investment opportunities.  Through the agents of Defendant, Interinvestments Realty,

Inc., a Miami real estate consulting firm, Mr. Riojas and Ms. Simental met with Karim Leon-Velarde ("Mrs. Leon-Velarde"), a sales agent of "Four Seasons Hotel Miami" ("Four Seasons"). Exhibit "D" – Printout from Four Seasons Residences Website naming Mrs. Leon-Velarde as its Licensed Real Estate Broker, http://www.iliveat.com/email_stationary/kleon-velarde.html.

20.     At the time Mr. Riojas and Ms. Simental had their meeting with Mrs. Leon-Velarde, the Four Seasons building was in its final stage of construction.  Upon completion, the building would be a multi-component residential-commercial facility consisting of the following:

        a.     a residential component consisting of approximately 186 luxury condominium units for both sale and lease;

        b.     a health/sports club and/or spa component of approximately 40,000 square feet;

        c.     an office component consisting of approximately 200,000 rentable square feet of office space;

        d.     a garage;

        e.     10,000 square feet of rentable conference venue space;

        f.     a hotel component consisting of the Four Seasons Hotel, Miami; and

        g.     a condominium component consisting of eighty-four (84) residential condominium-hotel units.

21.     A condominium-hotel is a real estate product that combines the features of a condominium and a hotel.  Typically located within a luxury hotel, condominium-hotel units are sold to owners as full-service vacation homes.  When the owners are not occupying their properties, the hotel will manage and rent the units – pursuant to its contract with the owners.  At the time Mr. Riojas and Ms. Simental met with Mrs. Leon-Velarde, Defendants were actively

promoting the Four Seasons condominium-hotel units.   A copy of the Four Seasons Hotel Residence Pamphlet is attached as Exhibit "E."

22.     During their meeting Mr. Riojas and Ms. Simental informed Mrs. Leon-Velarde that they, as well as Begualg, were looking for investment opportunities that would generate a positive cash flow.

23.     In response, Mrs. Leon-Velarde strongly recommended Four Seasons' condominium-hotels as a "great investment."   According to Mrs. Leon-Velarde, purchasers of Four Seasons' condo-hotel units were expected to enter a rental program for Four Seasons to manage and rent the purchased units, and for the purchasers and the hotel to share the revenues from unit rentals.  Mrs. Leon-Velarde provided Mr. Riojas and Ms. Simental with handwritten notes showing the cash flow projection for Four Seasons' hotel-condominiums.  Based on these notes and Mrs. Leon-Velarde's explanation, a condominium-hotel unit would generate profits for its owner once the hotel's occupancy rate reached 30%.  Mrs. Leon-Velarde then used different occupancy rates as examples to calculate return rates on each type of unit.  Using these numbers, Mrs. Leon-Velarde persuaded Plaintiffs that a Four Season's condominium-hotel unit would yield a much higher return than other investment options.  These expectations were based on Mrs. Leon-Velarde's representation that the condominium-hotel units that Plaintiffs were contemplating purchasing would be rented in the same manner and were located on the same floor as traditional Four Seasons hotel rooms.  In order to persuade Plaintiffs that Four Seasons condo-hotels were superior investment vehicles, Mrs. Leon-Velarde specifically emphasized the prestige of the Four Seasons brand, the higher occupancy rates at Four Seasons hotels, and the equal treatment Four Seasons would accord to the condominium-hotel units and traditional hotel rooms.

24.     Plaintiffs expressed concern about Four Seasons' obvious incentive to rent out their hotel rooms before condo-hotel units, in order to gain more profit.  However, Mrs. Leon-Velarde repeatedly assured Plaintiffs that condo-hotel units would be advertised and rented out in exactly the same way as Four Seasons' traditional hotel rooms.  In fact, Plaintiffs were told that traditional hotel customers would prefer to stay in condo-hotel units because of their better views, height, and beautiful kitchens.

25.     Unfortunately, the Four Seasons condo-hotel scheme, which Defendants advertised as a superb investment vehicle, was a sham.  Specifically, Defendants conspired and collaboratively devised a sophisticated scheme to lure unsuspecting purchasers into believing that their condo-hotel units would generate positive returns, while the scheme was designed to yield benefit only for Defendants.

