UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**MIAMI DIVISION**

**CASE NO.: 10-22153-CIV-MARTINEZ-BROWN**

BEGUALG INVESTMENT MANAGEMENT
INC., a Florida Corporation, GUSTAVO
RIOJAS, an individual, BERTHA A. SIMENTAL,
an individual,

      Plaintiffs,

v.

FOUR SEASONS HOTEL LIMITED, a Canadian
corporation, FSM HOTEL LLC, a foreign
limited liability company,  MILLENNIUM PARTNERS,
LLC, a New York limited liability company,
MILLENNIUM PARTNERS FLORIDA
PROPERTY MANAGEMENT LLC, a foreign limited liability
company, MILLENNIUM TOWER CONDOMINIUM
HOTEL ASSOCIATION, INC., a Florida corporation
TERREMARK BRICKELL II, LTD., a
Florida limited partnership, TERREMARK BRICKELL II,
INC., a Florida corporation, INTERINVESTMENTS REALTY,
INC., a Florida corporation,

      Defendants.

_____/

## VERIFIED *AMENDED* COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, Begualg Investment Management Inc., a Florida corporation, Gustavo Riojas,

an individual, and Bertha A. Simental, an individual (collectively "Plaintiffs"), sue Defendants

Four Seasons Hotels Limited, a Canadian corporation, FSM Hotel LLC, a foreign limited

liability company, (the "Four Seasons" defendants), Millennium Partners, LLC, a foreign limited

liability company, Millennium Partners Florida Property Management LLC, a foreign limited

liability company, Millennium Tower Condominium Hotel Association, Inc., a Florida

corporation, (the "Millennium" defendants), Terremark Brickell II, Ltd., a Florida limited

partnership, Terremark Brickell II, Inc., a Florida corporation, (the "Terremark" defendants), and Interinvestments Realty, Inc., a Florida corporation (collectively "Defendants") and state:

## INTRODUCTION

1.     This case involves a fraudulent scheme pursuant to which Defendants, acting in concert, and as agents of one another, lured unsuspecting buyers into purchasing condo units in the "Four Seasons Hotel Miami" ("Four Seasons"), then subsequently induced them to enter a sham Rental Program through misrepresentations and false guarantees of "positive cash flows," "streams of income," and advertisements identifying Four Seasons's condo-hotel units as "great investment[s]."  Plaintiffs, purchasers of six condo-hotel units for $4,072,705.00, fell victim to this fraudulent scheme.

2.     Contrary to guarantees of profit and steady revenue asserted by Defendants' agents, representatives and salespeople, Plaintiffs have been left with nothing.  Plaintiffs have yet to see their share of profits from rentals, have suffered the indignity of being blocked from access to their living quarters, and have been forced to incur costs to effectively maintain vacant rental units.

3.     Defendants   duped   Plaintiffs   into   purchasing   investments   based   on misrepresentations and false guarantees.  Using false claims that the Plaintiffs would obtain positive cash flows from the Four Seasons' rental program, Defendants locked Plaintiffs into paying a premium for condo-hotel units and subsequently entering into a sham Rental Program, all the while relying on the prestigious brand name: "Four Seasons."

4.      The allegations detailed below involve a scheme to commit fraud, including, but not limited to, mail and wire fraud, depriving Plaintiffs and other investors of capital and investment stability in violation of the Federal Racketeer Influence and Corrupt Organization Act

("RICO"), 18 U.S.C. §§ 1961, *et seq*., as well as Florida statutory and common law.  Defendants' racketeering enterprise involves a pattern of fraudulent misrepresentations and guarantees willfully and deliberately used to lock Plaintiffs into multi-million dollar contracts and sham agreements.  Using the prestigious Four Seasons brand as a hook, Defendants knowingly placed Plaintiffs and other investors under the false belief that their investments would result in positive financial returns.  Defendants guaranteed this belief knowing it was false.  Plaintiffs are not the only victims – numerous other investors have been similarly harmed.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Begualg Investment Management, Inc. ("Begualg") is a for-profit corporation with its primary place of business at 1435 Brickell Avenue, Miami, FL 33131.  Begualg was formed on August 28, 2002 for the purpose of holding the right, title, and interest to the condo-hotel units purchased by Mr. Riojas and Mrs. Simental.  A copy of Begualg's 2010 For-Profit Corporation Annual Report is attached as Exhibit "A."

6.     Plaintiff Gustavo Riojas ("Mr. Riojas") is the Vice President of Begualg Investment Management, Inc., and a citizen and resident of the Republic of Mexico.

7.     Plaintiff Bertha A. Simental ("Mrs. Simental"), wife of Mr. Riojas, is the President of Begualg and a citizen and resident of the Republic of Mexico.

8.     Defendant Four Seasons Hotels Limited ("Four Seasons") is an internationally recognized Hotel chain and a Canadian corporation established under the laws of the Province of Ontario, Canada, with its principal place of business at 1165 Leslie Street, Don Mills, Ontario Canada, M3C 2K8.  Four Seasons currently operates eighty-two (82) Hotels in thirty-four (34) countries.  Exhibit "B" – Four Season's Website:  http://www.fourseasons.com/about_us/.

- 3 -

9.      Defendant FSM Hotel LLC ("FSM") is a limited liability company established under the laws of Delaware with its principal place of business designated as "c/o Millennium Partners, 1995 Broadway, New York, NY 10022."  FSM was created and was, at all pertinent times, controlled by Defendants Millennium Partners, LLC ("Millennium Partners") and Terremark Brickell II Ltd. ("Terremark"), and acted in unison with and on behalf of Millennium Partners and Terremark.  FSM, Millennium Partners, and Terremark have each acted as agents for one another.

10.      Defendant Millennium Partners LLC ('Millennium Partners") is a foreign limited liability company with its principal place of business at 1995 Broadway, New York, NY 10023.  Millennium Partners LLC is a developer of large-scale, mixed-use, luxury properties.  Exhibit "C" – Millennium Partners, *Homepage*, http://www.millenniumptrs.com/.

11.      Defendant, Terremark Brickell II Ltd. ("Terremark") is a Florida limited partnership with its principal place of business designated as "c/o Millennium Partners/Corp. Compliance, 1995 Broadway, New York, NY 10023."  Terremark was created and controlled by Millennium Partners.  Terremark has acted as an agent of Millennium Partners at all times pertinent to this Amended Verified Complaint.  Pursuant to Millennium Partners' racketeering scheme, Terremark acted as the owner-developer of the multi-purpose residential-commercial complex located at the 1400 block of Brickell Avenue in Miami-Dade County, known as the "Four Seasons Project Miami."  On information and belief, Terremark's ownership interest in the Hotel Lot has been transferred to FSM.

12.      Defendant, Terremark Brickell II Inc. ("Terremark Inc.") is a Florida corporation with its principal place of business designated as "Millennium PTRS, 1995 Broadway, 3rd Floor,

New York, NY 10023."  Terremark Inc. was created by Millennium Partners and was, in all material aspects, acting as, and for, Millennium Partners, but under a different name.

13.     Defendant Millennium Partners Florida Property Management LLC ("Millennium Management") is a New York  limited liability company with its principal place of business designated as "c/o, Millennium Partners, 1995 Broadway, New York, NY 10023."  Millennium Management was created by Millennium Partners and Terremark and has in all material respects been acting as and for Terremark but under a different name.

14.     Defendant, Millennium Tower Condominium Hotel Association, Inc. ("Condo Association") is a Florida corporation, with its principal place of business at 1435 Brickell Ave., Miami, FL 33131.  Created by the Millennium Defendants, and acting on behalf of the Four Seasons, Millennium and Terremark Defendants, the Condo Association was charged with and responsible for establishing, administering, and enforcing the rules, policies and budgets for the condo-hotel units.

15.     Defendant, Interinvestments Realty, Inc. ("Interinvestments") is a Florida corporation with its principal place of business at 730 N.W. 107 Ave., Suite 120, Miami, FL 33172.  Acting as an agent for the Terremark, Millennium, and Four Seasons Defendants, Interinvestments, a Miami real estate consulting firm, assisted in promoting the Four Seasons condominium-hotel units as investments to Plaintiffs and investors alike.