26.     Pursuant to this scheme, Defendants designated a percentage of the total hotel rooms as condo-hotel units for sale, based on the hotel's anticipated vacancy rate.  By doing so, Defendants received multiple benefits including: (1) immediate income from the sales of condo-hotel units; (2) condominium management fees collected on those units on a monthly basis; and (3) designated "overflow" rooms if there was full occupancy of regular hotel units.  Four Seasons would sell hotel-condo units to obtain immediate proceeds, and then contrary to the representations to Plaintiffs, subordinate these units to ordinary hotel rooms for rental purposes: *they would be available to lodgers only if all Four Seasons traditional guest rooms were fully booked.*  Exhibit "F" – Rental Program Agreement 3.2(a).  Because the percentage of condo-hotel units within the hotel closely corresponded to the hotel's anticipated vacancy rate, as long as the Hotel was occupied at or below its normal rate, there was no chance the condo-hotel units would be used.  In fact, there was *no* plan to include the condo-hotel units in the Four Seasons'

central reservation system.  *Id*. at 3.2(c).  Thus, despite Defendants' contrary representations to the unit owners at the time of their purchase, under Defendants' scheme, it was unlikely that the condo-units would ever be rented to lodgers, assuming normal hotel occupancy rates.

27.     Pursuant to their scheme, Defendants made a number of fraudulent statements to prospective purchasers, including Plaintiffs, prior to and at the time of the condo-hotel purchase, including, but not limited to the following:

a.     All condo-hotel units would be treated exactly as Four Seasons hotel rooms in terms of their availability to lodgers;

b.     The condo-hotel units would generate positive cash flow for purchasers based on an estimated hotel occupancy rate of 30% or above.

c.     Investors were guaranteed optimal investment returns by purchasing condo-hotel units and participating in the rental program.

28.     Defendants used the Four Seasons brand name to lend legitimacy and prestige to the fraudulent condo-hotel scheme.  Purchasers gained comfort from the name Four Seasons, thinking such a prestigious hotel chain would not run a fraudulent investment program. Unfortunately, their trust was misplaced.

29.     The scheme was deceptive for the purpose of defrauding purchasers of their money.  Defendants' statements and representations in furtherance of this scheme were also fraudulent because they were false as to certain material facts at the time of their making and Defendants had full knowledge of their falsity.  As well, the false statements were made for the purposes of defrauding purchasers, Plaintiffs included, of their money.

30.     The misrepresentations outlined above were made not only face-to-face with potential buyers, but also through phone conversations, emails, and the U.S. mail.  In addition,

Defendants used phones, emails, cables, faxes, and the U.S. mail in the course of designing and implementing their fraudulent scheme.

31.     In terms of implementation, Defendants used a calculated, step-by-step approach to carry out the fraudulent scheme described above with respect to Plaintiffs and other individual purchasers.  At step one, a purchaser was lured into signing a condo-hotel purchase agreement. It was only after the real estate transaction was closed that purchasers were shown, for the first time, the core investment document – the Rental Program Agreement ("RPA") Ex. "F." Although the RPA contains terms and conditions that were different from the oral/promotional promises Defendants made before the closing (especially the rental terms and conditions), it was too late for the investors to back out of the deal because they had already purchased the unit(s).

32.     In an effort to appease investors, Defendants offered an attractive profit-split rate in the RPA:  80% for the unit owner and 20% for the hotel on revenue from the unit rental.  This rate served a mere decorative function because the scheme was designed so that it was almost impossible for unit owners to receive steady rental income.  The split rate was also commercially unfeasible, meaning no bona fide condo-hotel program could be sustained by the hotel at such a rate.