16.     Defendants Four Seasons, FSM, Millennium Partners, Millennium Management, the Condo Association, Terremark, Terremark Inc., and Interinvestments have constituted a joint enterprise with respect to the Four Seasons Miami, and acted as agents for each other at all times pertinent to this Amended Verified Complaint.

17.     Pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) this Court has subject matter jurisdiction over the federal RICO claims.  The Court has supplemental jurisdiction over the remaining claims brought under Florida state law pursuant to 28 U.S.C. § 1367.

18.     This Court has general jurisdiction over all Defendants pursuant to Section 48.193(2), Florida Statutes.  These Defendants are either residents of Florida, or engage in substantial rather than isolated activities within the State of Florida such as development, maintenance, marketing, sales, management, and operation of real property projects.  In addition and alternatively, this Court has specific jurisdiction over all Defendants pursuant to Section 48.193(1)(a), Florida Statutes, as this action arises from Defendants' operation, conducting, and carrying on of a business and business venture within the State of Florida.

19.     Pursuant to 18 U.S.C. § 1965(a), venue is proper in this district because Defendants are found, have agents, and/or transact business in this District within the meaning of 18 U.S.C. § 1965.  Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District, and the real property that is the subject matter of this action is located in this district.

## GENERAL ALLEGATIONS

20.     In or around July 2002, Mr. Riojas and Mrs. Simental visited South Florida to explore investment opportunities.  Acting as an agent for the Terremark, Millennium, and Four Seasons Defendants, Defendant Interinvestments Realty, Inc., a Miami real estate consulting firm, introduced Mr. Riojas and Mrs. Simental to Karim Leon-Velarde ("Mrs. Leon-Velarde"), a sales agent for "Four Seasons Hotel Miami" ("Four Seasons").  Exhibit "D" – Printout from Four Seasons Residences Website naming Mrs. Leon-Velarde as its Licensed Real Estate Broker, http://www.iliveat.com/email_stationary/kleon-velarde.html.

21.     On information and belief, Interinvestments knew or had readily available information to ascertain that the Four Seasons condo-hotel units were devoid of investment value.  Despite such knowledge, Interinvestments referred potential purchasers to Mrs. Leon-Velarde and otherwise promoted the Four Seasons condominium-hotel units as investments with the intention that potential investors would buy these units.  As a benefit for facilitating sales of Four Seasons condominium-hotel units, Interinvestments received a 5% commission from each unit sold.  *See* Contract naming Emilio Cardenal of Interinvestments Realty as broker for the operative transactions, evidencing a 5% commission paid by Terremark upon closing, attached as Exhibit "E."

22.     At the time Mr. Riojas and Mrs. Simental met with Mrs. Leon-Velarde, the Four Seasons Project was in its final stage of construction.  Upon completion, the building would be a multi-component, residential-commercial facility consisting of the following:

       a.     a residential component consisting of approximately 186 luxury condominium units for both sale and lease (the "Residences Lot");

       b.     a health/sports club and/or spa component of approximately 40,000 square feet (the "Recreation Lot");

       c.     an office component consisting of approximately 200,000 rentable square feet of office space (the "Office Lot");

       d.     a garage (the "Garage Lot");

       e.     10,000 square feet of rentable conference venue space (the "Conference Lot");

       f.     a Hotel component consisting of the Four Seasons Hotel, Miami (the "Hotel Lot"); and

g.      a condominium component consisting of eighty-four (84) residential condominium-hotel units (the "Condominium Lot").

23.     This lawsuit involves the condominium-hotel component of the Four Seasons Project.   A condominium-hotel is a real estate product that combines the features of a condominium and a Hotel.   Typically located within a luxury Hotel, condominium-hotel units are sold to owners as full-service vacation homes and are typically purchased as investment property.   In the case of Four Seasons, a clear distinction was made between private condominium units and condominium-hotel units: all private condominium units are located above the 36th floor of the Four Seasons Hotel building.   They were marketed as private residential property.   In contrast, the condominium-hotel units – 84 in total, occupying Floors 30 through 36 of the Four Seasons Hotel building – were designed for full integration into Four Seasons' hotel operations.   For example, the decoration and furnishing of the condominium-hotel units was required to be in conformity with standard Four Seasons Hotel rooms and suites.   The only material exception was that condominium-hotel units were equipped with kitchenettes. Four Seasons' condominium-hotel units were sold at a higher price than regular condominium units.   Indeed, purchasers paid a premium for the purported "investment features" of the units. However, a condominium-hotel unit has investment value only if it is regularly available to Hotel guests.   The potential revenue stream from hotel guests is a condominium-hotel unit's signature feature, which is why such units are typically purchased not as personal residences, but as investment properties, and are promoted as such.

24.     At the time Mr. Riojas and Mrs. Simental met with Mrs. Leon-Velarde, Defendants Inverinvestments, Millennium Partners, Terremark, and Four Seasons were actively

promoting the Four Seasons condominium-hotel units as investment products.   A copy of the

Four Seasons Hotel Residence Pamphlet is attached as Exhibit "F."

25.      During their meeting with Mrs. Leon-Velarde, Mr. Riojas and Mrs. Simental

informed Mrs. Leon-Velarde that they were looking for investment opportunities that would

generate a positive cash flow.   In response, Mrs. Leon-Velarde strongly recommended Four

Seasons' condominium-hotels as a "great investment."   According to Mrs. Leon-Velarde,

purchasers of Four Seasons' condo-hotel units were expected to enter a rental program for Four

Seasons to manage and rent the purchased units, and for the purchasers and the Hotel to share

revenue derived from unit rentals.

26.      Mrs. Leon-Velarde provided Mr. Riojas and Mrs. Simental with handwritten

notes showing the cash flow projection for Four Seasons' hotel-condominiums.   Based on these

notes and Mrs. Leon-Velarde's explanation, a condominium-hotel unit would generate profits for

its owner once the hotel's overall occupancy rate reached 30%.   Mrs. Leon-Velarde then used

different occupancy rates as examples to calculate return rates on each type of unit.   Using these

numbers, Mrs. Leon-Velarde persuaded Plaintiffs that a Four Seasons condominium-hotel unit

would yield a much higher return than other investment options.   These expectations were based

on Mrs. Leon-Velarde's representation that all of the condominium-hotel units would be

marketed and rented in the same manner as traditional Four Seasons Hotel rooms.   In order to

persuade Plaintiffs that Four Seasons condo-hotels were superior investment vehicles, Mrs.

Leon-Velarde specifically emphasized the prestige of the Four Seasons brand, the higher

occupancy rates at Four Seasons hotels compared with other hotels in Miami, and the equal

treatment Four Seasons had promised to accord to the condominium-hotel units and traditional

Hotel rooms.

27.     Mr. Riojas and Mrs. Simental expressed concern that Four Seasons' would be motivated to give priority to booking their wholly-owned Hotel rooms over condo-hotel units, in order to gain more profit.  However, Mrs. Leon-Velarde repeatedly assured Mr. Riojas and Mrs. Simental that condo-hotel units would be advertised and rented out in exactly the same way as Four Seasons' traditional Hotel rooms.  In fact, she told Mr. Riojas and Mrs. Simental that traditional Hotel customers would prefer to stay in condo-hotel units because of their better views, height, and kitchenettes.  Like other similarly-defrauded purchasers, Mr. Riojas and Mrs. Simental were convinced that the condominium-hotel units promoted to them would be a regular part of the Four Seasons Hotel Miami's operations, and, as such, would generate positive cash flow.  This conviction was based on Mrs. Leon-Velarde's affirmative misrepresentations made pursuant to the sales materials and techniques designed by Millennium Partners, Terremark, and Four Seasons for the purpose of facilitating sale of condominium-hotel units.   Critically, Mrs. Leon-Velarde, acting on behalf of Millennium Partners, Terremark and Four Seasons, specifically conveyed to Mr. Riojas and Mrs. Simental that the purchase of Four Seasons condo-hotel units was a good investment which would be profitable, specifically because the units were associated with and part of the regular operation of the Four Seasons Hotel.