33.     On August 5, 2002, Plaintiffs entered into Purchase Agreements for six (6) "Millennium Tower Condominium Hotel" units: **3011** ($ 422,400.00), **3012** ($ 786,705.00), **3112** ($ 800,000.00), **3212** ($ 814,000.00), **3311** ($ 435,600.00) and **3312** ($ 827,200.00).  *See* Exhibit "G" – Example of Purchase Agreement, Condominium Hotel Unit 3011.  Plaintiffs paid a total of $4,072,705 for these six condominium units.  Prior to their execution of the purchase agreements, Plaintiffs were reassured by Mrs. Leon-Velarde, Julian Leon-Velarde, and Defendants' other agents, that Four Seasons would (1) advertise the condo-hotel units as rooms

within Four Seasons; (2) treat the rental of condo-hotel units as Four Seasons' hotel units; (3) permit use of the same 800 phone system used for all Four Seasons hotel chains to directly book condo-hotel units; (4) give traditional customers the choice to rent the hotel-condo units; and (5) make all amenities available for guests staying in the condo-hotel units.  Both the Velardes and Defendants' other agents also affirmed that all condos would be advertised and rented by Four Seasons Hotel Miami under the name *Four Seasons* and that Plaintiffs were guaranteed to receive a high profit stream for rooms which would "definitely" be rented out.

34.     Like other prospective purchasers, prior to their execution of the purchase agreements, Plaintiffs had not received the RPA, which outlined the terms and conditions of the Four Seasons's Rental Program.  Of course, Mr. and Mrs. Leon-Velarde, as well as Defendants' other agents, orally highlighted the RPA's contents.  Based on these representations, coupled with past guarantees outlining the projected profits for them, Plaintiffs signed the purchase agreements.   Once Plaintiffs entered the Purchase Agreements, Defendants succeeded in completing the first step of their fraudulent undertaking: Plaintiffs were locked into a $4,072,705 debt.

35.      Defendants did not show Plaintiffs the RPA until *after* they entered the purchase agreements.  The RPA was a 34-page document (not including the exhibits) in English only.  Both Mr. Riojas and Ms. Simental (signing for Plaintiffs) were native Spanish speakers.  When they asked for a Spanish version of the RPA, they were told that there was none.

36.     Relying on the prior representations and assurances of Defendants' agents and representatives and not suspecting any deviation from the oral promises Defendants had made before, Plaintiffs signed the RPA.

37.     The RPA actually contained complex terms and conditions that reflected Defendants' fraudulent scheme and were very different from Defendants' previous guarantees and representations in many material respects.  In particular:

a.     Pursuant to the RPA, while Plaintiffs would receive their eight-percent (80%) "split" of income generated by rental of their units, it was not, as the Leon-Velarde's represented, a split of gross revenues.  It was, in fact, to be a split of "Adjusted Income" Ex. "F" at ¶ 4.1(d). Adjusted income would include gross revenue for the units rental, *minus* (1) current daily access charges assessed under the Condo Hotel Declaration; (2) wholesaler commissions, if any, charged in connection with the guests' stay; (3) deposits into the FF&E Reserve for furnishing, fixtures and equipment costs, (4) any lodging taxes payable to governmental authorities based on such rental.  *Id*. at ¶ 4.1.  Defendants also received all non-rental income generated from a guest's stay at the hotel, including food and beverage services.  *Id*.

b.     Contrary to representations made by Mr. and Mrs. Leon-Velarde and Defendants' other agents, the RPA provided that rental of regular rooms in the Hotel would be provided "priority" over rental of condo-hotel units in the Rental Program.  *Id*. at ¶3.2(a)(D).

c.     The RPA also gave Defendants the exclusive authority to rent Plaintiffs' units. *Id*. at ¶ 3.1.  Although the RPA provided that the Hotel would maintain a reservation system to process all reservations received from prospective lodgers, it also provided that reservations for condo-hotel units would *not* be accessed through the central reservation system and database maintained by Four Seasons Hotel and its affiliates.  *Id*. at ¶ 3.2(c).  As a result, *prospective lodgers would not be able to select a unit through the Hotel's reservation system.*  Unless the Hotel recommended a condo-hotel unit, lodgers would not even know that condo-hotel units existed or were available.  In fact, pursuant to Defendants' fraudulent scheme, the condo-hotel

units were to be used as overflow accommodation options only – to be recommended to prospective lodgers only if *all* Four Seasons' hotel rooms were booked.  On information and belief, even when Four Seasons' hotel rooms were booked, the Hotel typically referred a prospective lodger to other luxury hotels, rather than try to rent them a condo-hotel unit, because the Hotel would receive net commissions from their competitors in amounts higher than what they would receive through profit sharing on condo-hotel units.