28.     The Four Seasons condo-hotel scheme, which Defendants advertised as a superb investment product, was later discovered to be a sham.  Specifically, Defendants, working in unison and as agents of one another, conspired and collaboratively devised a sophisticated scheme to lure unsuspecting purchasers into buying condo-hotel units based on guarantees that these units would generate positive returns because they would be made available for occupancy as Four Seasons' Hotel rooms and suites.  The only people that this scheme's perpetrators

intended to benefit were themselves, by depriving the purchasers of the benefits of their investments.

29.     Pursuant to this scheme, Defendants designated a percentage of the total Hotel rooms as condo-hotel units for sale, based on the Hotel's anticipated vacancy rate.  By doing so, Defendants received multiple benefits including: (1) immediate income to the developers – Millennium Partners, Terremark, and Terremark, Inc. – from sales of condo-hotel units; (2) commissions to the developer's sales agents and promoters of the condominium-hotel units, including, *inter alia*, Interinvestments; (3) condominium management fees collected on those units on a monthly basis; (4) creation of an overflow capacity for the Four Seasons Hotel during periods of peak demand, thereby allowing Four Seasons Hotel to achieve a greater profit, while effectively excluding these condominium-hotel units during the seasons when Hotel rooms were in low demand, so as not to negatively affect Four Seasons' Hotel room income and (5) income to Terremark and Four Seasons from "access fees" for occupancy of the units so that the condominium-hotel owners shared the hotel operation expenses – without receiving meaningful benefits.

30.     Thus, contrary to their representations to Plaintiffs, Defendants subordinated the condominium-hotel units to Four Seasons' regular Hotel rooms and suites for rental purposes: *they would be available to lodgers only if all Four Seasons traditional guest rooms were fully booked, and even then, would still be subordinated to condo-hotel units owned by Terremark and Millennium.*  Exhibit "G" – Rental Program Agreement ("RPA") 3.2(a).  Because the percentage of condo-hotel units within the Hotel closely corresponded to the Hotel's anticipated vacancy rate, as long as the Hotel was occupied at or below its normal rate, there was no chance the condo-hotel units would be used.  Thus, despite Defendants' contrary representations to the unit

owners at the time of their purchase, under Defendants' scheme, it was unlikely that the condo-units would ever be rented to lodgers, assuming normal Hotel occupancy rates.

31.     Pursuant to their scheme, Defendants designed, adopted and made a number of fraudulent statements to prospective purchasers, including Plaintiffs, prior to and at the time of the condo-hotel purchase, including, but not limited to the following:

a.      All condo-hotel units would be treated exactly as Four Seasons Hotel rooms in terms of their availability to lodgers;

b.      The condo-hotel units would generate positive cash flow for purchasers based on Hotel occupancy rate of 30% or above.

c.      Investors were guaranteed optimal investment returns by purchasing condo-hotel units and participating in the rental program.

32.     At all times pertinent to this Amended Verified Complaint, Four Seasons persuaded Millennium Partners, Terremark, and Interinvestments to use the Four Seasons brand name, both verbally and through written sales materials, to lend the illusion of legitimacy and prestige to the fraudulent condo-hotel scheme.   The name Four Seasons eased purchasers' doubts, and gave them a false sense of comfort in thinking such a prestigious Hotel chain would not run a fraudulent investment program, a program which, unknown to the condo-hotel purchasers, was actually running on a *cost-recovery model*.  The investors' trust was misplaced.

33.     The scheme was designed for the purpose of defrauding purchasers of their money.   Defendants' statements and representations in furtherance of this scheme were knowingly false as to certain material facts used to induce Plaintiffs, and investors alike, to enter into purchase agreements and the sham Rental Program.

34.    The misrepresentations outlined above were made not only face-to-face with potential buyers, but also through phone conversations, emails, and the U.S. mail.  For example:

a.    In or around July 2002, Mrs. Leon-Velarde, as agent for the Four Seasons, Millennium Partners, and Terremark Defendants, contacted Mrs. Simental by phone.  During the conversation, and through subsequent correspondence via mail and email, Mrs. Leon-Velarde reassured Mrs. Simental that the condominium-hotel units offered to her and Mr. Riojas would be fully integrated into the Miami Four Seasons' Hotel's regular operation and lodging database and that because of this, the condominium-hotel units were excellent investment products.  Mrs. Leon-Valerde knowingly made these fraudulent statements in furtherance of the scheme described in paragraphs 31-32 above, which was designed to lure prospective investors into purchasing the subject condominium-hotel units with false promises of a profitable investment. To further promote the units, Leon-Valerde, along with Defendants' other agents and representatives, transmitted multiple email and mail correspondence promoting Four Seasons condominium-hotel units as a great investment.  *See* the attached copy of the pamphlet outlining projected payments from Rental Program is attached as Exhibit "H."  These and other writings were transmitted to further Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

b.    On or around July 23, 2001, the Four Seasons, Millennium, and Terremark Defendants transmitted, by mail or email, a Four Seasons Miami Rental Program Funds and Cost Responsibility Outline (the "Outline").  A sample of the Outline transmitted via facsimile or e-mail to Mr. Michael Hacker, a non-party condominium-hotel purchaser, is attached as Exhibit "I."  Mr. Riojas and Mrs. Simental received an identical copy of the outline, which they cannot currently locate.  In the Outline, Four Seasons and the Millennium Partners indicated that the Hotel and its manager would spend a part of its share in the rental income on integrating the

condominium units with the Hotel's reservation system. *See id*. Defendants, however, never intended to include the condominium-hotel units into Four Seasons' regular reservation system. Consequently, the transmittal of the writings was for the purpose of furthering Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

   c.   On or about July 23, 2001, Four Seasons and Millennium Partners sent letters and emails to potential investors to promote the Miami Four Seasons condominium hotel units as "unique real estate investment[s]." A copy of the letter sent to Michael Hacker, a non-party condominium hotel purchaser, is attached as Exhibit "J." However, Defendants *knew* at the time they sent these communications that the condominium hotel units would not generate any positive cash flow for the condominium hotel owner, based on Defendants' cost-recovery model. As such, the subject condominium hotel units that were promoted and eventually sold to Plaintiffs were not viable investment products. Four Seasons and Millennium Partners fraudulently labeled and advertised the subject condominium hotel units as "unique real estate investment[s]" for the sole purpose of defrauding Plaintiffs and other similarly situated victims of Defendants' deceptive practices. Defendants transmitted these writings for the purpose of furthering Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

   35.   Defendants used a calculated, step-by-step approach to carry out their fraudulent scheme. Although the rental program was a component of the condominium-hotel "investment product" sold to investors, Defendants used a bifurcated approach so as to hide the material terms and provisions of the rental program agreement from the investors until after they executed the condominium-hotel purchase agreements with Terremark. At step one, purchasers were offered a condominium-hotel purchase agreement. It was only after the real estate transaction was closed that purchasers were shown, for the first time, the core investment document – the

Rental Program Agreement, Ex. "G."  Although the RPA contains terms and conditions that were different from the oral/promotional promises Defendants made before closing (especially the rental terms and conditions), it was too late for the investors to back out of the deal because they had already purchased the unit(s).

36.     In an effort to further appease investors, Defendants verbally offered an attractive profit-split rate in the RPA:  80% for the unit owner and 20% for the Hotel on revenue from the unit rental.  This rate served a mere decorative function because, as later determined, the scheme was designed so that it was nearly impossible for unit owners to receive steady rental income.  The split rate was also commercially impractical, meaning no bona fide condo-hotel program could be sustained by the Hotel at such a rate.  Also, despite Defendants' representation that the 20% "revenue share" to Terremark was to be spent on marketing their condominium-hotel units to end-users, there was never any plan to market these units as Four Seasons Hotel rooms in the first instance.