38.     The RPA also contained the following provisions:

a.      The Four Seasons hotel was to act as the rental agent of the condo-unit owners, and as such had the exclusive authority to rent and administer the subject units.  *Id*. at 3.1.

b.      In exchange for this authority, the Hotel undertook to use "reasonable commercial efforts" to rent out Plaintiffs' units.  *Id.* at ¶ 3.2.

c.      The Hotel was to establish practices "[d]esigned to achieve an equitable treatment of the Subject Unit with other Hotel Residence Units . . . ."  *Id*. at ¶ 3.2(a).

d.      The Hotel further agreed to (1) provide marketing, sales, and advertising  services to generate rentals of the condo-hotel units in the Rental Program, *id*.  at ¶ 3.2(b); (2) provide and maintain a reservations system as part of the hotel system to process reservations from prospective customers for the units, *id*. at ¶ 3.2(c); (3) negotiate all terms and conditions for the rental of the units with prospective customers,   *id*. at ¶ 3.2(d); (4) arrange to provide hotel services to occupants of Plaintiffs' unit, including both base and a la carte Hotel Services, *id.* at ¶ 3.2(e); and (5) collect all income generated and then submit an accounting to Plaintiffs within a 20-day period.  *Id.  at ¶* 4.1(c).

39.     Not surprisingly, Plaintiffs received *de minimus* rental income since their entry into the RPA.

40.     Though purportedly an "option," participation in the rental program was in fact compulsory because it was impractical for a condo-unit purchaser to enjoy and rent his unit without the basic services offered under the program.  In 2007, Plaintiffs withdrew four of his units (3012, 3112, 3212, and 3312) from the rental program in the hopes of renting the units on their own.  In retaliation, the hotel terminated concierge service, cable television, and phone service to the withdrawn units.  While withholding essential services, the hotel charged a $70 daily access fee for each guest occupying the units.  Defendants referred to the RPA to vindicate their right to terminate the services and charge access fees.  Plaintiffs were left without recourse.  Eventually Plaintiffs gave in and reinstated the four units in to the rental program.

41.     In or around mid 2008, Plaintiffs for the first time heard rumors at a condo-hotel owners' association meetings that the Hotel was not undertaking any effort to rent out condo-hotel units.  Afterwards, in an effort to investigate this rumor, Mr. Riojas placed several calls to the Hotel's reservation line 1-800-819-5053 ("800 number" used for all Four Seasons reservations in the United States and Canada), pretending to be a prospective lodger interested in a condo-hotel unit.  Mr. Riojas was told by the Hotel staff members that they were not aware of the availability of condo-hotel units for rent within the hotel.

42.     On information and belief, the hotel staff was trained to answer a prospective lodger's inquiry about condo-hotel units by either ignoring the inquiry, or by indicating that these units were available for long-term rental (over one month) only.

43.     Plaintiffs, after conducting their own research as to news media, publications, and the internet, have been unable to locate a single advertisement relating to condo-hotel units in their Four Seasons' hotel.

44.     Furthermore, Defendants have failed to account for customers that were booked by Four Seasons and actually occupied Plaintiffs' condo-hotel units.  Upon information and belief, Defendants profited by renting out units and withholding profits from Plaintiffs and investors alike.

45.     As well, the parking spaces corresponding to each of Plaintiffs' six (6) units are continuously occupied.  Plaintiffs have suffered inconvenience by not being able to park in their designated spaces within the Four Seasons parking lot – parking spaces that were provided with each condo-hotel unit purchased.  *See* Exhibit "H" – Example of Assignment of Right to Use Parking Space.  Either Defendants are renting out these parking spots as another source of profit, or the units themselves are being occupied without Plaintiffs' knowledge and consent – and without Plaintiffs receiving their share of the rental pursuant to the RPA.