37.     On August 5, 2002, Mr. Riojas and Mrs. Simental entered into Purchase Agreements for six (6) "Millennium Tower Condominium Hotel" units: **3011** ($ 422,400.00), **3012** ($ 786,705.00), **3112** ($ 800,000.00), **3212** ($ 814,000.00), **3311** ($ 435,600.00) and **3312** ($ 827,200.00).  *See* Exhibit "K" – Example of Purchase Agreement, Condominium Hotel Unit 3011.  Plaintiffs paid a total of $4,072,705 for these six condominium units.  Prior to their execution of the purchase agreements, Plaintiffs were reassured by Mrs. Leon-Velarde and Julian Leon-Velarde, husband of Mrs. Leon-Velarde, and Defendants' other agents, that Four Seasons would (1) advertise the condo-hotel units as rooms within Four Seasons; (2) treat the rental of condo-hotel units as Four Seasons' Hotel units; (3) permit use of the same toll-free phone system used for all Four Seasons Hotels to directly book condo-hotel units; (4) give customers the

choice to rent the hotel-condo units; and (5) make all amenities available for guests staying in the condo-hotel units.  Both the Velardes and Defendants' other agents also affirmed that all condos would be advertised and rented by Four Seasons Hotel Miami under the name *Four Seasons* and that Plaintiffs were guaranteed to receive a profit stream for rooms which would "definitely" be rented out.

38.     Prior to their execution of the purchase agreements, Plaintiffs had not received the RPA, which purportedly outlined the terms and conditions of the Four Seasons's Rental Program.  Of course, Mr. and Mrs. Leon-Velarde, as well as Defendants' other agents, orally highlighted the RPA's contents.  Based on these representations, coupled with past guarantees outlining the projected profits for them, Plaintiffs signed the purchase agreements.  Once Plaintiffs entered the Purchase Agreements, Defendants succeeded in completing the first step of their fraudulent undertaking: Plaintiffs were locked into a $4,072,705 transaction. Interinvestments obtained their commissions upon closing.  Ex. "E."  The remaining Defendants and their agents collected future payments, initiated by cross-border wire transfers from the Plaintiffs as down-payments for the condo-hotel units.

39.     On August 28, 2002, Mr. Riojas and Mrs. Simental created Begualg for the sole purpose of holding title, interest, and ownership in the six purchased condominium-hotel units. On December 4, 2003, Mr. Riojas and Mrs. Simental assigned and transferred to Begualg all the right, title, and interest they had previously held in the six condominium-hotel units.

40.      On or around December 6, 2003, more than four months *after* Plaintiffs executed the purchase agreements, Defendants presented Plaintiffs with the RPA.  The RPA was a 34-page document (not including the exhibits) in English only.  A copy of the RPA is attached as Exhibit "G."  Both Mr. Riojas and Mrs. Simental (signing for Plaintiffs) were native Spanish

speakers.  When they asked for a Spanish version of the RPA, they were told that there was none.

41.      Relying on the prior representations and assurances of Defendants' agents and representatives and not suspecting any deviation from the oral promises Defendants had made before, Plaintiffs signed the RPA.

42.      As later determined, the RPA actually contained complex terms and conditions that reflected Defendants' fraudulent scheme and were very different from Defendants' previous guarantees and representations in many material respects.  In particular:

a.      Pursuant to the RPA, while Plaintiffs would receive their eighty-percent (80%) "split" of income generated by rental of their units, it was not, as the Leon-Velarde's represented, a split of gross revenues.  It was, in fact, to be a split of "Adjusted Income" Ex. "G" at ¶ 4.1(d). Adjusted income would include gross revenue for the units' rental, *minus* (1) current daily access charges assessed under the Condo Hotel Declaration; (2) wholesaler commissions, if any, charged in connection with the guests' stay; (3) deposits into the FF&E Reserve for furnishing, fixtures and equipment costs, (4) any lodging taxes payable to governmental authorities based on such rental.  *Id*. at ¶ 4.1.  Defendants also received all non-rental income generated from a guest's stay at the Hotel, including food and beverage services.  *Id*.

b.      Contrary to representations made by Mr. and Mrs. Leon-Velarde and Defendants' other agents, the RPA provided that rental of regular rooms in the Hotel would be given "priority" over rental of condo-hotel units in the Rental Program.  *Id*.  at ¶ 3.2(a)(D).

c.      The RPA also gave Defendants the exclusive authority to rent Plaintiffs' units. *Id*. at ¶ 3.1.  Although the RPA provided that the Hotel would maintain a reservation system to process all reservations received from prospective lodgers, it also provided that reservations for

condo-hotel units would *not* be accessed through the central reservation system and database maintained by Four Seasons Hotel and its affiliates. *Id.* at ¶ 3.2(c). As a result, *prospective lodgers would not be able to select a unit through the Hotel's reservation system.* Unless the Hotel recommended a condo-hotel unit, lodgers would not even know that condo-hotel units existed or were available. In fact, pursuant to Defendants' fraudulent scheme, the condo-hotel units were to be used as overflow accommodation options only – to be recommended to prospective lodgers only if *all* Four Seasons' hotel rooms were booked. On information and belief, even when Four Seasons' hotel rooms were booked, the Terremark, Millennium and Four Seasons Defendants would rent developer units first to gain higher profit from condo-hotel rentals. On information and belief, the Hotel also typically referred a prospective lodger to other luxury hotels, rather than try to rent them a condo-hotel unit, because the Hotel would receive net commissions from their competitors in amounts higher than what they would receive through profit sharing with condo-hotel units.

43.     The RPA also contained the following provisions:

a.     The Four Seasons hotel was to act as the rental agent of the condo-unit owners, and as such had the exclusive authority to rent and administer the subject units. *Id.* at ¶ 3.1.

b.     In exchange for this authority, the Hotel undertook to use "reasonable commercial efforts" to rent out Plaintiffs' units. *Id.* at ¶ 3.2.

c.     The Hotel was to establish practices "[d]esigned to achieve an equitable treatment of the Subject Unit with other Hotel Residence Units . . . ." *Id.* at ¶ 3.2(a).

d.     The Hotel further agreed to (1) provide marketing, sales, and advertising services to generate rentals of the condo-hotel units in the Rental Program, *id.* at ¶ 3.2(b); (2) provide and maintain a reservations system as part of the Hotel system to process reservations from

- 18 -

prospective customers for the units, *id*. at ¶ 3.2(c); (3) negotiate all terms and conditions for the rental of the units with prospective customers, *id.* at ¶ 3.2(d); (4) arrange to provide hotel services to occupants of Plaintiffs' unit, including both base and a la carte Hotel Services, *id.* at ¶ 3.2(e); and (5) collect all income generated and then submit an accounting to Plaintiffs within a 20-day period. *Id. at ¶* 4.1(c).

44.     In order to effectively control the Four Seasons Miami Project and to force the purchasers of condominium-hotel units to enter the rental program, Terremark, through the Declaration of Covenant, Restrictions, and Easement for Millennium Tower (Exhibit "L") and the Declaration of the Millennium Tower Condominium Hotel (Exhibit "M"), monopolized the rights to build and control common facilities or shared facilities of the Four Seasons Project, to control the Four Seasons Project Master Association and the condominium-hotel association, and to operate timeshares, even though the condominium-hotel owners were prohibited from doing so.  Indeed, very few rights were given to the condominium hotel owners.

45.     On July 14, 2003, the Millennium Tower Condominium Hotel Association was incorporated.  The Association was controlled by Terremark and was used as an instrument of the Millennium, Terremark, and Four Seasons Defendants for furthering their fraudulent scheme. Charged with contractual responsibilities for establishing, administering, and enforcing the rules, policies, and budgets relating to condominium-hotel units, the Condo Association was an important tool for the Millennium, Terremark, and Four Seasons Defendants to maintain their effective control over condominium-hotel units, including all the common areas.  Specifically, the Millennium, Terremark, and Four Seasons Defendants required the Condo Association to take all actions necessary to collect common charges, assessments, and other amounts due and payable to the Millennium, Terremark, and Four Seasons Defendants once Plaintiffs purchased

the condo-hotel units.  As well, the Condo Association collected all "access fees" and Hotel service fees owed by the condo-hotel owners.  The Condo-Hotel Association knowingly participated in the Four Seasons Enterprise in violation of 18 U.S.C. § 1962(c) and § 772.103(1), FLA. STAT., until the developer relinquished control of the Association to the unit owners, which under information and belief occurred in or around December, 2007.  Defendant Condo-Hotel Association's agreement to participate in accomplishing the overall objectives of the Four Seasons Enterprise violates 18 U.S.C. § 1962(d) and § 772.103(3), FLA. STAT.