46.     Since 2008, Mr. Riojas has been serving as the treasurer of the Four Seasons Condominium Association.  After reviewing documents relating to the Association and listening to other condo-hotel owners' complaints and concerns, he concluded that the Four Seasons condo-hotel program was not a failed business enterprise, but an artfully designed fraudulent scheme to take investors' money and enrich Defendants.

## THE ENTERPRISE

47.     At all times material to this complaint, Defendants together with its agents, representatives, employees, and subordinate officers, have and continue to constitute an "enterprise" as the term is defined in Title 18 U.S.C. §1961(4), which enterprise has engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise has been, and continues to use fraudulent misrepresentations and false profit projections transmitted through, among other things, U.S. mail, interstate and international courier services, and/or

interstate wire, to lure investors into purchasing high-end condo-hotel units in the Four Seasons Hotel and to offer them a rental program "investment" product that was designed to generate little to no return, but for the most part only costs.

## COUNT I
## RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO"), TITLE 18 U.S.C. § 1962(C)
## (ALL DEFENDANTS)

Plaintiffs reallege paragraphs 1 through 47 as if fully set alleged herein.

### Defendants' Activities

48.     Each Plaintiff is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

49.     Each Defendant is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

50.     From at least 2001, continuously through the present, Defendants and others, known or unknown, in Miami-Dade County, Florida, New York City, New York, Canada, and elsewhere, formed an association in fact for the common and continuing purposes and goals described herein, which constitutes an "Enterprise," within the meaning of 18 U.S.C. § 1961(4) (the "Four Seasons Enterprise").  The Four Seasons enterprise functions as a continuing unit within an ascertainable structure separate and distinct from that of the conduct or pattern of racketeering activity.

### Goal and Purposes

51.     The goal of the Four Seasons Enterprise has been, and continues to be, to perpetrate a fraud upon purchasers of Four Seasons condo-hotel units, and to generate illegally obtained money which has been distributed among Defendants.  In operating the Four Seasons enterprise, Defendants used willful misrepresentations, including fraudulent misrepresentations

of the material terms and conditions of the Four Seasons rental program and fraudulent guarantees of returns.  The fraudulent misrepresentations were designed to lure investors into entering an agreement for purchase of a Four Seasons condo-hotel unit, and eventually to enter a rental program agreement, the terms and conditions of which were mere instruments for Defendants to seek self-enrichment while depriving condo-unit owners of any benefit they paid for and were promised to receive.  Defendants were able to accomplish their goals by misusing instrumentalities of foreign and interstate commerce, including international wire facilities and mails.  Each of these fraudulent acts had a serious impact on interstate and foreign commerce because, among other things, the fraudulent activity involved transportation and communication between places in two or more states or between some place in the United States and some place outside the United States.

52.     As an integral part of the goal and purpose of the Four Seasons Enterprise, its members selected Miami, Florida, as the central location for activities relating to the Four Seasons Enterprise.

**The Laws that Defendants Violated While They
Conducted the Affairs of the Four Seasons Enterprise**

53.     Defendants violated federal law while engaging in the affairs of the Four Seasons Enterprises, as follows:

a.     wire fraud, in violation of 18 U.S.C. §1343; and

b.     travel in interstate and foreign commerce in aid of the Four Seasons Enterprise, in violation of 18 U.S.C. § 1952.

54.     Defendants were associated with and exerted control over the Four Seasons Enterprise or participated, directly or indirectly, in the conduct of the Four Seasons' Enterprise's affairs through a pattern of racketeering activity.

## The Pattern of Racketeering Activity

55.     In furtherance of their scheme, Defendants conducted, participated in or exerted control over, either directly or indirectly, the conduct of the Four Seasons Enterprise through a pattern of racketeering activity, or aided and abetted, counseled, or commanded the other unidentified parties who did so, by engaging in at least two acts of racketeering activity that have the same or similar criminal intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated acts of racketeering activity.  The patterns of racketeering activity, which, on information and belief, began in 2002 or before, and continues through and including the date upon which this Complaint is filed, and which the purchaser Plaintiffs expect to continue uninterrupted, involved racketeering acts or predicate acts – including multiple violations of the federal criminal laws of the United States – which amounted to and pose a threat of continued criminal activity.