46.     On information and belief, Terremark retained for itself a number of units in the condominium-hotel lots.  Also on information and belief, when Four Seasons' "overflow" units could be rented during peak tourist seasons, the Terremark, Millennium, and Four Seasons Defendants would successfully rent out developer-owned units ahead of those owned by unaffiliated purchasers.  The Terremark, Four Seasons, and Millennium Defendants thus directly competed with the other condominium-hotel owners despite acting as a rental agent.

47.     Not surprisingly, Plaintiffs have received only *de minimus* rental income from their investments.

48.     Though purportedly an "option," participation in the rental program was in fact compulsory because it was impractical for a condo-unit purchaser to later rent his unit without the basic services offered under the rental program.  In 2007, Plaintiffs withdrew four units (3012, 3112, 3212, and 3312) from the rental program in the hopes of renting the units on their own.  In retaliation, the Hotel terminated concierge service, cable television, and phone service to the withdrawn units.  While withholding essential services, the Hotel charged a $70 daily access fee for each guest occupying the units.  Defendants referred to the RPA to vindicate their

right to terminate the services and charge access fees.  Plaintiffs were left without recourse. Eventually Plaintiffs gave in and reinstated the four units in the rental program.

49.     Defendants claimed that rental income was deficient because Four Seasons Miami was new and had limited clientele.  However, they repeatedly promised that the situation would improve with time and that the condominium-hotel units would generate positive cash flow. These representations were made not only in face-to-face contact with the condominium-hotel owners, but also over the telephone and through emails in response to the purchasers' inquiries. These representations, however, were patently false because the true reason for the deficiency of rental income was Defendants' fraudulent scheme.  Plaintiffs, like the other purchasers, relied on Defendants' repeated misrepresentations and trusted Defendants.

50.     In or around mid 2008, Plaintiffs for the first time heard rumors at condo-hotel owners' association meetings that the Hotel was not undertaking any effort to rent out condo-hotel units – in breach of the RPA.  In an effort to investigate this rumor, Mr. Riojas placed several calls to the Hotel's reservation line 1-800-819-5053 ("800 number" used for all Four Seasons reservations in the United States and Canada), pretending to be a prospective lodger interested in a condo-hotel unit.  Mr. Riojas was told by the Hotel staff members that they were not aware of the availability of condo-hotel units for rent within the Hotel.  Mr. Riojas, however, knew that the representation was false because his condominium-hotel unit, like the condominium-hotel units of the other purchasers, were readily available for occupancy and should have been presented in response to his inquiry.

51.     On information and belief, the Hotel staff was trained to answer a prospective lodger's inquiry about condo-hotel units by either ignoring the inquiry, or by indicating that these units were available for long-term rental (over one month) only.

52.     Thereafter, Plaintiffs conducted their own research as to news media, publications, and the internet, and were unable to locate a single advertisement relating to condo-hotel units in their Four Seasons' Hotel.  Yet the monthly statements Plaintiff received showed that Terremark and Four Seasons obtained 20% of the net rental income from Plaintiffs' condo-hotel units which, per Defendants' previous representations, were to be used to cover the expenses for marketing the condominium-hotel units.  Copies of Four Seasons' monthly statements to Plaintiffs are attached as Exhibit "N."  Terremark and Four Seasons also informed Plaintiffs and the other purchasers that the 20% "profit share" they charged to owners was used to pay, *inter alia*, the compensation of a marketing representative designated to sell condominium-hotel units.  However, rather than marketing the condominium-hotel units, Four Seasons' "designated marketing representative" has been exclusively marketing Four Seasons Hotel rooms, even though the condominium-hotel owners have been paying his/her compensation.  Since no marketing has been conducted to promote the condominium-hotel units, the monthly statements, which have been transmitted through U.S. mail and through facsimile from 2003 up to the present, were fraudulent and in furtherance of Defendants' scheme.

53.     The Millennium, Terremark, and Four Seasons Defendants have also failed to account for customers that were booked by Four Seasons and actually occupied Plaintiffs' condo-hotel units.  Upon information and belief, the Millennium, Terremark and Four Seasons Defendants profited by renting out units and pocketing all of the revenues.

54.     The parking spaces corresponding to each of Plaintiffs' six (6) units are occupied – even when the Plaintiffs units remain vacant.  Plaintiffs have suffered inconvenience by not being able to park in their designated spaces within the Four Seasons parking lot – parking spaces that were provided with each condo-hotel unit purchased.  *See* Exhibit "O" – Example of

Assignment of Right to Use Parking Space. Either Defendants are renting out these parking spots as another source of revenue, or the units themselves are being occupied without Plaintiffs' knowledge and consent – and without Plaintiffs receiving their share of the rental pursuant to the RPA.

55. In 2008, Mr. Riojas became the treasurer of the Four Seasons Condominium Association. At that point, he reviewed documents, including the condominium-hotel lot's budgets, the association's meeting minutes, and complaints from purchasers, and heard other condo-hotel owners' concerns. Based on the information, he concluded that he, as well as the other condominium-hotel owners, had been victimized. Plaintiffs then determined that the Four Seasons' condo-hotel program was not a failed business enterprise, but an artfully designed fraudulent scheme to take investors' money and enrich Defendants.

56. In or around October 2008, Mr. Riojas, along with other Board Members, questioned the Millennium Defendants about the rental program. Mr. Riojas discovered that the condo-hotel units were paying half of all costs associated with the "residential type units" in the Four Seasons Hotel Miami – notwithstanding the fact that condo-hotel units only comprised 84 of the 270 "residential type units." *See* Minutes of the Board of Directors' Special Meeting on October 28, 2008, attached as Exhibit "P." Moreover, Mr Riojas discovered that the owners of the condo-hotel units were paying for a full-time concierge, Hotel bell attendant, and other Hotel services, even though these services were not being utilized because the units were vacant.

57. In 2009, the Four Seasons, Terremark, and Millennium Defendants approached Plaintiffs in an attempt to modify the RPA. The proposed modification included reducing the profit split on revenue from the unit rental from 80% for the unit owner and 20% for the Hotel, to 60% for the unit owner and 40% for the Hotel. In return, the Four Seasons, Terremark, and

Millennium Defendants indicated that they would *begin* making condo-hotel units available for rental on the Four Seasons website – something which should have been undertaken by the Four Seasons, Terremark, and Millennium Defendants pursuant to ¶ 3.2(a) of the RPA at the outset of the relationship.  *See* Ex. "G" at ¶ 3.2(a) (to establish practices "[d]esigned to achieve an equitable treatment of the Subject Unit with other Hotel Residence Units . . . .").

## THE ENTERPRISE

58.    At all times material to this complaint, Defendants together with their agents, representatives, employees, and subordinate officers, have and continue to constitute an "enterprise" as the term is defined in Title 18 U.S.C. §1961(4), which enterprise has engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise has been, and continues to use, fraudulent misrepresentations and false profit projections transmitted through, among other things, U.S. mail, interstate and international courier services, and/or interstate wire, to lure investors into purchasing high-end condo-hotel units in the Four Seasons Hotel and to offer them a rental program "investment" product that was designed to generate little to no return, but for the most part only costs.

### COUNT I
### RACKETEERING INFLUENCED AND CORRUPT
### ORGANIZATIONS ("RICO"), TITLE 18 U.S.C. § 1962(C)
### (ALL DEFENDANTS)

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

### Defendants' Activities

59.    Each Plaintiff is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

60.    Each Defendant is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

61.     From at least 2001, continuously through the present, Defendants and others, known or unknown, in Miami-Dade County, Florida, New York City, New York, Canada, and elsewhere, formed an association in fact for the common and continuing purposes and goals described herein, which constitutes an "Enterprise," within the meaning of 18 U.S.C. § 1961(4) (the "Four Seasons Enterprise").  The Four Seasons Enterprise functions as a continuing unit within an ascertainable structure separate and distinct from that of the conduct or pattern of racketeering activity.