56.     These acts of racketeering or predicate acts were related to the Four Seasons Enterprise and had similar purposes, participants, results, victims, and methods of commission. These acts of racketeering activity include, but are not limited to, the following:

### *Wire Fraud*

57.     Defendants, having devised or intended to devise a scheme or artifice to defraud for the purposes of obtaining money or property through false or fraudulent pretenses, representations, and guarantees, as described above, knowingly and willfully transmitted or caused to be transmitted by means of a wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for (a) the purpose of executing such scheme, in violation of 18 U.S.C. § 1343, and for (b) the purpose of executing such scheme, through the transfer of monies, in violation of 18 U.S.C. § 1343.

*Interstate and Foreign Travel or Transportation*
*In Aid Of The Four Seasons Racketeering Enterprise*

58.     Defendants, through their executives, investors, principals, directors, officers, employees, or representatives, knowingly and willfully traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce, with the intent to distribute the proceeds of an unlawful activity and to further an unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, in violation of 18 U.S.C. § 1952.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the damages that they suffered in an amount to be proven at trial, and as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

**COUNT II**
**CONSPIRACY TO VIOLATE 18 U.S.C. § 1962 (C) IN VIOLATION OF § 1962(D)**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

59.     From at least as early as 2002, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, to violate 18 U.S.C. § 1962(c), by conducting and participating, directly and indirectly, in the conduct of the affairs of the Four Seasons Enterprise, which engaged in, and the activities of which, affected interstate and foreign commerce.

60.     The racketeering activity described in Count I was part of a sophisticated and well organized scheme wherein each of the predicate acts relates to and directly advances one or more of the purposes of the scheme, as described above.

61.     The goal of the conspiracy was to enrich Defendants, their co-conspirators, and those who aided and abetted them, at the expense of condo-hotel residence investors, by facilitating, directing, or engaging in several overt acts, which constituted a pattern of racketeering activity as described in Count I.

62.     As a result of the unlawful actions of the conspiracy, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the damages that it suffered in an amount to be proved at trial, which as provided for by 18 U.S.C. § 1964, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

**COUNT III**
**VIOLATION OF CIVIL REMEDIES FOR CRIMINAL**
**PRACTICES ACT, § 772.103, FLA. STAT.**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

63.     From at least as early as 2002, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, associated together as part of the Four Seasons Enterprise, and unlawfully, willingly, and knowingly violated Section 772.103(3), Florida

Statutes by conducting and by participating, directly or indirectly, in the conduct of the affairs of the Four Seasons Enterprise through a pattern of criminal activity that involved multiple violations of the criminal laws of Florida, including organized fraud and communications fraud in violation of the Florida Communications Fraud Act, Section 817.034, Florida Statutes, and Theft, in violation of Section 812.014, Florida Statutes.

64.     The overall goal and purpose of the Four Seasons Enterprise was to enrich Defendants, its members and associates, through the repeated commission of related criminal acts.

65.     As alleged in paragraphs 1 through 47, Defendants engaged in or furthered a systematic, ongoing course of conduct with the intent to defraud, and to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of future acts, resulting in temporarily or permanently depriving numerous condo-hotel concept investors, including Plaintiffs, of rights to property or benefits thereof, or appropriating the victims' properties to their own use or to the use of other persons not entitled thereto, in violation of Section 817, Florida Statutes.

66.     As alleged in paragraphs 1 through 47, Defendants defrauded the purchasers of the use of their purchased units in Miami, and under information and belief, throughout the United States (and other nations), with the intent to either temporarily or permanently deprive them of their right to the property, in this case money, in violation of Section 812.014(1)(a), Florida Statutes or to misappropriate the money to Defendants' own use or to the use of a person not entitled thereto, in violation of Section 812.014(1)(b), Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM

PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the compensatory damages that it suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Section 772.104, Florida Statutes and for injunctive relief pursuant to Section 895.05(6), Florida Statutes and such other relief as the Court deems appropriate.

**COUNT IV**
**CONSPIRACY TO VIOLATE CIVIL REMEDIES FOR**
**CRIMINAL PRACTICES ACT, § 772.103, FLA. STAT.**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

67.     Defendants, and all non-defendant co-conspirators, conspired to violate the provisions of Section 772.103(1) and (3), Florida Statutes as alleged above.