## Goal and Purposes

62.     The goal of the Four Seasons Enterprise has been, and continues to be, to perpetrate a fraud upon purchasers of Four Seasons condo-hotel units, and to generate illegally obtained money which has been distributed among Defendants.  In operating the Four Seasons Enterprise, Defendants used willful misrepresentations, including fraudulent misrepresentations of the material terms and conditions of the Four Seasons rental program and fraudulent guarantees of returns.  The fraudulent misrepresentations were designed to lure investors into entering an agreement for purchase of a Four Seasons condo-hotel unit, and eventually to enter a rental program agreement, the terms and conditions of which were mere instruments for Defendants to seek self-enrichment while depriving condo-unit owners of any benefit they paid for and were promised to receive.  Defendants were able to accomplish their goals by misusing instrumentalities of foreign and interstate commerce, including international wire facilities and mails.  Each of these fraudulent acts had a serious impact on interstate and foreign commerce because, among other things, the fraudulent activity involved transportation and communication between places in two or more states or between some place in the United States and some place outside the United States.

63.     As an integral part of the goal and purpose of the Four Seasons Enterprise, its members selected Miami, Florida, as the central location for activities relating to the Four Seasons Enterprise.

### The Laws That Defendants Violated While They Conducted The Affairs Of The Four Seasons Enterprise

64.     Defendants violated federal law while engaging in the affairs of the Four Seasons Enterprises, as follows:

a.      wire fraud, in violation of 18 U.S.C. §1343; and

b.      travel in interstate and foreign commerce in aid of the Four Seasons Enterprise, in violation of 18 U.S.C. § 1952.

65.     Defendants were associated with, and exerted control over, the Four Seasons Enterprise or participated, directly or indirectly, in the conduct of the Four Seasons Enterprise's affairs through a pattern of racketeering activity.

### The Pattern Of Racketeering Activity

66.     In furtherance of their scheme, Defendants conducted, participated in, or exerted control over, either directly or indirectly, the conduct of the Four Seasons Enterprise through a pattern of racketeering activity.   Defendants otherwise aided and abetted, counseled, or commanded the other unidentified parties who did so, by engaging in at least two acts of racketeering activity that have the same or similar criminal intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated acts of racketeering activity.   The patterns of racketeering activity, which, on information and belief, began in 2002 or before, and continues through and including the date upon which this Complaint is filed, and which the purchaser Plaintiffs expect to continue uninterrupted, involved racketeering acts or predicate acts – including multiple violations of the

federal criminal laws of the United States – which amounted to and pose a threat of continued criminal activity.

67.     These acts of racketeering or predicate acts were related to the Four Seasons Enterprise and had similar purposes, participants, results, victims, and methods of commission. These acts of racketeering activity include, but are not limited to, the following:

### *Wire Fraud*

68.     Defendants, having devised or intended to devise a scheme or artifice to defraud for the purposes of obtaining money or property through false or fraudulent pretenses, representations, and guarantees, as described above, knowingly and willfully transmitted or caused to be transmitted by means of a wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for (a) the purpose of executing such scheme, in violation of 18 U.S.C. § 1343, and for (b) the purpose of executing such scheme, through the transfer of monies, in violation of 18 U.S.C. § 1343.

### *Interstate And Foreign Travel Or Transportation In Aid Of The Four Seasons Racketeering Enterprise*

69.     Defendants, through their executives, investors, principals, directors, officers, employees, or representatives, knowingly and willfully traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce, with the intent to distribute the proceeds of an unlawful activity and to further an unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, in violation of 18 U.S.C. § 1952.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER

CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the damages that they suffered in an amount to be proven at trial, and as provided for by statute, are then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

**COUNT II**
**CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(C) IN VIOLATION OF § 1962(D)**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 69 as if fully alleged herein.

70.     From at least as early as 2002, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, to violate 18 U.S.C. § 1962(c), by conducting and participating, directly and indirectly, in the conduct of the affairs of the Four Seasons Enterprise, which engaged in, and the activities of which, affected interstate and foreign commerce.

71.     The racketeering activity described in Count I was part of a sophisticated and well organized scheme wherein each of the predicate acts relates to and directly advances one or more of the purposes of the scheme, as described above.

72.     The goal of the conspiracy was to enrich Defendants, their co-conspirators, and those who aided and abetted them, at the expense of condo-hotel residence investors, by facilitating, directing, or engaging in several overt acts, which constituted a pattern of racketeering activity as described in Count I.

73.     As a result of the unlawful actions of the conspiracy, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM

PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the damages that it suffered in an amount to be proved at trial, which as provided for by 18 U.S.C. § 1964, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

**COUNT III**
**VIOLATION OF CIVIL REMEDIES FOR CRIMINAL**
**PRACTICES ACT, § 772.103, FLA. STAT.**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

74.     From at least as early as 2002, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, associated together as part of the Four Seasons Enterprise.  Through the Four Seasons Enterprise, Defendants unlawfully, willingly, and knowingly violated Section 772.103(3), Florida Statutes, by conducting and by participating, directly or indirectly, in the conduct of the affairs of the Four Seasons Enterprise through a pattern of criminal activity that involved multiple violations of the criminal laws of Florida, including organized fraud and communications fraud in violation of the Florida Communications Fraud Act, Section 817.034, Florida Statutes, and Theft, in violation of Section 812.014, Florida Statutes.

75.     The overall goal and purpose of the Four Seasons Enterprise was to enrich Defendants, its members and associates, through the repeated commission of related criminal acts.

- 29 -

76.     As alleged in paragraphs 1 through 58, Defendants engaged in, or furthered, a systematic, ongoing course of conduct with the intent to defraud, and to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of future acts. This resulted in temporarily or permanently depriving numerous condo-hotel concept investors, including Plaintiffs, of rights to property or benefits thereof, or appropriating the victims' properties to their own use or to the use of other persons not entitled thereto, in violation of Section 817, Florida Statutes.

77.     As alleged in paragraphs 1 through 58, Defendants defrauded the purchasers of the use of their purchased units in Miami, and under information and belief, throughout the United States (and other nations), with the intent to either temporarily or permanently deprive them of their right to the property, in this case money, in violation of Section 812.014(1)(a), Florida Statutes, or to misappropriate the money to Defendants' own use or to the use of a person not entitled thereto, in violation of Section 812.014(1)(b), Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the compensatory damages that it suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Section 772.104, Florida Statutes, and for injunctive relief pursuant to Section 895.05(6), Florida Statutes, and such other relief as the Court deems appropriate.

**COUNT IV**
**CONSPIRACY TO VIOLATE CIVIL REMEDIES FOR**
**CRIMINAL PRACTICES ACT, § 772.103, FLA. STAT.**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 77 as if fully alleged herein.

78.     Defendants, and all non-defendant co-conspirators, conspired to violate the provisions of Section 772.103(1) and (3), Florida Statutes, as alleged above.

79.     As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., for the compensatory damages that they suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Section 772.104, Florida Statutes, and for injunctive relief pursuant to Section 895.05(6), Florida Statutes, and such other relief as the Court deems appropriate.

**COUNT V**
**FRAUDULENT INDUCEMENT**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

80.     For the purpose of procuring the Plaintiffs' purchase of the condo-hotel units, each Defendant, acting in concert and as agents of each other, verbally and through written sales materials, touted the purchase of the condo-hotel units as "great investments" that would produce a profit.

81.     Agents and representatives of Interinvestments represented that the condo-hotel units would be a profitable endeavor and a "great investment" for Plaintiffs.  Interinvestments did this with the purpose of gaining commissions through Plaintiffs' purchase of the condo-hotel units, while knowing that the condo-hotel framework was new to the market and the ability for unit owners to profit was not established and the purchase was a speculative one, at best.