68.     As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the compensatory damages that it suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Section 772.104, Florida Statutes and for injunctive relief pursuant to Section 895.05(6), Florida Statutes and such other relief as the Court deems appropriate.

## COUNT V
## FRAUDULENT INDUCEMENT
### (ALL DEFENDANTS)

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

69.     Plaintiffs agreed to purchase the condo-hotel units and enter the Purchase Agreement, as well as the RPA, as a result of misrepresentations and false guarantees made by Defendants.

70.     Defendants, acting through their agents, guaranteed profits through purchase of the units, misrepresented the fitness of Defendants' rental program, misrepresented the ability for Plaintiffs to obtain a return on their investment, and misrepresented the ability to use the units while gaining equity.

71.     Defendants made these representations knowing that they were false and for the purposes of inducing Plaintiffs to purchase condo-hotel units in the Four Seasons Hotel Miami, and to enter into the purchase agreement, the RPA agreement, and other collateral contractual documents between Plaintiffs and one or more of the multiple Defendants.

72.     But for the misrepresentations made by Defendants, Plaintiffs would not have purchased the Four Seasons condo-hotel units and entered into contractual relationships with Defendants.

73.     As a result of Plaintiffs' reliance on Defendants' misrepresentations in entering into contractual relationships with them, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demands judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and

INTERINVESTMENTS REALTY, INC., and such further relief as the Court deems just and equitable.

## COUNT VI
## FALSE AND MISLEADING ADVERTISING
### (All Defendants)

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

74.    Defendants and their agents, employees, and representatives disseminated or caused to be disseminated materially untrue advertisements regarding the Four Seasons condo-hotel units, especially the profitability of these units as investment instruments, and the nature and operation of the Four Seasons' condo-hotel rental program, in violation of Section 817.41, Florida Statutes.

75.    Defendants knew that their advertisement about the Four Seasons condo-hotel units were untrue, but nonetheless disseminated these false advertisements in order to induce the public to purchase Four Seasons' condo-hotel units in reliance on the false advertisements.

76.    Plaintiffs reasonably relied on Defendants' false advertisements to purchase the condo-hotel units.  As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand damages pursuant to Section 817.41, Florida Statutes. against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., together with award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

## COUNT VII
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNIFORM
## TRADE PRACTICES ACT
## (ALL DEFENDANTS)

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

77.     Defendants engaged in false, misleading, and deceptive actions in misrepresenting to Plaintiffs and investors alike that the Four Seasons rental program would be a profitable endeavor and a "great investment" while knowing it to be a fraudulent scheme in violation of the Florida's Deceptive and Unfair Trade Practices Act, Section 501.201, et seq., Florida Statutes.

78.     To advance their fraudulent scheme, Defendants used fraudulent and deceptive means to induce Plaintiffs into first purchasing the condo-hotel units, then badgering them into entering a rental program agreement containing terms and conditions vastly different from the guarantees, promises, and representations Defendants made prior to or at the time of Plaintiffs' purchase of the condo-hotel units, in further violation of Section 501.201, *et seq.*, Florida Statutes.

79.     As a result of such false, misleading, and deceptive activities, Plaintiffs have suffered actual damages.

WHEREFORE, Plaintiffs demand damages pursuant to Section 501.2105, Florida Statutes against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., together with award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

**COUNT VIII**
**CIVIL CONSPIRACY**
**(All Defendants)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein

80.     Defendants entered an express or implied agreement among themselves to achieve one common purpose – to induce Plaintiffs, and investors alike, to sign multi-million dollar Purchase Agreements.  Through the use of false guarantees, Defendants lured investors into entering contractual relationships with Defendants for the purposes of obtaining millions through purchase of condominium units, and subsequent fees relating to the upkeep of the hotel.

81.     In pursuit of this conspiracy, Defendants actively advertised their new edifice and its amenities to Plaintiffs, and investors alike, using the recognized "Four Seasons" name as a tool of deception.  Acting in concert, they eventually succeeded in inducing Plaintiffs into signing the Purchase agreement for over four million dollars, and subsequently the RPA.