82.     Likewise, from July 2002 until Plaintiffs purchased the condo-hotel units, the Terremark, Millennium, FSM and Four Seasons Defendants, acting through their agents and as agents for one another, represented through verbal communications and written advertisements, *see* e.g., Ex. "H", that:

    a) the condo-hotel units would be profitable;

    b) the rental program would generate positive cash flows and steady revenue streams;

    c) Plaintiffs would obtain a return on their investments;

    d) a condominium hotel association, acting as an agent for Millennium, would ensure that Plaintiffs obtain a return on their investments; and

    e) the condo-hotel units would be integrated into the Four Seasons' regular Hotel operations and marketing systems.

83.     The Terremark, Millennium, FSM, and Four Seasons Defendants made these representations knowing that they were false, and knowing that:

    a) the condo-hotel framework worked on a *cost-recovery model* which ensured that Plaintiffs would not profit from their investments;

    b) the condo-hotel framework was new to the market, and the ability for unit owners to profit was speculative, at best;

c) Plaintiffs would effectively be locked out of using their units once they entered into the RPA;

d) a later formed condominium hotel association, acting as an agent for Millennium, would increase payments to the Four Seasons, FSM, Terremark, and Millennium Defendants, while decreasing Plaintiffs' ability to obtain a profit from their investments;

e) the condo-hotel units being sold would not be integrated into the Four Seasons' regular Hotel operations and marketing systems;

f) the condo-hotel units being sold would not be integrated into the Four Seasons' regular reservation system;

g) the condo-hotel units were sold at a premium price *above that of regular condo units* to deceptively force the condo-hotel purchasers to share the expenses for operating the Miami Four Seasons condominium and Hotel complexes, rather than to create a bona fide rental program as Defendants had fraudulently represented.

84.    Plaintiffs agreed to pay a premium purchase price for the condo-hotel units and enter the Purchase Agreement, as well as the RPA, as a result of misrepresentations and false guarantees made by the Millennium, Terremark, Terremark, Inc., Four Seasons, FSM, and Interinvestments Defendants.

85.    But for the misrepresentations made by Defendants, Plaintiffs would not have purchased the Four Seasons condo-hotel units and entered into contractual relationships with one or more of the multiple Defendants.

86.     As a result of Plaintiffs' reliance on Defendants' misrepresentations in entering into contractual relationships with them, Plaintiffs have been and continue to be damaged by having purchased the six "investment" properties and incurring monthly fees and expenses without receiving any of the represented investment benefits.

WHEREFORE, Plaintiffs demand judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., and such further relief as the Court deems just and equitable.

**COUNT VI**
**FALSE AND MISLEADING ADVERTISING**
**(All Defendants)**

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

87.     Each Defendant, including their agents, employees, and representatives, acting in concert and as agents of each other, in furtherance of convincing Plaintiffs to purchase the Four Seasons condo-hotel units, disseminated or caused to be disseminated materially untrue advertisements regarding the Four Seasons' condo-hotel units.   In particular, Defendants' disseminated or caused to be disseminated advertisements falsely depicting the profitability of these units as investment instruments, and the nature and operation of the Four Seasons' condo-hotel rental program, in violation of Section 817.41, Florida Statutes.

88.     Agents and representatives of Interinvestments disseminated or caused to be disseminated such sales material in order to gain commissions through Plaintiffs' purchase of the

condo-hotel units, knowing that the condo-hotel framework was new to the market and the ability for unit owners to profit was purely speculative.

89.     Likewise, the Terremark, Millennium, and Four Seasons Defendants, acting through their agents and as agents for one another, disseminated or caused to be disseminated, such fraudulent sales material.  This sales material misrepresented the fitness of Defendants' rental program, the ability for Plaintiffs to obtain a return on their investment, and the ability to make use of the units after they entered into the RPA.

90.     Defendants knew that these advertisements about the Four Seasons' condo-hotel units were untrue and that the condo-hotel framework was not market-tested by Four Seasons, but nonetheless disseminated these false advertisements in order to induce the public to purchase Four Seasons' condo-hotel units in reliance on the false advertisements.

91.     Plaintiffs reasonably relied on Defendants' false advertisements to purchase the condo-hotel units.  As a result, Plaintiffs were damaged.

WHEREFORE, Plaintiffs demand damages pursuant to Section 817.41, Florida Statutes, against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., together with an award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

**COUNT VII**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT**
**(ALL DEFENDANTS)**

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

92.     Defendants, including their agents, employees, and representatives, acting in concert and as agents of each other, engaged in false, misleading, and deceptive actions in misrepresenting to Plaintiffs and investors alike that the Four Seasons rental program would be a profitable endeavor and a "great investment" while knowing it to be a fraudulent scheme in violation of Florida's Deceptive and Unfair Trade Practices Act, Section 501.201, *et seq*., Florida Statutes.

93.     To advance their fraudulent scheme, the Interinvestment, Millennium, Terremark and Four Seasons Defendants, including their agents, employees, and representatives, used fraudulent and deceptive means to induce Plaintiffs into first purchasing the condo-hotel units, and then causing them to enter a rental program agreement containing terms and conditions vastly different from the guarantees, promises, and representations Defendants made prior to or at the time of Plaintiffs' purchase of the condo-hotel units, in further violation of Section 501.201, *et seq.*, Florida Statutes.

94.     As a result of such false, misleading, and deceptive activities, Plaintiffs have suffered actual damages.

WHEREFORE, Plaintiffs demand rescission of their purchase agreements for the six condominium-hotel units and the related rental program agreement as well as all related or ancillary agreements.  Alternatively, Plaintiffs seek actual damages.  In addition, pursuant to Section 501.2105, Florida Statutes, Plaintiffs demand declaratory and injunctive relief against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and

INTERINVESTMENTS REALTY, INC., together with an award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

### COUNT VIII
### CIVIL CONSPIRACY
**(All Defendants)**

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein

95.     The Interinvestments, Millennium, Terremark, Terremark, and Four Seasons Defendants entered into an express or implied agreement among themselves to achieve one common purpose – to induce Plaintiffs, and other investors alike, to sign multi-million dollar Purchase Agreements.   Through the use of false guarantees, these Defendants jointly lured investors into entering contractual relationships with Terremark and Four Seasons for the purposes of obtaining millions through purchase of condominium units, and subsequent fees relating to the upkeep of the Hotel.   Acting in concert, they eventually succeeded in inducing Plaintiffs into signing Purchase Agreements for over four million dollars, and subsequently the RPA.

96.     Defendants Condominium Association, Millennium Management, and FSM, though created after Plaintiffs' execution of the purchase agreements and the RPA, actively participated in the scheme, and acted in concert with the remaining Defendants in furthering the fraudulent scheme, by so managing the Four Seasons Project and the condominium-hotel program to perpetuate Defendants' control over the project and the program and to unjustly maximize their benefits at the expense of Plaintiffs and other condominium-hotel owners.

97.     Defendants, acting in concert, actively advertised their new edifice and its amenities to Plaintiffs, and investors alike, using the recognized "Four Seasons" name as a tool of deception.

98.     These wrongful acts by Defendants constituted a conspiracy to commit a tort against Plaintiffs.

99.     As a result of Defendants' conspiracy and their acts in furtherance of the conspiracy, Plaintiffs suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, MILLENNIUM PARTNERS FLORIDA PROPERTY MANAGEMENT LLC, MILLENNIUM TOWER CONDOMINIUM HOTEL ASSOCIATION, INC., TERREMARK BRICKELL II, LTD., TERREMARK BRICKELL II, INC., and INTERINVESTMENTS REALTY, INC., and such further relief as the Court deems just and equitable.

**COUNT IX**
**<u>BREACH OF CONTRACT</u>**
**(On Behalf of Defendant Begualg)**
**(Terremark and Four Seasons Defendants)**

Begualg realleges paragraphs 1 through 58 as if fully alleged herein.

100.    Begualg has a written and unexpired Rental Program Agreement with the Four Seasons and Terremark Defendants.

101.    Defendants Terremark and Four Seasons breached and remain in breach of numerous material provisions of the RPA, including but not limited to:

a.     The failure to "assist the owners" of Hotel Residence Units with the rental of their Hotel Residence Units to third parties by failing to properly and in good-faith operate and manage a rental program using the personnel and facilities of the Hotel.  *See* Ex. "F."  at *recitals* (E).

b.     The failure to provide reasonable and concerted efforts in the rental of Plaintiffs' units.   *Id*. at ¶ 3.2.