82.     These wrongful acts by Defendants constituted a conspiracy to commit a tort against Plaintiffs.

83.     As a result of Defendants' conspiracy and their acts in furtherance of the conspiracy, Plaintiffs suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., and such further relief as the Court deems just and equitable.

## COUNT IX
## BREACH OF CONTRACT
### (Terremark and Four Seasons Defendants)

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

84.     Plaintiffs have a written and unexpired Rental Program Agreement with the Four Seasons and Terremark Defendants.

85.     Defendants, Terremark and Four Seasons, breached and remain in breach of numerous material provisions of the RPA, including but not limited to:

a.      The failure to "assist the owners" of Hotel Residence Units with the rental of their Hotel Residence Units to third parties by failing to properly and in good-faith operate and manage a rental program using the personnel and facilities of the Hotel.  *See* Ex. "F."  at *recitals* (E).

b.      The failure to provide reasonable and concerted efforts in the rental of Plaintiffs units.   *Id*. at ¶ 3.2.

c.      The failure to provide marketing, sales, and advertising services to attract lodgers and to arrange rental of the Hotel Residence Units in the Rental Program.  *Id.* at ¶ 3.2(b).

d.      The failure to properly account for and disperse rental income from Plaintiffs' units.  *See id.* at ¶ 4.1.

86.     As a result of Defendants' breach, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against the Terremark and Four Seasons Defendants for damages resulting from their breach of contract, and requests such further relief as the Court deems just and appropriate.

- 26 -

**COUNT X**
**UNJUST ENRICHMENT**
**(Terremark and Four Seasons Defendants)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

87.　　Plaintiffs conferred upon the Terremark and Four Seasons Defendants a benefit in the form of payment of money and use of Plaintiffs' premises in exchange for Defendants' good-faith operation of a rental program conforming to Defendants' guarantees and contractual promises.

88.　　Terremark and Four Seasons Defendants retained the benefits from Plaintiffs, knowing that Plaintiffs expected to be compensated for these benefits.

89.　　However, Terremark and Four Seasons have not fully and fairly compensated Plaintiffs.

90.　　Under the circumstances, it would be inequitable for Terremark and Four Seasons to retain the benefits without compensating Plaintiffs.

91.　　As a result of the foregoing, Defendants have been unjustly enriched to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants Terremark and Four Seasons, and any such further relief as the Court deems just and equitable.

**COUNT XI**
**BREACH OF FIDUCIARY DUTY**
**(Four Seasons)**

Plaintiffs reallege paragraphs 1 through 47 as if fully alleged herein.

92.　　Four Seasons, as Plaintiffs' rental agent, owes a fiduciary duty to Plaintiffs.

93.　　Four Seasons has breached its fiduciary duty to Plaintiff by:

a.      Pursuing its own interests and the interests of its co-Defendants in derogation of Plaintiffs' interests in having their condo-hotel units rented;

b.      Failing to use reasonable efforts to promote Plaintiffs' condo-hotel units as rental property;

c.      The failure to undertake reasonable marketing, sales, and advertising services to attract lodgers and to arrange rental of Plaintiff's condo-hotel units.

d.      Directing rental opportunities away from Plaintiffs and towards other luxury hotels.

94.     Because of Four Seasons' breach of its fiduciary duty as an agent to Plaintiffs, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against Four Seasons for damages resulting from its fiduciary duty, and requests such further relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all matters so triable.

Dated: June 30, 2010

s/ Gary E. Davidson
Michael Diaz, Jr. (Florida Bar Number:  606774)
Attorney E-mail Address:  mdiaz@diazreus.com
Carlos F. Gonzalez (Florida Bar No. 0494631)
Attorney E-mail Address: cgonzalez@diazreus.com
Brant C. Hadaway (Florida Bar Number: 0494690)
Attorney E-mail Address: bhadaway@diazreus.com
Gary E. Davidson (Florida Bar No. 0069094)
Attorney E-mail Address:  gdavidson@diazreus.com
DIAZ REUS & TARG, LLP
100 Southeast 2nd Street
2600 Bank of America Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

*Counsel for Plaintiffs*