- 38 -

c.      The failure to provide marketing, sales, and advertising services to attract lodgers and to arrange rental of the Hotel Residence Units in the Rental Program. *Id.* at ¶ 3.2(b).

d.      The failure to properly account for and disperse rental income from Plaintiffs' units. *See id.* at ¶ 4.1.

102.    Moreover, the Four Seasons and Terremark Defendants have breached their contractual obligations by recommending investor units to prospective lodgers only if *all* Four Seasons' Hotel rooms are booked.  Furthermore, when Four Seasons' Hotel rooms were booked, the Terremark, Millennium, and Four Seasons Defendants would rent *developer* units first to gain additional revenue and profits from the condo-hotel rentals.  On information and belief, the Hotel also typically referred a prospective lodger to other luxury hotels, rather than try to rent them a condo-hotel unit, because the Hotel would receive net commissions from their competitors in amounts higher than what they would receive through profit-sharing with condo-hotel units.

103.    All conditions precedent for filing this action have been performed, have been waived, or would otherwise be futile to perform.

104.    As a result of Defendants' breach, Begualg has been damaged in an amount to be determined at trial.

WHEREFORE, Begualg demands judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, TERREMARK BRICKELL II, LTD., and TERREMARK BRICKELL II, INC., for damages resulting from their breach of contract, and requests such further relief as the Court deems just and appropriate.

## COUNT X
## <u>UNJUST ENRICHMENT</u>
### (Terremark and Four Seasons Defendants)

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

105.    Plaintiffs conferred upon the Terremark and Four Seasons Defendants a benefit in the form of payment of money and use of Plaintiffs' premises in exchange for Defendants' good-faith operation of a rental program conforming to Defendants' guarantees and contractual promises.

106.    Terremark and Four Seasons Defendants retained the benefits from Plaintiffs, knowing that Plaintiffs expected to be compensated for these benefits.

107.    However, Terremark and Four Seasons have not fully and fairly compensated Plaintiffs.

108.    Under the circumstances, it would be inequitable for Terremark and Four Seasons to retain the benefits without compensating Plaintiffs.

109.    As a result of the foregoing, Defendants have been unjustly enriched to the detriment of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, TERREMARK BRICKELL II, LTD., and TERREMARK BRICKELL II, INC., and any such further relief as the Court deems just and appropriate.

## COUNT XI
## <u>BREACH OF FIDUCIARY DUTY</u>
### (Four Seasons and FSM)

Plaintiffs reallege paragraphs 1 through 58 as if fully alleged herein.

110.     Four Seasons and FSM, when functioning as Plaintiffs' rental agents, had a fiduciary position of trust and confidence and were obliged to act with the duties of care, loyalty, and to avoid self-dealing with respect to Plaintiffs and the rental of their units.

111.     Four Seasons has breached its fiduciary duty to Plaintiffs by:

a.     Pursuing its interests and the interests of its co-Defendants in derogation of Plaintiffs' interests in having their condo-hotel units rented;

b.     Failing to use reasonable efforts to promote Plaintiffs' condo-hotel units as rental property;

c.     Failing to undertake reasonable marketing, sales, and advertising services to attract lodgers and to arrange rental of Plaintiffs' condo-hotel units.

d.     Directing rental opportunities away from Plaintiffs and towards other luxury hotels.

112.     Because of these breaches of fiduciary duty as rental agent to Plaintiffs, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand judgment against Defendants FOUR SEASONS HOTEL LIMITED and FSM HOTEL LLC and any such further relief as the Court deems just and appropriate.

**COUNT XII**
**BREACH OF PROFESSIONAL DUTY**
**PURSUANT TO § 475.278, FLA. STAT.**
**[In The Alternative]**
**(Interinvestments)**

Plaintiffs reallege paragraph 1 through 22 as if fully alleged herein.

113.    Defendant Interinvestments, through its agents and representatives, acted as the transactional broker as defined by Section 475.278, Florida Statutes, in the purchase of the condo-hotel units.

114.    Acting in this capacity, Interinvestments had a statutory duty under Section 475.278, Florida Statutes, to:

      a.      Deal honestly and fairly;

      b.      Account for all funds;

      c.      Use skill, care and diligence in the transaction;

      d.      Disclose all known facts that materially affect the value of residential real property and are not readily observable to the buyer.

115.    Defendant Interinvestments breached this statutory duty by:

      a.      Failing to use reasonable skill, care, and diligence in determining the investment potential for Four Seasons' condo-hotel units before declaring that that the Four Seasons rental program would be a profitable endeavor and a "great investment" for the Plaintiffs;

      b.      Declaring that the Four Seasons rental program would be a profitable endeavor and a "great investment" while knowing that it was not market-tested and that entrance into the transactions was risky and speculative at best.

      c.      Dishonestly conspiring with the remaining Defendants to advertise and market the Four Seasons rental program as a "great investment," without a factual basis for such claims.

      d.      Failing to disclose all known facts not observable to Plaintiffs which materially affected the value of the properties at issue. Interinvestments failed to disclose the

fact that the rental program would be structured on a *cost-recovery model* designed to prevent Plaintiffs from earning meaningful returns on their investments.

116.    Interinvestments' breach of its statutorily-imposed duty as a transactional broker directly and proximately caused damages to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against INTERINVESTMENTS REALTY, INC., for damages resulting from its breach of professional duty pursuant to Section 475.278, Florida Statutes, and requests such further relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all matters so triable.

Dated: November 12, 2010

s/ Gary E. Davidson
Michael Diaz, Jr. (Florida Bar No. 606774)
Attorney E-mail Address: mdiaz@diazreus.com
Carlos F. Gonzalez (Florida Bar No. 0494631)
Attorney E-mail Address: cgonzalez@diazreus.com
Brant C. Hadaway (Florida Bar No. 0494690)
Attorney E-mail Address: bhadaway@diazreus.com
Gary E. Davidson (Florida Bar No. 0069094)
Attorney E-mail Address: gdavidson@diazreus.com
DIAZ REUS & TARG, LLP
100 Southeast 2nd Street
2600 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Gary E. Davidson
Gary E. Davidson

## SERVICE LIST
**Begualg Investment Management Inc.,** *et al.*
**v.**
**Four Seasons Hotel Limited,** *et al.*
**CASE NO.: 10-22153-CIV-MARTINEZ-BROWN**
**United States District Court, Southern District of Florida**

Lawrence S. Gordon
E-mail Address:  lgordon@conroysimberg.com
Conroy, Simberg, Ganon, Krevans,
Abel, Lurvey, Morrow & Schefer, P.A.
3440 Hollywood Boulevard
Second Floor
Hollywood, Florida 33021
Phone: (954) 961-1400
Fax: (954) 967-8577
*Counsel for*
*FSM Hotel, LLC*
*Terremark Brickell II, Inc.*
*Terremark Brickell II, Ltd.*
*Millennium Partners, LLC*
*Four Seasons Hotel Limited*
*Millennium Partners Florida Property Management LLC*
Service via CM/ECF

Ben Esco
E-mail Address:  ben.esco@csklegal.com
Cole, Scott & Kissane
9150 South Dadeland Blvd., Suite 1400
Miami, Florida 33156-7855
Phone: (305) 350-5300
Fax: (305) 373-2294
*Counsel for*
*Millennium Tower Condominium Hotel Association, Inc.*
Service via CM/ECF

Francis A. Anania
E-mail Address:  faa@anania-law.com
Roberto A. Torricella, Jr.
E-mail Address:  rat@anania-law.com
Stefanie M. Mederos
E-mail Address:  smm@anania-law.com
Anania, Bandklayder, Baumgarten & Torricella
100 S.E. Second Street
Miami Tower, Suite 4300
Miami, Florida 33131-2144
Phone: (305) 373-4900
Fax: (305) 373-6914
*Attorneys for Interinvestments Realty, Inc.*
Service via CM/ECF