UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: **10-22153-CIV-MARTINEZ-MCALILEY**

BEGUALG INVESTMENT MANAGEMENT INC.,
a Florida corporation,

        Plaintiff,

vs.

FOUR SEASONS HOTEL LIMITED, a Canadian
Corporation, et al.,

        Defendants.

_____/

## <u>SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND</u>

Plaintiff, Begualg Investment Management Inc., a Florida corporation ("Plaintiff"), sues Defendants Four Seasons Hotels Limited, a Canadian corporation ("Four Seasons"), FSM Hotel LLC, a foreign limited liability company ("FSM"), Millennium Partners, LLC, a foreign limited liability company ("Millennium"), Terremark Brickell II, Ltd., a Florida limited partnership ("Terremark") and Interinvestments Realty, Inc. ("Interinvestments") (collectively "Defendants") and state:

## <u>INTRODUCTION</u>

1.    This case involves a fraudulent scheme pursuant to which Defendants, acting in concert, and as agents of one another, lured unsuspecting buyers into purchasing Condominium Hotel Units in the "Four Seasons Hotel Miami," then subsequently induced them to enter a sham Rental Program through misrepresentations and false guarantees of "positive cash flows," "streams of income," and advertisements identifying Four Seasons' condominium hotel units as "great investment[s]." Plaintiff, purchaser of six Condominium Hotel Units for $4,072,705.00, fell victim to this fraudulent scheme.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

2.     Contrary to guarantees of profit and steady revenue asserted by Defendants' agents, representatives and salespeople, Plaintiff has been left with nothing.  Plaintiff has yet to see its share of profits from rentals, has suffered the indignity of being blocked from access to its living quarters, and has been forced to incur costs to effectively maintain vacant rental units.

3.     Defendants duped Plaintiff into purchasing Condominium Hotel Units as investments based on misrepresentations and false guarantees. Using false claims that the Plaintiff would obtain positive cash flows from the Four Seasons' rental program, Defendants locked Plaintiff into paying a premium for Condominium Hotel Units and subsequently entering into a sham Rental Program, all the while relying on the prestigious brand name: "Four Seasons."

4.     The allegations detailed below involve a scheme to commit fraud, including, but not limited to, mail and wire fraud, depriving Plaintiff and other investors of capital and investment stability in violation of the Federal Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.,* as well as Florida statutory and common law.

5.     Defendants' racketeering enterprise involves a pattern of fraudulent misrepresentations and guarantees willfully and deliberately used to lock Plaintiff into multi-million dollar contracts and sham agreements. Using the prestigious Four Seasons brand as a hook, Defendants knowingly placed Plaintiff and other investors under the false belief that their investments would result in positive financial returns. Defendants guaranteed this belief knowing it was false.

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff, Begualg is a for-profit corporation with its primary place of business in Miami-Dade, Florida. Begualg was formed on August 28, 2002 for the purpose of holding the right, title, and interest to the Condominium Hotel Units units purchased by Begualg, through the acts of its agents Mr. Gustavo Riojas and Mrs. Bertha A. Simental.

7.     Non-parties, Mr. Riojas and Mrs. Simental are husband and wife, and are the Vice President and President of Begualg, respectively.  Both are citizens and residents of the Republic of Mexico.  At all times relevant to this action, Mr. Riojas and Mrs. Simental were agents of the Plaintiff, and at all times Defendants knew that any condominium hotel units purchased would be purchased in the name of the Plaintiff corporate entity.

2

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

8.      Defendant, Four Seasons is an internationally recognized hotel chain and a Canadian corporation established under the laws of the Province of Ontario, Canada, with its principal place of business in Ontario, Canada.

9.      Defendant, FSM is a limited liability company established under the laws of Delaware with its principal place of business designated as "c/o Millennium Partners, 1995 Broadway, New York, NY 10022." FSM was created and was, at all pertinent times, controlled by Defendant Millennium and Terremark, and acted in unison with and on behalf of Millennium and Terremark.

10.     Defendant, Millennium is a foreign limited liability company with its principal place of business at 1995 Broadway, New York, NY 10023. Millennium Partners is a developer of large-scale, mixed-use, luxury properties.

11.     Defendant, Terremark is a Florida limited partnership with its principal place of business designated as "c/o Millennium Partners/Corp. Compliance, 1995 Broadway, New York, NY 10023." Terremark was created and controlled by Millennium. Terremark has acted as an agent of Millennium at all times pertinent to this Second Amended Complaint.  Pursuant to Millenniums' racketeering scheme, Terremark acted as the owner-developer of the multi-purpose residential-commercial complex located at the 1400 block of Brickell Avenue in Miami-Dade County, described in the Declaration of Covenants, Restrictions and Easements ("Terremark's Declaration") as the Millennium Tower Project and marketed as the Four Seasons Tower (the "Project").

12.     Defendant, Interinvestments is a Florida corporation with its principal place of business in Miami-Dade County, FL.  Acting as an agent for Terremark, Millennium, and Four Seasons, Interinvestments, a real estate consulting and brokerage firm, assisted in promoting the Four Seasons condominium hotel units as investments to Plaintiff.

13.     FSM assumed responsibility and liability for all of the acts alleged herein that were performed by Terremark, and was assigned all rights and liabilities under the Rental Program Agreements discussed herein.

14.     Terremark (and then its successor FSM) entered into a Hotel Management Agreement with Four Seasons through which Four Seasons is obligated to and at all relevant

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

times did manage the luxury hotel known as the Four Seasons Hotel Miami (the "Hotel") and Condominium Hotel Units.

15.     Defendants Four Seasons, FSM, Millennium, Terremark and Interinvestments have constituted a joint enterprise (the "Four Seasons Enterprise") with respect to the Four Seasons Hotel Miami, and acted as agents for each other at all times pertinent to this Second Amended Complaint.

16.     Pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) this Court has subject matter jurisdiction over the federal RICO claims.

17.     The Court has supplemental jurisdiction over the remaining claims brought under Florida state law pursuant to 28 U.S.C. § 1367.

18.     This Court has general jurisdiction over all Defendants pursuant to § 48.193(2), Florida Statutes.  These Defendants are either residents of Florida, or engage in substantial rather than isolated activities within the State of Florida such as development, maintenance, marketing, sales, management, and operation of real property projects.  In addition and alternatively, this Court has specific jurisdiction over all Defendants pursuant to Section 48.193(l)(a), Florida Statutes, as this action arises from Defendants' operation, conducting, and carrying on of a business and business venture within the State of Florida.

19.     Pursuant to 18 U.S.C. § 1965(a), venue is proper in this district because Defendants are found, have agents, and/or transact business in this District within the meaning of 18 U.S.C. § 1965. Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and the real property that is the subject matter of this action is located in this district.

## GENERAL ALLEGATIONS

**A.     Condominium Hotels as Investment Properties**

20.     A condominium hotel is a real estate product that combines the features of a condominium and a hotel.  Typically located within a luxury hotel, condominium hotel units are sold to owners as full-service vacation homes and are typically purchased as investment property.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

21.     Developing the Four Seasons Project required a substantial amount of capital. Upon completion, the Project would be a multi-component, residential-commercial facility consisting of the following:

> a.  a Hotel component consisting of 221 Hotel Units (the "Hotel Units") in the Four Seasons Hotel, Miami (the "Hotel Lot");
>
> b.  a condominium hotel component consisting of eighty-four (84) residential condominium-hotel units (the "Condominium Hotel Units");
>
> c.  residential component consisting of private condominium units (the "Private Condominium Units");
>
> d.  a health/sports club and/or spa component of approximately 40,000 square feet;
>
> e.  an office component consisting of approximately 200,000 rentable square feet of office space;
>
> f.  a garage; and
>
> g.  10,000 square feet of rentable conference venue space.

22.     By combining the Hotel with the Private Condominium Units and the Condominium Hotel Units, Terremark and Millennium were able to use the proceeds from the sales of the condominium units to raise capital for construction and other operating costs, and to retire debt.  Having invested a substantial amount of capital into the Project, Terremark and Millennium had a very strong motive to say and do all that was necessary to close sales of the Condominium Hotel Units.

23.     Moreover, Four Seasons received a portion of all sales and likewise had strong motive to say and do all that was necessary to close sales of the Condominium Hotel Units.

24.     In the case of Four Seasons Project, a clear distinction was made between Private Condominium Units and the Condominium Hotel Units: all Private Condominium Units are located above the 36th floor of the Four Seasons Hotel building and were marketed as private residential property.  In contrast, the eighty-four (84) Condominium Hotel Units, occupying Floors 30 through 36 of the Four Seasons Hotel building - were designed for full integration into Four Seasons' Hotel operations.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

25.     For example, the decoration and furnishing of the Condominium Hotel Units were required to be in conformity with standard Four Seasons Hotel rooms and suites. The only material exception was that Condominium Hotel Units were equipped with kitchenettes and laundry machines.

26.     Four Seasons' Condominium Hotel Units were sold at a higher price than Private Condominium Units.  Indeed, purchasers paid a premium for the purported "investment features" of the units.

27.     However, a Condominium Hotel Unit has investment value only if it is regularly available to Hotel guests.  The potential revenue stream from hotel guests is a Condominium Hotel Unit's signature feature, which is why such units are typically purchased not as personal residences, but as investment properties, and are promoted as such.

**B.     Plaintiff Purchases the Four Seasons Condominium Hotel Product**

28.     In or around mid-to-late 2001, Emilio Cardenal ("Mr. Cardenal") and Ricardo Montalvan ("Mr. Montalvan") of Interinvestments sent, or caused to be sent, Mr. Riojas and Mrs. Simental brochures and a letter dated on or around July 23, 2001 stating that the Four Seasons was offering an investment opportunity in the form of Condominium Hotel at the new Four Seasons Project in Miami.  Mr. Riojas told Mr. Cardenal that he was interested in purchasing investment property through a Florida company to be formed.  The brochures and letter were sent via DHL to Mexico, and stated on Four Seasons letterhead, with indications that the Project was a "Millennium Partners Development," that, "On behalf of the Four Seasons Hotel and Tower, we are pleased to announce that we are introducing the condo-hotel product [being sold by affiliate Terremark] to the market.  Because of the overwhelming interest we are planning a soft opening now allowing select individuals, like you, an opportunity to make this **unique real estate investment**…….." *Emphasis added.*   The letter was signed by Thania Vernon, Sales Director.[1]

---

[1] As more fully set forth below, the Defendants *knew* at the time they prepared (Millennium, Terremark and Four Seasons) and sent (Interinvestments, through Messrs. Cardenal and Montalvan) these communications that the Hotel Condominium Units would not generate any positive cash flow for the Hotel Condominium Unit owner. As such, the subject Condominium Hotel Units that were promoted and eventually sold to Plaintiff were not viable investment products. Four Seasons, Terremark and Millennium Partners fraudulently labeled and advertised

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

29.      As a result of receiving the Millennium, Terremark and Four Seasons brochures and letter from Interinvestments, Mr. Riojas and Mrs. Simental planned a trip to Miami to look at the Four Seasons Project, among others.  Mr. Riojas and Mrs. Simental had several phone calls with Mr. Cardenal to schedule the trip and appointments to look at the Four Seasons Project. Mrs. Simental was ultimately unable to make the trip, and Mr. Riojas went without her.

30.      In or around July 2002, Mr. Riojas visited South Florida.  Messrs. Cardenal and Montalvan took Mr. Riojas to the Project and introduced him to Karim Leon-Velarde ("Mrs. Leon-Velarde"), sales agent for Millennium and the Four Seasons, selling condominiums owned by Terremark in the "Four Seasons Hotel Miami" ("Four Seasons").

31.      Mrs. Leon-Velarde held herself out and acted as an agent for Terremark, Four Seasons and Millennium at all times relevant to this action.

32.      During this visit in July 2002, Millennium, Four Seasons and Terremark, through Mrs. Leon-Velarde, and Interinvestments, through Messrs. Cardenal and Montalvan, promoted the Four Seasons condominium-hotel units as investments with the intention that Mr. Riojas would buy these units and earn a profit therefrom.

33.      During his meeting with Mrs. Leon-Velarde, Mr. Riojas informed Mrs. Leon-Velarde that he and his wife were looking for investment opportunities to purchase through a Florida company to be created, that would generate a positive cash flow.  In response, Mrs. Leon-Velarde strongly recommended Four Seasons' Condominium Hotel Units as a "great investment." According to Mrs. Leon-Velarde, purchasers of Four Seasons' Condominium Hotel Units were expected to enter a rental program for Four Seasons to manage and rent the purchased units, and for the purchasers and the Hotel to share revenue derived from unit rentals.

34.      In order to persuade Plaintiff, through Mr. Riojas, that the Four Seasons Condominium Hotel Units were superior investment vehicles, Mrs. Leon-Velarde specifically emphasized the prestige of the Four Seasons brand, the higher occupancy rates at Four Seasons

---

the subject condominium hotel units as "unique real estate investment[s]" for the sole purpose of defrauding Plaintiff of Defendants' deceptive practices.  Defendants prepared and transmitted these writings for the purpose of furthering Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

hotels compared with other hotels in Miami, and the equal treatment Four Seasons had promised to accord to the Condominium Hotel Units and traditional Hotel rooms.

35.     While at the Project, Mr. Riojas expressed concern to Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde that Four Seasons would be motivated to give priority to booking their wholly-owned Hotel rooms over Condominium Hotel Units, in order to gain more profit.  However, Mrs. Leon-Velarde repeatedly assured Mr. Riojas that Condominium Hotel Units would be advertised and rented out in exactly the same way as Four Seasons' traditional Hotel rooms.

36.     In fact, Mrs. Leon-Velarde, Mr. Montalvan and Mr. Cardenal told Mr. Riojas that traditional Hotel customers would prefer to stay in Condominium Hotel Units because of their better views, height, and kitchenettes.  Like other similarly-defrauded purchasers, Mr. Riojas was convinced that the Condominium Hotel Units promoted to them would be a regular part of the Four Seasons Hotel Miami's operations, and, as such, would generate positive cash flow. This conviction was based on Mrs. Leon-Velarde, Mr. Montalvan and Mr. Cardenal's affirmative misrepresentations made pursuant to the sales materials and techniques designed by Millennium, Terremark, Four Seasons and Interinvestments for the purpose of facilitating sale of Condominium Hotel Units.

37.     Mrs. Leon-Velarde, Mr. Cardenal and Mr. Montalvan specifically conveyed to Mr. Riojas that the purchase of Four Seasons Condominium Hotel Units was a good investment which would be profitable, because the units were associated with and part of the regular operation of the Four Seasons Hotel.

38.     In early August 2002, Mr. Riojas and Mrs. Simental traveled together to Miami and met with Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde at the Project site.

39.     At the time of this meeting, the Four Seasons Project was in its final stage of construction.

40.     At the time Mr. Riojas and Mrs. Simental met with Mrs. Leon-Velarde, (as agent of Millennium Partners, Terremark and Four Seasons) and Messrs. Cardenal and Montalvan (as agents of Interinvestments), these Defendants were actively promoting the Four Seasons Condominium-Hotel units as investment products.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

41.     During the early August meeting with Mrs. Leon-Velarde, Mr. Riojas and Mrs. Simental again informed Mrs. Leon-Velarde that they were looking for investment opportunities that would generate a positive cash flow. In response, Mrs. Leon-Velarde again recommended Four Seasons' Condominium Hotel Units as a "great investment."  Mrs. Leon-Velarde reiterated that purchasers of Four Seasons' Condominium Hotel Units were expected to enter a rental program for Four Seasons to manage and rent the purchased units, and for the purchasers and the Hotel to share revenue derived from unit rentals.

42.     Mrs. Leon-Velarde provided Mr. Riojas and Mrs. Simental with handwritten notes showing the cash flow projection for Four Seasons' Condominiums Hotel Units, as well as a table of rates to be charged to prospective lodgers.  Mrs. Leon-Velarde also had a flipchart or chalkboard upon which she detailed the promised returns to be earned.  Based on these notes and Mrs. Leon-Velarde's explanation, a Condominium Hotel Unit would generate profits for its owner once the Hotel's overall occupancy rate reached 30%. Mrs. Leon-Velarde then used different occupancy rates as examples to calculate return rates on each type of Condominium Hotel Unit, and provided these handwritten notes to Mr. Riojas and Mrs. Simental.

43.     Using these numbers, Mrs. Leon-Velarde, Mr. Cardenal and Mr. Montalvan persuaded Mr. Riojas and Mrs. Simental, that a Four Seasons Condominium Hotel Unit would yield a much higher return than other investment options. These expectations were based on Mrs. Leon-Velarde's representation that all of the Condominium Hotel Units would be marketed and rented in the same manner as the Four Seasons Hotel Units.

44.     In order to persuade Plaintiff, through Mr. Riojas and Mrs. Simental, that Four Seasons Condominium Hotel Units were superior investment vehicles, Millennium, Four Seasons and Terremark, through Mrs. Leon-Velarde, and Interinvestments through Messrs. Montalban and Cardenal, specifically emphasized the prestige of the Four Seasons brand, the higher occupancy rates at Four Seasons hotels compared with other hotels in Miami, and the equal treatment Four Seasons had promised to accord to the Condominium Hotel Units and traditional Hotel rooms.

45.     Mr. Riojas and Mrs. Simental expressed concern to Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde that Four Seasons would be motivated to give priority to booking their wholly-owned Hotel rooms over Condominium Hotel Units, in order to gain more profit.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

However, Mrs. Leon-Velarde repeatedly assured Mr. Riojas and Mrs. Simental that Condominium Hotel Units would be advertised and rented out in exactly the same way as Four Seasons' traditional Hotel rooms.

46.     At this meeting, Mrs. Leon-Velarde, Mr. Montalvan and Mr. Cardenal told Mr. Riojas and Mrs. Simental that traditional Hotel customers would prefer to stay in Condominium Hotel Units because of their better views, height, and kitchenettes. Like other similarly-defrauded purchasers, Mr. Riojas and Mrs. Simental were convinced that the Condominium Hotel Units promoted to them would be a regular part of the Four Seasons Hotel Miami's operations, and, as such, would generate positive cash flow. This conviction was based on Mrs. Leon-Velarde's, Mr. Montalvan's and Mr. Cardenal's affirmative misrepresentations made pursuant to the sales materials and techniques designed by Millennium, Terremark, and Four Seasons for the purpose of facilitating sale of Condominium Hotel Units.

47.     Mrs. Leon-Velarde, Mr. Cardenal and Mr. Montalvan specifically conveyed to Mr. Riojas and Mrs. Simental that the purchase of Four Seasons Condominium Hotel Units was a good investment which would be profitable, specifically because the units were associated with and part of the regular operation of the Four Seasons Hotel.

**C.     The Defendants' Sham Investment Scheme**

48.     The Four Seasons Condominium Hotel scheme, which Defendants advertised as a superb investment product, was later discovered to be a sham. Specifically, Defendants, working in unison and as agents of one another through, *inter alia,* Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde, conspired and collaboratively devised a sophisticated scheme to lure unsuspecting purchasers into buying Condominium Hotel Units based on guarantees that these units would generate positive returns because they would be made available for occupancy as Four Seasons' Hotel rooms and suites. The only people that this scheme's perpetrators intended to benefit were themselves, by depriving the purchasers of the benefits of their investments.

49.     Pursuant to this scheme, Defendants designated a percentage of the total Hotel rooms as Condominium Hotel Units for sale, based on the Hotel's anticipated vacancy rate. By doing so, Defendants received multiple benefits including: (1) immediate income to the developers Millennium and Terremark, as well as to the Four Seasons; (2) commissions to the developer's sales agents and promoters of the Condominium Hotel Units, including, *inter alia,*

10

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

Interinvestments; (3) condominium management fees collected on those units on a monthly basis; (4) creation of an overflow capacity for the Four Seasons Hotel during periods of peak demand, thereby allowing Four Seasons Hotel to achieve a greater profit, while effectively excluding these Condominium Hotel Units during the seasons when Hotel rooms were in low demand, so as not to negatively affect Four Seasons' Hotel room income; and (5) income to Terremark and Four Seasons from "access fees" for occupancy of the units so that the Hotel Condominium Unit owners shared the hotel operation expenses- without receiving meaningful benefits.

50.     Thus, contrary to the representations by Mrs. Leon-Velarde, Mr. Montalvan and Mr. Cardenal to Mr. Riojas and Mrs. Simental, Defendants, Four Seasons and Terremark subordinated the Condominium Hotel Units to Four Seasons' regular Hotel rooms and suites for rental purposes: *they would be available to lodgers only if all Four Seasons traditional guest rooms were fully booked, or a kitchen unit was specifically requested. See* Exhibit "A"- Rental Program Agreement ("RPA") 3.2(a). Because the percentage of Condominium Hotel Units within the Hotel closely corresponded to the Hotel's anticipated vacancy rate, as long as the Hotel was occupied at or below its normal rate, there was no chance the Condominium Hotel Units would be used.  Thus, despite Messrs. Cardenal and Montalvan and Mrs. Leon-Velarde's contrary representations to the Condominium Hotel Units owners prior to and at the time of their purchase, under Defendants' scheme, it was likely that the Condominium Hotel units would rarely, if ever, be rented to lodgers, assuming normal Hotel occupancy rates.

51.     With regard to the marketing and sales activities, the employees and agents of Terremark, Millennium and the Four Seasons (There were others who met with Mr. Riojas and Mrs. Simental, but they only recall Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan's names, at this time) all held themselves out to Mr. Riojas and Mrs. Simental, as representatives of one another.  The Defendants worked in unison, and it was impossible to understand or know for whom Mrs. Leon-Velarde or any particular representative spoke.  Prior to and following Plaintiff's purchase of its Condominium Hotel Units, Mr. Riojas and Mrs. Simental were provided with business cards from representatives of Millennium and Four Seasons, both of which companies were listed on the same business card, further blurring any distinction between the Defendants.

11

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

52.     Pursuant to their scheme, Defendants Four Seasons, Terremark and Millennium (through Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde) designed, adopted and made a number of fraudulent statements to Plaintiff, prior to and at the time of the condo-hotel purchase, including, but not limited to the following:

a. All Condominium Hotel Units would be treated exactly as Four Seasons Hotel rooms in terms of their availability to lodgers;

b. The Condominium Hotel Units would generate positive cash flow for purchasers based on Hotel occupancy rate of 30% or above.

c. Investors were guaranteed optimal investment returns by purchasing Condominium Hotel Units and participating in the rental program.

53.     At all times pertinent to this action, all Defendants used the Four Seasons brand name, both verbally and through written sales materials, to lend the illusion of legitimacy and prestige to the fraudulent Condominium Hotel scheme.   The name Four Seasons eased purchasers' doubts, and gave them a false sense of comfort in thinking such a prestigious Hotel chain would not run a fraudulent investment program, a program which, unknown to the condo-hotel purchasers, was actually running on a *cost-recovery model*, meaning that none of the Defendants would profit when the Condominium Hotel Units were rented. The investors' trust was misplaced because there was zero incentive for the Defendants to rent to the Condominium Hotel Units to the public.

54.     Four Seasons, actively promotes its reputation for fair dealing by asserting that its "guiding principle is the Golden Rule – to treat others as you wish to be treated:"

> *At Four Seasons, corporate values are much more than a programme or a policy – they define who we are and inform the decisions we make.* <u>The company's guiding principle is the Golden Rule – to treat others as you wish to be treated –</u> and as such, Four Seasons strives to have a long-lasting, positive influence on the communities where we operate and on the people we employ and serve around the world. We believe that this goal is integral to our success as a company. This commitment is expressed consistently in our actions through three main areas of focus. By acting in a manner consistent with our corporate values, Four Seasons will continue to seek opportunities to enrich and contribute positively to the global community.

*See* http://www.fourseasons.com/about_us/corporate_values/.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

55.     But for Mr. Riojas and Mrs. Simental's strong belief, fostered by the Defendants through Mr. Cardenal. Mr. Montalvan and Mrs. Leon-Velarde, that the Four Seasons was an honest and ethical member of the business community, and that it associated itself with similar businesses, Plaintiff would not have purchased its respective Condominium Hotel Units.

56.     The scheme was designed for the purpose of defrauding purchasers of their money. Defendants' above-cited statements and representations in furtherance of this scheme were knowingly false as to certain material facts used to induce Plaintiff to enter into purchase agreements and the sham RPA.

57.     In addition to the misrepresentations outlined above there were additional instances of misrepresentation. For example:

a.     On or around July 23, 2001, Mrs. Leon-Velarde sent, or caused to be sent, from her office in Miami on behalf of the Four Seasons, Millennium, and Terremark, by mail or email, a misleading Four Seasons Miami Rental Program Funds and Cost Responsibility Outline (the "Outline") to Mrs. Simental in Mexico, which Outline is identical to Exhibit "B."  Mrs. Simental cannot currently locate her copy of the Outline.  In the Outline, Four Seasons and Terremark indicated that the Hotel and its manager would spend a part of its share in the rental income on integrating the Condominium Hotel Units with the Hotel's reservation system and undertake sales and marketing activities *See id.* Defendants, however, never intended to include the Condominium Hotel Units into Four Seasons' regular reservation system, nor to undertake good faith sales and marketing activities. Consequently, the transmittal of the writings was for the purpose of furthering Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

b.     In or around July 2002, Mrs. Leon-Velarde while located in her Miami office, as agent for the Four Seasons, Millennium Partners, and Terremark, contacted Mrs. Simental by phone in Mexico.  During the conversation, Mrs. Leon-Velarde reassured Mrs. Simental that the Condominium Hotel Units offered to her and Mr. Riojas would be fully integrated into the Miami Four Seasons' Hotel's regular operation and lodging database and that because of this, the Condominium Hotel Units were excellent investment products. Mrs. Leon-Velarde knowingly made these fraudulent statements in furtherance of the scheme described above, which was designed to lure prospective investors into purchasing the subject Condominium Hotel Units with false promises of a profitable investment.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

    c.      Prior to Plaintiff signing the Purchase Agreements in July and August 2002, and to further promote the units, Mrs. Leon-Velarde, transmitted, or caused to be transmitted multiple email and mail correspondence to Mrs. Simental in Mexico, promoting Four Seasons Condominium Hotel Units as a great investment. These and other writings, not currently in Plaintiff's possession, were transmitted to further Defendants' fraudulent scheme in violation of 18 U.S.C. § 1343.

    d.      Prior to closing on the Condominium Hotel Units in July and August of 2002, and again in December of 2003, Mrs. Leon-Velarde falsely stated to Mr. Riojas and Mrs. Simental that Florida law prevented Millennium, Terremark and Four Seasons from providing them with a copy of the Rental Program Agreement (the "RPA") prior to closing, and refused to provide Plaintiff with the RPA until after they closed.  These conversations took place during the meetings referenced herein at the Project.  Millennium, Terremark and Four Seasons, through Mrs. Leon-Velarde intentionally provided a false basis for not providing the RPA to Plaintiff because the Defendants knew that had Plaintiff been given a copy of the RPA prior to closing that it would not have purchased its respective Condominium Hotel Units.

    58.     Prior to closing and at all of the pre-closing meetings referenced herein, Defendants Four Season, Terremark and Millennium, through Mrs. Leon-Velarde, and Interinvestments, through Messrs. Montalvan and Cardenal, also:

    (a)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Four Seasons only intended to rent the Condominium Hotel Units if and when necessary to accommodate long term rentals and overflow guests from the Hotel;

    (b)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Condominium Hotel Units would not be easily found on the Four Seasons website;

    (c)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Condominium Hotel Units would not be on the Global Distribution System (the "GDS") or advertised on websites such as Expedia.com, Hotel.com, and Travelocity.com, etc.;

    (d)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Condominium Hotel Units would not be marketed and advertised in the same manner that the Hotel Units would be marketed and advertised.

    (e)     Fraudulently implied to Plaintiff's representatives Mr. Riojas and Mrs. Simental

that the 20% would be sufficient to cover the cost of marketing and advertising the Condominium Hotel Units in the same manner as the Hotel Units, prior to closing, (despite knowing 40% or more was standard for Four Seasons' other Hotel/Condominium Hotel Units projects around the world);

(f)     Demanded, after the closing through agents Ricardo Acevedo and Carolina Serrano, that Plaintiff pay 40% of the revenue from the rentals of their respective Condominium Hotel Units if Plaintiff wanted their Condominium Hotel Units marketed in the same manner as the Hotel Units, thereby performing the last step in their bait-and-switch marketing campaign;

(g)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Condominium Hotel Units would not be able to be booked by a potential lodger through the Central Reservation Office nor on the Four Seasons website;

(h)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the actual pricing of the Condominium Hotel Units would be unavailable to the public and to the Condominium Hotel Unit Owners;

(i)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that the Condominium Hotel Units would be deliberately priced so much higher than comparable Hotel Units that it would not be economically rational for a prospective lodger to rent a Condominium Hotel Unit;

(j)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental that when the Hotel Units were oversold, the Condominium Hotel Units would be used for low paying lodgers while higher paying lodgers would be placed in the Hotel Units;

(k)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental there would not be any training for employees or the General Manager specific to the Condominium Hotel Units or Rental Program Agreement; and

(l)     Intentionally failed to tell Plaintiff's representatives Mr. Riojas and Mrs. Simental the Four Seasons personnel and management would be incentivized to rent Hotel Units to the exclusion of Condominium Hotel Units.

**D.     The RPA's Terms are Concealed**

59.     All Defendants through Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde used a calculated, step-by-step approach to carry out their fraudulent scheme. Although the rental

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

program was a component of the condominium-hotel "investment product" sold to investors, all Defendants, through Messrs. Cardenal and Montalvan and Mrs. Leon-Velarde, used a bifurcated approach so as to hide the material terms and provisions of the RPA from the investors until after they executed the condominium hotel purchase agreements with Terremark.  At step one, purchasers were offered a condominium hotel purchase agreement.  It was only after the real estate transaction was closed that purchasers were shown, for the first time, the core investment document – the RPA.  Although the RPA contains terms and conditions that were different from the oral/promotional promises Defendants made before closing (especially the rental terms and conditions), it was too late for the investors to back out of the deal because they had already purchased the unit(s).

60.    In an effort to further appease investors, Defendants (through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal) verbally offered an attractive profit-split rate in the RPA: 80% for the unit owner and 20% for the Hotel on revenue from the unit rental. This rate served a mere decorative function because, as later determined, the scheme was designed so that it was nearly impossible for unit owners to receive steady rental income. The split rate was also commercially impractical, meaning no bona fide condo-hotel program could be sustained by the Hotel at such a rate.  Also, despite Defendants' representation that the 20% "revenue share" to Terremark (and later FSM when FSM assumed Terremark's role) was to be spent on marketing their Condominium Hotel Units to end-users, there was never any plan to market these units as Four Seasons Hotel rooms or in a good faith manner in the first instance.

**E.    Plaintiff Enters into the Purchase Agreements Under Defendants' False Pretenses**

61.    On August 5, 2002, "Mr. Riojas and/or assign to FL corp" entered into Purchase Agreements for six (6) "Millennium Tower Condominium Hotel" units: **3011** ($ 422,400.00), **3012** ($ 786,705.00), **3112** ($ 800,000.00), **3212** ($ 814,000.00), **3311** ($ 435,600.00) and **3312** ($ 827,200.00). *See* Exhibit "C"- Example of Purchase Agreement, Condominium Hotel Unit 3011. Plaintiff paid a total of $4,072,705 for these six Condominium Hotel Units. Prior to its execution of the purchase agreements on August 5, 2002, Mr. Riojas was again reassured by Mrs. Leon-Velarde that Four Seasons, Terremark and Millennium would (1) advertise the Condominium Hotel Units as rooms within Four Seasons; (2) treat the rental of Condominium Hotel Units as Four Seasons' Hotel units; (3) permit use of the same toll-free phone system used

16

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

for all Four Seasons Hotels to directly book Condominium Hotel Units; (4) give customers the choice to rent the Condominium Hotel Units; and (5) make all amenities available for guests staying in the Condominium Hotel Units.   Mrs. Leon-Velarde also affirmed that all Condominium Hotel Units would be advertised and rented by Four Seasons Hotel Miami under the name *Four Seasons* and that Plaintiff was guaranteed to receive a profit stream for rooms which would "definitely" be rented out.

62.     Terremark, Millennium and Four Seasons collected down-payments, initiated by cross-border wire transfers from the Plaintiff's representative Mr. Riojas and Mrs. Simental.

63.     Interinvestments' agents Messrs. Montalvan and Cardenal knew or had readily available information to ascertain that the Four Seasons Condominium Hotel Units were devoid of investment value. As a benefit for facilitating sales of Four Seasons Condominium Hotel Units, Interinvestments received a 5% commission from each unit sold.

64.     Moreover, Millennium, Four Seasons and Terremark, acting through Mrs. Leon-Velarde, knew or had readily available information to ascertain that the Four Seasons Condominium Hotel Units were devoid of investment value.  Specifically, on May 23, 2003 more than six months prior to Plaintiff's closing, the Four Seasons general manager, Ignacio Gomez sent an email to Millennium and Four Seasons employees stating, "My contention is that any owner (but particularly those who buy multiple units), will find very quickly that we are unable to rent their units often enough for their income to be meaningful."

65.     Prior to their execution of the purchase agreements, Plaintiffs' agents Mrs. Simental and Mr. Riojas had not received the RPA, which purportedly outlined the terms and conditions of the Four Seasons' Rental Program. Of course, Mr. and Mrs. Leon-Velarde, as well as Defendants' other agents, orally highlighted the RPA's contents.

66.     Based on these representations, coupled with past guarantees outlining the projected profits for them, Plaintiff  signed the purchase agreements. Once Plaintiff  entered the Purchase Agreements, Defendants succeeded in completing the first step of their fraudulent undertaking: Plaintiff  was locked into a $4,072,705 transaction.

67.     Prior to closing at the Project site, it was reasonably foreseeable and Mr. Riojas, Mrs. Simental, Messrs. Cardenal and Montalban and Mrs. Leon-Velarde specifically discussed that the Plaintiff may at some point desire to resell their Condominium Hotel Units and that the

17

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

amount of rental income generated by the Condominium Hotel Units would materially affect their resale price.

68.     On August 28, 2002, Mr. Riojas and Mrs. Simental created Begualg for the sole purpose of holding title, interest, and ownership in the six purchased Condominium Hotel Units. On December 4, 2003, Mr. Riojas and Mrs. Simental assigned and transferred to Begualg any interests they had previously held in the six Condominium Hotel Units.

**F.     Plaintiff Closes on the Units in December 2003**

69.     Begualg closed on the units on or around December 4, 2003.

70.     Interinvestments and Four Seasons obtained their commissions upon closing, by virtue of cross-border wire transactions initiated by Plaintiff from Mexico.

**G.     Plaintiff Receives and Executes the RPA**

71.     On or around December 6, 2003, Four Seasons, Millennium and Terremark, through Julian Leon-Velarde ("Mr. Leon-Velarde") presented Mr. Riojas and Mrs. Simental with the RPA at the Project site's pool deck.  Messrs. Cardenal and Montalban were also present.  The RPA was a thirty-four (34) page document (not including the exhibits) in English only. Both Mr. Riojas and Mrs. Simental are native Spanish speakers and are not fluent in English.  When they asked for a Spanish version of the RPA, they were told that there was none.

72.     Relying on the prior representations and assurances of Defendants' agents Mr. Leon-Velarde and Mrs. Leon Velarde, as well as Messrs. Cardenal and Montalban, and not suspecting any deviation from the promises Mrs. Leon-Velarde and Messrs. Cardenal and Montalban had made before, as detailed above, Plaintiff signed the RPA.

73.     As later determined, the RPA actually contained complex terms and conditions that reflected Defendants' fraudulent scheme and were very different from Mr. Leon-Velarde and Mrs. Leon Velarde, as well as Messrs. Cardenal and Montalban's previous guarantees and representations in many material respects.  In particular:

a.      Pursuant to the RPA, while Plaintiff would receive their eighty-percent (80%) "split" of income generated by rental of their units, it was not, as Mr. and Mrs. Leon-Velarde represented, a split of gross revenues. It was, in fact, to be a split of "Adjusted Income" Ex. "A" at, 4.1(d). Adjusted income would include gross revenue for the units' rental, *minus* (1) current daily access charges assessed under the Condo Hotel Declaration; (2) wholesaler commissions, if

18

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

any, charged in connection with the guests' stay; (3) deposits into the FF&E Reserve for furnishing, fixtures and equipment costs, (4) any lodging taxes payable to governmental authorities based on such rental. *Id.* at ¶ 4.1.  Defendants also received all non-rental income generated from a guest's stay at the Hotel, including food and beverage services. *Id.*

b.      Contrary to representations made by Mr. and Mrs. Leon-Velarde at the Project premises on December 6, 2003 and Mrs. Leon-Velarde and Messrs. Montalban and Cardenal prior to closing at the Project premises, the RPA provided that rental of regular rooms in the Hotel would be given "priority" over rental of condo-hotel units in the Rental Program. *Id.* at ¶ 3.2(a)(D).

c.      The RPA also gave Terremark (and later FSM) and Four Seasons the exclusive authority to rent Plaintiff's units. *Id.* at ¶ 3.1. Although the RPA provided that the Hotel would maintain a reservation system to process all reservations received from prospective lodgers, it also provided that reservations for condo-hotel units would *not* be accessed through the central reservation system and database maintained by Four Seasons Hotel and its affiliates. *Id.* at ¶ 3.2(c). As a result, *prospective lodgers would not be able to select a unit through the Hotel's reservation system.* Unless the Hotel recommended a Condominium Hotel Unit, lodgers would not even know that Condominium Hotel Units existed or were available.  In fact, pursuant to Defendants' fraudulent scheme, the Condominium Hotel Units were to be used as overflow and long-term rental accommodation options only - to be recommended to prospective lodgers only if *all* Four Seasons' Hotel Units were booked.  Moreover, Four Seasons and Terremark (and later FSM) also typically referred a prospective lodger to other luxury hotels, rather than try to rent them a Condominium Hotel unit, because the Hotel would receive net commissions from their competitors in amounts higher than what they would receive through profit sharing with Condominium Hotel Units.

73. The RPA also contained the following provisions:

a.  The Four Seasons Hotel was to act as the rental agent of the condo-unit owners, and as such had the exclusive authority to rent and administer the subject units. *Id.* at ¶ 3.1.

b.  In exchange for this authority, the Hotel undertook to use "reasonable commercial efforts" to rent out Plaintiff's units. *Id.* at ¶ 3.2.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

c.   The Hotel was to establish practices "[d]esigned to achieve an equitable treatment of the Subject Unit with other Hotel Residence Units .... "*Id.* at ¶ 3.2. (a).

d.   The Hotel further agreed to (1) provide marketing, sales, and advertising services to generate rentals of the condo-hotel units in the Rental Program, *id.* at ¶ 3.2(b); (2) provide and maintain a reservations system as part of the Hotel system to process reservations from prospective customers for the units, *id.* at ¶ 3.2(c); (3) negotiate all terms and conditions for the rental of the units with prospective customers, *id.* at 3.2(d); (4) arrange to provide hotel services to occupants of Plaintiff's  unit, including both base and a la carte Hotel Services, *id.* at ¶ 3.2(e); and (5) collect all income generated and then submit an accounting to Plaintiff within a 20-day period. *Id.* at ¶ 4.1(c).

74.     Terremark, Four Seasons, and Millennium directly competed with the Condominium Hotel Owners despite acting as a rental agent.

75.      Not surprisingly, Plaintiff has received only *de minimus* rental income from their investments.  Had Millennium, Terremark (and later FSM) and Four Seasons marketed, rented and otherwise managed Plaintiff's Condominium Hotel Units the way they and Interinvestments led Plaintiff to believe they would, then Plaintiff's Condominium Hotel Units would have generated substantially more rental income and consequently be worth substantially more on the resale market.

76.     Though purportedly an "option," participation in the rental program was in fact compulsory because it was impractical for a Condominium Hotel Unit purchaser to later rent its unit without the basic services offered under the rental program.  In 2007, Plaintiff withdrew four units (3012, 3112, 3212, and 3312) from the rental program in the hopes of renting the units on its own.  In retaliation, the Hotel terminated concierge service, cable television, and phone service to the withdrawn units.  While withholding essential services, the Hotel charged a $70 daily access fee for each guest occupying the units.  Defendants referred to the RPA and condominium documents to vindicate their right to terminate the services and charge access fees.  Plaintiff was left without recourse.  Eventually Plaintiff gave in and reinstated the four units in the rental program.

77.     Four Seasons, Terremark and Millennium, through Carolina Serrano and Ricardo Acevedo, claimed that rental income was deficient because the Project was new and had limited

20

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

clientele. However, they repeatedly promised that the situation would improve with time and that the Condominium Hotel Units would generate positive cash flow.  These representations were made not only in face-to-face contact with the Condominium Hotel Units owners, but also over the telephone and through emails in response to the Plaintiff's and other purchasers' inquiries. These representations, however, were patently false because the true reason for the deficiency of rental income was Defendants' fraudulent scheme.

**H.** **Plaintiff Begins to Uncover the Fraud and Wrongdoing**

78.     In or around mid 2008, Mr. Riojas became the Treasurer of the Condominium Hotel Homeowner's Association.  As a result thereof, Plaintiff for the first time heard rumors at Condominium Hotel Units owners' association meetings that the Hotel was not undertaking any effort to rent out Condominium Hotel Units - in breach of the RPA.

79.     In an effort to investigate this rumor, Mr. Riojas placed several calls to the Hotel's central reservation line 1-800-819-5053 ("800 number" used for all Four Seasons reservations in the United States and Canada), pretending to be a prospective lodger interested in a condominium hotel unit. Mr. Riojas was told by the reservationist staff members that they were not aware of the availability of Condominium Hotel Units for rent within the Hotel. Mr. Riojas, however, knew that the representation was false because his Condominium Hotel Unit was readily available for occupancy and should have been presented in response to his inquiry.

80.     On information and belief, the Hotel staff was trained to answer a prospective lodger's inquiry about Condominium Hotel Units by either ignoring the inquiry, or by indicating that these units were available for long-term rental (over one month) only.

81.     Thereafter, Plaintiff conducted its own research as to news media, publications, and the internet, and was unable to locate a single advertisement relating to Condominium Hotel Units in their Four Seasons' Hotel. Yet the monthly statements Plaintiff received showed that Terremark and Four Seasons obtained 20% of the net rental income from Plaintiff's Condominium Hotel Units which, per Defendants' Four Seasons, Millennium's and Terremark previous representations in Exhibit B, were to be used to cover the expenses for marketing the Condominium Hotel Units.

82.     Terremark, Millennium and Four Seasons, through Mr. Leon-Velarde at the post-closing meeting on or around December 6, 2003, also informed Mr. Riojas and Mrs. Simental

21

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

that the 20% "profit share" they charged to owners was used to pay, *inter alia,* the compensation of a marketing representative designated to rent Condominium Hotel Units. However, rather than marketing the Condominium Hotel Units, Four Seasons' "designated marketing representative" has been primarily marketing Four Seasons Hotel rooms, even though the Condominium Hotel Unit owners have been paying his/her compensation.

83.     The limited marketing done for the Condominium Hotel has been ineffective, yet Millennium, Terremark and Four Seasons have not changed their marketing activities, and have also diverted business resulting from the marketing to the Hotel.  Since no good faith marketing has been conducted to promote the Condominium Hotel Units, the monthly statements, which have been transmitted through U.S. mail and through facsimile by Four Seasons, Terremark and FSM from 2003 up to the present, were fraudulent and in furtherance of Defendants' scheme.

84.     In 2009, the Four Seasons, Terremark, and Millennium Defendants approached Plaintiff in an attempt to modify the RPA. The proposed modification included reducing the profit split on revenue from the unit rental from 80% for the unit owner and 20% for the Hotel, to 60% for the unit owner and 40% for the Hotel. In return, the Four Seasons, Terremark, and Millennium indicated that they would *begin* making Condominium Hotel Units available for rental on the Four Seasons website- something which should .have been undertaken by the Four Seasons, Terremark, and Millennium Defendants pursuant to ¶ 3.2(a) of the RPA and Exhibit B hereto at the outset of the relationship. *See* Ex. "A" at ¶ 3.2(a) (to establish practices "[d]esigned to achieve an equitable treatment of the Subject Unit with other Hotel Residence Units …. "). The modification never came to fruition and to this day the Condominium Hotel Units cannot be booked on the Four Seasons Hotel web site.

**I.     Defendants Breached Their Duties to Plaintiff**

**a.     Failure to Establish Daily Rental Rates**

85.     Paragraph 4.1(b) of the RPA provides that the Daily Rental Rate will be established based on a variety of factors, including the time of year.

86.     In breach of this provision, the same rates were being charged in low season as were being charged during high season.

87.     Moreover, by charging *i.e.,* $400.00 for one room in the Four Seasons Hotel Miami, and $2,000.00 for one of the Plaintiff's two bedroom, two bathroom Units, it does not

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

make financial sense for a prospective lodger to rent one of the Plaintiff's Units. For example, two adults and two children could rent two adjoining rooms for $800.00, or pay $2,000.00 for a two bedroom, two bathroom Condominium Hotel Unit.[2]

88.     In fact, the Four Seasons former General Manager admits it prices the Condominium Hotel Units higher than comparable Hotel Units so as to prevent the Condominium Hotel Units from having an "unfair advantage."

89.     The two bedroom suites in the Hotel are also priced at much lower rates than the two bedroom units in the Hotel Condominium, such that it does not make financial sense for a lodger to rent one of the Plaintiff's Units.

90.     The Four Seasons, Terremark and FSM engaged in deliberately predatory pricing activities so as to preclude rental of the Plaintiff's Hotel Condominium Units. On the contrary, when the Hotel was full, Four Seasons, Terremark and later FSM, would put low paying business in the Condominium Hotel Units, while putting higher paying business into the Hotel.

91.     Condominium Unit owners asked the Four Seasons to reduce the prices of their Units, and only in mid-2008 has the Four Seasons ostensibly agreed to provide a seasonal rate structure, as required under the RPA.

92.     However, as admitted by the Four Seasons' General Manager, the actual rates being charged for the Condominium Hotel Units are not published, thus the seasonal rate structure provides no benefit in terms of the ability to rent the Units.

93.     Four Seasons, Terremark and FSM refuse to remedy the damages caused by years of failing to abide by ¶ 4.1(b), and the Four Seasons, Terremark and FSM refuse to provide information regarding whether the new seasonal rate structure is competitive with the rates being charged for Hotel Units.

   **b.     Failure to Use Reasonable Commercial Efforts to Provide Marketing, Sales and Advertising services**

94.     In addition to the failures set forth above, pursuant to ¶ 3.2(c) of the RPA, "reservation inquiries received by the FS central reservation system relating to the Hotel

---

[2]     Meanwhile, when the Four Seasons. Terremark and FSM needed Condominium Hotel Units to accommodate overflow, they place lodgers in Plaintiff's Condominium Hotel Units for less than $200.00 per night.

23

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

Residence Units or pursuing similar lodging product in the competitive Miami market will be directed to the Hotel." This provision of the RPA is regularly breached.

95.     Moreover, the Four Seasons often does not acknowledge the existence of the kitchen units even when prospective lodgers call to request such a unit.

96.     In fact, persons calling as prospective lodgers have been told that units with kitchens were only available if the prospective lodger was going to rent a unit for a month or longer.

97.     The Four Seasons representatives have also ignored specific requests from prospective lodgers whose request criteria would mandate rental of the Plaintiff's Unit. The representatives ignore the specific request, and then try to "steer" the prospective lodgers into renting one of the Unsold Terremark Units or a Hotel Unit.

98.     When the Four Seasons does direct the prospective lodger to the Hotel Condominium, the Hotel reservation desk has referred prospective lodgers to the "sales department," and gives the prospective lodger another number to call.

99.     Logistically, a prospective lodger will not want to call three phone numbers to make a reservation, rendering this yet another bad faith and predatory practice.

100.     Other Condominium Hotel Unit owners have complained that the phone in the sales department rang up to eighteen times before the caller hung up.

101.     On another occasion, when a prospective lodger called the Four Seasons in Miami directly, the caller was promised a return phone call, which took more than three hours to receive.

102.     Four Seasons breached its obligation to use commercially reasonable efforts under ¶ 3.2(b) of the RPA by not:

(a)     Allowing prospective lodgers access to view the availability of the Condominium Hotel Units on the Hotel's website;

(b)     Allowing prospective lodgers access to view the prices of the Condominium Hotel Units on the Hotel's website;

(c)     Allowing prospective lodgers to receive information about the existence of the Condominium Hotel Units, including but not limited to, informing them of the existence and availability of the Condominium Hotel Units when they call the

24

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

Hotel's reservation system;

(d)    Allowing prospective lodgers to access information and make reservations for the Hotel Condominium Units through ordinary and commercially reasonable methods, including participation and/or inclusion in the industry accepted e-commerce channels such as, without limitation, Expedia.com, Travelocity.com and Hotels.com;

(e)    Pricing the Condominium Hotel Units for rental at commercially competitive rates that are timely adjusted to account for the promised ordinary and commercially accepted factors such as the availability of similar units from competitors, the time of year, the length of stay and overall demand (basic revenue management); and

(f)    Refraining from taking from such other actions which discourage prospective lodgers from renting the Condominium Hotel Units due to unfair pricing and steering prospective lodgers from the Condominium Hotel Units.

**c.      Failing to Report and Pay Plaintiff  revenue earned**

103.    Paragraph 4.1(d) of the RPA provides that Plaintiff shall receive eighty percent (80%) of the Adjusted Income generated by the Units.  Due to the wrongful conduct and theft by Terremark, FSM and Four Seasons, the Plaintiff's funds have been withheld and misrepresented.

104.    All conditions precedent to bringing this action have been performed, have occurred, or have otherwise been waived.

105.    Plaintiff has retained the undersigned legal counsel and are obligated to pay said counsel reasonable attorneys' fees and costs.

106.    Pursuant to the RPA and the statutes set forth below, Plaintiff is entitled to recover their reasonable attorneys' fees and costs.

107.    As a result of the Four Seasons, Terremark's and FSM's violations of the law enumerated herein, the Plaintiff has been damaged, including the loss of profits from the loss and/or lack of rental income that should have been realized from the Units.  In addition, as a result of the actions complained of, the Units are not as marketable as they should be for resale to third parties, an occurrence that was specifically contemplated by all parties at the time of the sale.  Moreover, as a result of the actions complained of, Plaintiff's Condominium Hotel Units have suffered a drastic diminution in value.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

108.    Begualg's lost profits from anticipated and promised rental income, the lack of marketability and diminution in value were foreseeable and actually caused by all Defendants' illegal conduct complained of herein.  These damages actually and proximately flow from the violations of the covenant of good faith and fair dealing.  However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

**J.    The Enterprise**

109.    At all times material to this complaint, all Defendants together with their agents, representatives, employees, and subordinate officers, have and continue to constitute an "enterprise" as the term is defined in Title 18 U.S.C. §1961(4), which enterprise has engaged in, and the activities which affected, interstate and foreign commerce.  The agents with whom Plaintiff worked from Millennium, Terremark, and Four Seasons were Mr. and Mrs. Leon Velarde.  FSM assumed the liabilities for Terremark complained of herein.  The agents with whom Plaintiff worked from Interinvestments were Messrs. Montalvan and Cardenal.  The enterprise has been, and continues to use, fraudulent misrepresentations and false profit projections transmitted through, among other things, U.S. mail, interstate and international courier services, and interstate wire, to lure investors into purchasing high-end Condominium Hotel Units in the Four Seasons Hotel and to offer them a rental program "investment" product that was designed to generate little to no return, but for the most part only costs.

**COUNT I**

**RACKETEERING INFLUENCED AND CORRUPT**

**ORGANIZATIONS ("RICO"), TITLE 18 U.S.C. § 1962 (C)**

**(ALL DEFENDANTS)**

Plaintiff  realleges paragraphs 1 through 109 as if fully alleged herein.

110.    Each Plaintiff is now and at all relevant times has been a "person" within the meaning of l8 U.S.C. §§ 1961(3) and 1962.

111.    FSM has assumed liability for the acts of Terremark complained of herein.

112.    Each Defendant is now and at all relevant times has been a "person" within the Meaning of l8 U.S.C. §§ 1961(3) and 1962.

26

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

113.     From at least 2001, continuously through the present, Defendants and others, known or unknown, in Miami-Dade County, Florida, New York City, New York, Canada, and elsewhere, formed an association in fact for the common and continuing purposes and goals described herein, which constitutes an "Enterprise," within the meaning of 18 U.S.C. § 1961 (4). The Four Seasons Enterprise functions as a continuing unit within an ascertainable structure separate and distinct from that of the conduct or pattern of racketeering activity.

### Goals and Purposes

114.     The goal of the Defendants has been, and continues to be, to perpetrate a fraud upon purchasers of Four Seasons Condominium Hotel Units, and to generate illegally obtained money which has been distributed among Defendants.  In operating the Four Seasons Enterprise, through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants used willful misrepresentations, including fraudulent misrepresentations of the material terms and conditions of the Four Seasons rental program and fraudulent guarantees of returns. The fraudulent misrepresentations were designed to lure investors into entering an agreement for purchase of a Four Seasons Condominium Hotel Units, and eventually to enter the RPA, the terms and conditions of which were mere instruments for Defendants to seek self-enrichment while depriving Condominium Hotel Unit owners of any benefit they paid for and were promised to receive. Through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants were able to accomplish their goals by misusing instrumentalities of foreign and interstate commerce, including international wire facilities and mails. Each of these fraudulent acts had a serious impact on interstate and foreign commerce because, among other things, the fraudulent activity involved transportation and communication between places in two or more states or between some place in the United States and some place outside the United States.

115.     As an integral part of the goal and purpose of the Four Seasons Enterprise, its members selected Miami, Florida, as the central location for activities relating to the Four Seasons Enterprise.

### The Laws That Defendants Violated While They Conducted The Affairs Of The Four Seasons Enterprise

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

116.    Defendants violated federal law while engaging in the affairs of the Four Seasons Enterprises, as follows:

    a.    Wire fund, in violation of 18 U.S.C. § 1343; and

    b.    travel in interstate and foreign commerce in aid of the Four Seasons Enterprise, in violation of 18 U.S.C. § 1952.

117.    Defendants were associated with, and exerted control over, the Four Seasons Enterprise or participated, directly or indirectly, in the conduct of the Four Seasons Enterprise's affairs through a pattern of racketeering activity.

### The Pattern Of Racketeering Activity

118.    In furtherance of their scheme, through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants conducted, participated in, or exerted control over, either directly or indirectly, the conduct of the Four Seasons Enterprise through a pattern of racketeering activity. Through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants otherwise aided and abetted, counseled, or commanded the other unidentified parties who did so, by engaging in at least two acts of racketeering activity that have the same or similar criminal intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated acts of racketeering activity. The patterns of racketeering activity, which began in 2001 or before, and continues through and including the date upon which this Complaint is filed, and which the purchaser Plaintiff expects to continue uninterrupted, involved racketeering acts or predicate acts - including multiple violations of the federal criminal laws of the United States - which amounted to and pose a threat of continued criminal activity.

119.    These acts of racketeering or predicate acts were related to the Four Seasons Enterprise and had similar purposes, participants, results, victims, and methods of commission. These acts of racketeering activity include, but are not limited to, the following:

*Wire Fraud*

120.    Defendants, through agents Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan, having devised or intended to devise a scheme or artifice to defraud for the purposes of obtaining money or property through false or fraudulent pretenses, representations, and

28

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

guarantees, as described above, knowingly and willfully transmitted or caused to be transmitted by means of a wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for (a) the purpose of executing such scheme, in violation of 18 U.S.C. § 1343, and for (b) the purpose of executing such scheme, through the transfer of monies, in violation of 18 U.S.C. § 1343.

### Interstate And Foreign Travel Or Transportation
### In Aid Of The Four Seasons Racketeering Enterprise

121.    Defendants, through their executives, investors, principals, directors, officers, employees, or representatives, knowingly and willfully traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce (and specifically through Mr. Cardenal, Mr. Montalvan and Mrs. Leon-Velarde), with the intent to distribute the proceeds of an unlawful activity and to further an unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, in violation of 18 U.S.C. § 1952.

WHEREFORE, Plaintiff demands judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERINVESTMENTS REALTY, INC., for the damages that they suffered in an amount to be proven at trial, and as provided for by statute, are then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

### COUNT II
### CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(C) IN VIOLATION OF§ 1962(D)
### (ALL DEFENDANTS)

Plaintiff  realleges paragraphs 1 through 109 and Count I as if fully alleged herein.

122.    From at least as early as July 2001, through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, to violate 18 U.S.C. § 1962(c), by conducting and participating, directly

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

and indirectly, in the conduct of the affairs of the Four Seasons Enterprise, which engaged in, and the activities of which, affected interstate and foreign commerce.

123.    As set forth above and incorporated herein, the Defendants' representative and agents with whom Plaintiff's representatives Mr. Riojas and Mrs. Simental dealt, were Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan.

124.    The racketeering activity described in Count I and herein this Complaint was part of a sophisticated and well organized scheme wherein each of the predicate acts relates to and directly advances one or more of the purposes of the scheme, as described above.

125.    The goal of the conspiracy was to enrich Defendants, their co-conspirators, and those who aided and abetted them, at the expense of condo-hotel residence investors, by facilitating, directing, or engaging in several overt acts, which constituted a pattern of racketeering activity as described in Count I and this complaint.

126.    As a result of the unlawful actions of the conspiracy, Plaintiff has been injured.

WHEREFORE, Plaintiff demands judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERINVESTMENTS REALTY, INC., for the damages that it suffered in an amount to be proved at trial, which as provided for by 18 U.S.C. § 1964, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.


## COUNT III
## VIOLATION OF CIVIL REMEDIES FOR CRIMINAL
## PRACTICES ACT, § 772.103, FLA. STAT.
### (ALL DEFENDANTS)

Plaintiff realleges paragraphs 1 through 109 and Count I as if fully alleged herein.

127.    From at least as early as 2001, through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, associated together as part of the Four Seasons Enterprise. Through the Four Seasons Enterprise, Defendants unlawfully, willingly, and knowingly violated Section

30

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

772.1 03(3), Florida Statutes, by conducting and by participating, directly or indirectly, in the conduct of the affairs of the Four Seasons Enterprise through a pattern of criminal activity that involved multiple violations of the criminal laws of Florida, including organized fraud and communications fraud in violation of the Florida Communications Fraud Act, Section 817.034, Florida Statutes, and Theft, in violation of Section 812.014, Florida Statutes.

128.    The overall goal and purpose of the Four Seasons Enterprise was to enrich Defendants, its members and associates, through the repeated commission of related criminal acts.

129.    As alleged above and incorporated herein, through Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, Defendants engaged in, or furthered, a systematic, ongoing course of conduct with the intent to defraud, and to obtain property by false or fraudulent pretenses, representations, or promises, or willful misrepresentations of future acts. This resulted in temporarily or permanently depriving numerous Condominium Hotel concept investors, including Plaintiff, of rights to property or benefits thereof, or appropriating the victims' properties to their own use or to the use of other persons not entitled thereto, in violation of Section 817, Florida Statutes.

130.    As alleged in paragraphs 1 through 109 and Count I, Defendants, through Mrs. Leon Velarde, and Messrs. Cardenal and Montalban, and the Defendants' unknown personnel who implement the RPA defrauded the purchasers of the use of their purchased Condominium Hotel Units in Miami, and throughout the international community, with the intent to either temporarily or permanently deprive them of their right to the property, in this case money, in violation of Section 812.014(1)(a), Florida Statutes, or to misappropriate the money to Defendants' own use or to the use of a person not entitled thereto, in violation of Section 812.014(1)(b), Florida Statutes.

131.    FSM has assumed liability for the acts of Terremark complained of herein.

WHEREFORE, Plaintiff demands judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERINVESTMENTS REALTY, INC., for the compensatory damages that it suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to

31

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

Section 772.104, Florida Statutes, and for injunctive relief pursuant to Section 895.05(6), Florida Statutes, and such other relief as the Court deems appropriate.

**COUNT IV**
**CONSPIRACY TO VIOLATE CIVIL REMEDIES FOR**
**CRIMINAL PRACTICES ACT, § 772.103, FLA. STAT.**
**(ALL DEFENDANTS)**

Plaintiff realleges paragraphs 1 through 109 and Counts I and III as if fully alleged herein.

132.    Defendants, and all non-defendant co-conspirators, conspired to violate the provisions of Section 772.103(1) and (3), Florida Statutes, as alleged above and incorporated herein.

133.    As a result, Plaintiff was damaged.

WHEREFORE, Plaintiff demands judgment against all Defendants: FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERVESTMENTS REALTY, INC., for the compensatory damages that they suffered in an amount to be proved at trial, which as provided for by the statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Section 772.104, Florida Statutes, and for injunctive relief pursuant to Section 895.05(6), Florida Statutes, and such other relief as the Court deems appropriate.

**COUNT V**
**FRAUDULENT INDUCEMENT**
**(ALL DEFENDANTS)**

Plaintiff  realleges paragraphs 1 through 109 as if fully alleged herein.

134.    For the purpose of procuring the Plaintiff's purchase of the Condominium Hotel Units, Terremark, Millennium, Four Seasons and Interinvestments, acting in concert and as agents of each other, verbally and through written sales materials, touted the purchase of the Condominium Hotel Units as "great investments" that would produce guaranteed returns. Specifically, Mrs. Leon Velarde made these representations on behalf of Terremark, Millennium and Four Seasons.

32

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

135.    Interinvestments, through Mr. Cardenal and Mr. Montalvan, represented that the Condominium Hotel Units would be a profitable endeavor and a "great investment" for Plaintiff. Interinvestments did this with the purpose of gaining commissions through Plaintiff's purchase of the Condominium Hotel Units, while knowing that the condominium-hotel framework was new to the market and the ability for unit owners to profit was not established and the purchase was a speculative one, at best.

136.    Likewise, from July 2001 until Plaintiff purchased the Condominium Hotel Units on December 4, 2003, Terremark, Millennium, Four Seasons and Interinvestments, acting through their agents Mrs. Leon-Velarde and Messrs. Montalvan and Cardenal, and as agents for one another, represented through verbal communications and written advertisements, described above and incorporated herein, that:

    a) the Condominium Hotel Units would be profitable;

    b) the rental program would generate positive cash flows and steady revenue streams;

    c) Plaintiff would obtain a return on its investments; and

    d) the Condominium Hotel Units would be integrated into the Four Seasons' regular Hotel operations and marketing systems.

137.    Terremark, Millennium, FSM, Four Seasons and Interinvestments, through the above agents, made these representations knowing that they were false, and knowing that:

    a) the Condominium Hotel framework worked on a *cost-recovery model* which ensured that Plaintiff would not profit from their investments;

    b) the Condominium Hotel framework was new to the market, and the ability for unit owners to profit was speculative, at best;

    c) Plaintiff  would effectively be locked out of using their units once it entered into the RPA;

    d) the Condominium Hotel Units being sold would not be integrated into the Four Seasons' regular Hotel operations and marketing systems;

    e) the Condominium Hotel Units being sold would not be integrated into the Four Seasons' regular reservation system; and

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

     f)    the Condominium Hotel Units were sold at a premium price above that of Private Condominium Units to deceptively force the Condominium Hotel Unit purchasers to share the expenses for operating the Miami Four Seasons condominium and Hotel complexes, rather than to create a bona fide rental program as Defendants had fraudulently represented.

138.    Mr. and Mrs. Leon-Velarde and Messrs. Cardena and Montalban also intentionally failed to disclose the matters set forth in paragraph 57, above.

139.    Plaintiff agreed to pay a premium purchase price for the Condominium Hotel Units and enter the Purchase Agreement, as well as the RPA, as a result of misrepresentations and false guarantees made by the Millennium, Terremark, Four Seasons and Interinvestments.

140.    But for the misrepresentations and intentional failures to disclose pertinent information made by Defendants through Mr. Cardenal, Mr. Montalvan and Mr. and Mrs. Leon-Velarde, Plaintiff, which relied on the truthfulness of Defendants' said agents, would not have purchased the Four Seasons condo-hotel units and entered into contractual relationships with Four Seasons, Terremark, FSM and Interinvestments.

141.    As a result of Plaintiff's reliance on Defendants' misrepresentations and Defendants' intentional failures to disclose pertinent information (through Mr. Cardenal, Mr. Montalvan and Mr. and Mrs. Leon-Velarde) prior to entering into contractual relationships with them, Plaintiff has been and continues to be damaged by having purchased the six "investment" properties and incurring monthly fees and expenses without receiving any of the represented investment benefits.

142.    Begualg's lost profits from anticipated and promised rental income, the lack of marketability and diminution in value were foreseeable and actually caused by FSM, Millennium, Terremark, Four Seasons' and Interinvestments' illegal conduct complained of herein.  These damages actually and proximately flow from the violations complained of herein. However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

WHEREFORE, Plaintiff demands judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERINVESTMENTS REALTY, INC., for damages, including

34

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

consequential, compensatory, and special damages, an award of costs and pre-and post-judgment interest and any such further relief as the Court deems just and appropriate.

**COUNT VI**
**FALSE AND MISLEADING ADVERTISING**
**(ALL DEFENDANTS)**

Plaintiff realleges paragraphs 1 through 109 as if fully alleged herein.

143.    Millennium, Terremark and Four Seasons, through their agent Mrs. Leon-Velarde, and Interinvestments, through its agents Messrs. Cardenal and Montalvan, acting in concert and as agents of each other, in furtherance of convincing Mr. Riojas and Mrs. Simental to purchase the Four Seasons Condominium Hotel Units for Begualg, disseminated or caused to be disseminated materially untrue advertisements regarding the Four Seasons' Condominium Hotel Units. In particular, Defendants, through Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan, disseminated or caused to be disseminated advertisements falsely depicting the profitability of these units as investment instruments, and the nature and operation of the Four Seasons' condo hotel rental program, in violation of Section 817.41, Florida Statutes.

144.    Terremark, Millennium, and Four Seasons, acting through their agent, Mrs. Leon-Velarde, and Interinvestments, through Mr. Cardenal and Mr. Montalvan disseminated or caused to be disseminated, such misleading and fraudulent sales material.   The sales materials misrepresented the fitness of Terremark (and later FSM) and Four Seasons' rental program, the ability for Plaintiff to obtain a return on their investment, and the ability to make use of the units after they entered into the RPA.

145.    Written advertising that is false and misleading are: (i) the letter Terremark, Millennium and Four Seasons created, which Interinvestments then sent to Mr. Riojas referenced in paragraphs 28 and 29 above; (ii) Exhibit B, attached hereto; and the (iii) the handwritten notes, chart of rates and writings created by Mrs. Leon-Velarde on a flip-chart or chalk board which are described in paragraph 42, above.

146.    Moreover, in violation of Fla. Stat. §817.41, Terremark, Four Seasons and Millennium, through Mrs. Leon-Velarde, and Interinvestments, through Mr. Cardenal and Mr. Montalvan, made statements in oral form concerning the marketing and other ancillary services that Terremark (and later FSM) and Four Seasons would provide to Plaintiff in connection with

35

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

the rental and maintenance of Plaintiff's Condominium Hotel Units. The false and misleading statements in oral form are described in the paragraphs incorporated herein.

147. Defendants knew that these advertisements about the Four Seasons' Condominium Hotel Units were untrue and misleading and that the Condominium Hotel framework was not market-tested by the Four Seasons, but nonetheless disseminated these false and misleading oral and written advertisements in order to induce the public to purchase Four Seasons' Condominium Hotel Units in reliance on the false and misleading advertisements.

148. Plaintiff reasonably relied on Defendants' false and misleading advertisements to purchase the Condominium Hotel Units.

149. FSM has assumed liability for the acts complained of herein against Terremark.

150. As a result, Plaintiff was damaged, and is seeking special damages, lost profits, consequential damages and compensatory damages. Plaintiff has suffered damages proximately caused by Defendants' misleading advertisements, including a substantial diminution of value of their Condominium Hotel Units and the loss of anticipated rental income.

151. Begualg's lost profits from anticipated and promised rental income, the lack of marketability and diminution in value were foreseeable and actually caused by FSM, Millennium, Terremark, Four Seasons and Interinvestments' illegal conduct complained of herein. These damages actually and proximately flow from the violations complained of herein. However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

WHEREFORE, Plaintiff demands damages pursuant to Section 817.41, Florida Statutes, against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD., and INTERINVESTMENTS REALTY, INC., for consequential, compensatory, and special damages, an award of costs and pre-and post-judgment interest, together with an award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

## COUNT VII
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT
### (Four Seasons, Terremark, Millennium and FSM)

Plaintiff realleges paragraphs I through 109 as if fully alleged herein.

36

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

152.    Defendants Four Seasons, Millennium and Terremark, through their agent Mrs. Leon Velarde, acting in concert and as agents of each other, engaged in false, misleading, and deceptive actions in misrepresenting to Mr. Riojas and Mrs. Simental who acted on behalf of Plaintiff, that the Four Seasons rental program would be a profitable endeavor and a "great investment" while knowing it to be a fraudulent scheme in violation of Florida's Deceptive and Unfair Trade Practices Act, Section 501.201, *et seq.,* Florida Statutes.

153.    To advance their fraudulent scheme, Millennium, Terremark and Four Seasons through their agents Mrs. Leon-Velarde, used fraudulent and deceptive means to induce Plaintiff, through Mr. Riojas and Mrs. Simental, into first purchasing the condo-hotel units, and then with respect to Millennium, Terremark and Four Seasons, causing Plaintiff to enter a rental program agreement containing terms and conditions vastly different from the guarantees, promises, and representations Defendants, Four Seasons, Terremark and Millennium, through Mrs. Leon-Velarde made prior to or at the time of Plaintiff's  purchase of the condo-hotel units, in further violation of Section 501.201, *et seq.,* Florida Statutes.

154.    As a result of such false, misleading, and deceptive activities, Plaintiff has suffered actual damages.

155.    FSM assumed liability for the the acts of Terremark complained of herein.

WHEREFORE, Plaintiff demands rescission of their purchase agreements for the six condominium-hotel units and the related rental program agreement as well as all related or ancillary agreements. Alternatively, Plaintiff  seek actual damages, compensatory, consequential and special damages. In addition, pursuant to Section 501.2105, Florida Statutes, Plaintiff demand declaratory and injunctive relief against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, and TERREMARK BRICKELL II, LTD. together with an award of reasonable attorneys' fees and costs, and such other relief as the Court deems just and appropriate.

**COUNT VIII**
**CIVIL CONSPIRACY TO FRAUDULENTLY INDUCE PLAINTIFF**
**(All Defendants)**

Plaintiff  realleges paragraphs 1 through 109 as if fully alleged herein

37

*LIPSCOMB EISENBERG & BAKER, PL*

156.     Interinvestments, Millennium, Terremark, and Four Seasons entered into an express or implied agreement among themselves to achieve one common purpose - to induce Plaintiff, and other investors alike, to sign multi-million dollar Purchase Agreements. Through the use of false guarantees (of Condominium Hotel Unit occupancy and profits, and the allegedly equal treatment the Condominium Hotel Units would receive as compared to the Hotel Units) as set forth above and incorporated herein, these Defendants, through Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan jointly lured investors into entering contractual relationships with Terremark and Four Seasons for the purposes of obtaining millions of dollars through purchase of condominium units, and subsequent fees relating to the upkeep of the Hotel. Acting in concert, they eventually succeeded in inducing Plaintiff into signing Purchase Agreements for over four million dollars, and subsequently the RPA.

157.     The promises of guaranteed returns and Condominium Hotel Unit occupancy, as well as the false guarantees of the treatment of the Condominium Hotel Units were false, and Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan knew they were false at the time they were made.   The Defendants, through agents Mrs. Leon-Velarde and Messrs. Cardenal and Montalvan intended that Plaintiff rely and act on the false statements, and in fact Plaintiff, through its agents Mr. Riojas and Mrs. Simental did rely on them to Plaintiff's detriment.

158.     FSM, though created after Plaintiff's execution of the purchase agreements and the RPA, actively participated in the scheme, and acted in concert with the remaining Defendants in furthering the fraudulent scheme, by so managing the Four Seasons Project and the condominium-hotel program to perpetuate Defendants' control over the project and the program and to unjustly maximize their benefits at the expense of Plaintiff and other condominium-hotel owners.

159.     Defendants, acting in concert, actively advertised their new edifice and its amenities to Plaintiff , and investors alike, using the recognized "Four Seasons" name as a tool of deception.

160.     These intentional and wrongful acts by Defendants constituted a conspiracy to commit a tort against Plaintiff.

161.     As a result of Defendants' conspiracy and their acts in furtherance of the conspiracy, Plaintiff  suffered damages in an amount to be determined at trial.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

162.    Begualg's lost profits from anticipated and promised rental income, the lack of marketability and diminution in value of its Condominium Hotel Units were foreseeable and actually caused by FSM, Millennium, Terremark, Four Seasons and Interinvestments' illegal conduct complained of herein.  These damages actually and proximately flow from the violations complained of herein.  However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

WHEREFORE, Plaintiff demand judgment against Defendants FOUR SEASONS HOTEL LIMITED, FSM HOTEL LLC, MILLENNIUM PARTNERS, LLC, TERREMARK BRICKELL II, LTD. and INTERINVESTMENTS REALTY, INC., for consequential, compensatory, and special damages, an award of costs and pre-and post-judgment interest and any such further relief as the Court deems just and appropriate and such further relief as the Court deems just and equitable.

## COUNT IX
## BREACH OF CONTRACT

### (Terremark, FSM and Four Seasons)

Begualg realleges paragraphs 1 through 109 as if fully alleged herein.

163.    Begualg has a written and unexpired Rental Program Agreement with the Four Seasons and Terremark Defendants.

164.    FSM is the successor in interest to Terremark under the RPA, and is liable for the acts complained of herein against Terremark.

165.    Defendants Terremark and Four Seasons breached and remain in breach of numerous material provisions of the RPA, including but not limited to:

    a)  The failure to "assist the owners" of Hotel Residence Units with the rental of their Hotel Residence Units to third parties by failing to properly and in good-faith operate and manage a rental program using the personnel and facilities of the Hotel. *See* Ex. "F." at *recitals* (E).

    b)  The failure to provide reasonable and concerted efforts in the rental of Plaintiff's units. *Id*. at ¶ 3.2.

    c)  The failure to provide marketing, sales, and advertising services to attract lodgers

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

and to arrange rental of the Hotel Residence Units in the Rental Program. *Id*. at ¶
3.2(b).

    d)  The failure to properly account for and disperse rental income from Plaintiff's
units. *See id*. at ¶ 4.1.

166.   As a result of Defendants' breaches, Begualg has been damaged in an amount to
be determined at trial.  The breaches were intentional and Defendants acted in utter disregard for
the law and the rights of the Plaintiff.

167.   Begualg's lost profits from anticipated and promised rental income, the lack of
marketability and diminution in value were foreseeable and actually caused by FSM, Terremark
and Four Seasons' illegal conduct complained of herein.  These damages actually and
proximately flow from the violations complained of herein.  However, to the extent that these
damages actually, but not necessarily flow from these violations law, they are special damages
that have been specifically pled.

WHEREFORE, Begualg demands judgment against Defendants FOUR SEASONS
HOTEL LIMITED, FSM HOTEL LLC, and TERREMARK BRICKELL II, LTD. for damages
resulting from their breach of contract, including consequential, compensatory, and special
damages, an award of costs and pre-and post-judgment interest, attorneys' fees under the RPA,
and any such further relief as the Court deems just and appropriate.

**COUNT X**
**BREACH OF FIDUCIARY DUTY**
**(Four Seasons, Terremark and FSM)**

168.  Plaintiff realleges paragraphs 1 through 109 as if fully alleged herein.

169.  As set forth above, Four Seasons, Terremark and FSM created, marketed and sold
to Plaintiff Condominium Hotel Units and an associated RPA that required Plaintiff to trust Four
Seasons, Terremark and FSM with the exclusive authority to rent, market and manage Plaintiff's
Condominium Hotel Units, including the power to control the rental income derived there from.

170.   Indeed, the entire structure of the parties' on-going business relationship
contemplated Four Seasons, Terremark and later, FSM possessing all of the power vis-à-vis
Plaintiff.  Plaintiff trusted Four Seasons, Terremark and FSM to use their tremendous power over
their property, affairs and business in a fair, honest and ethical way.

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

171.    Four Seasons, Terremark and FSM, when functioning as Plaintiff's rental agents, had a fiduciary position of trust and confidence and were obliged to act with the duties of care, loyalty, and to avoid self-dealing with respect to Plaintiff and the rental of its Condominium Hotel Units.

172.    As a consequence of the foregoing, Four Seasons, Terremark, and FSM, when acting as Plaintiff's rental agent, owed Plaintiff fiduciary duties including the duty of loyalty and utmost good faith; the duty of candor; the duty to refrain from self-dealing; the duty to act with the integrity of the strictest kind; the duty of fair and honest dealing; the duty of full disclosure; the duty to use the level of skill and prudence that an ordinary, capable and careful person would use in handling his own affairs; the duty to disclose all facts to the Plaintiff that might affect its rights; and the duty to account to Plaintiff for all transactions affecting it.

173.    The tremendous need for Four Seasons, Terremark and later, FSM to avoid self dealing and to act with the integrity of the strictest kind is underscored here by the reality that both the Hotel Units and the Hotel Condominium Units target the same lodgers as their customers.

174.    Notwithstanding Four Seasons and Terremark's fiduciary duty to refrain from self-dealing, they inserted a tie breaking mechanism into the RPA which states "rental of rooms in the Hotel shall be afforded priority over rental of units in the Rental Program." ¶ 3.2(a)(D) of the RPA.

175.    Plaintiff understood that this means that if a prospective lodger had absolutely no preference as to whether he or she stayed in a Hotel Unit or Condominium Hotel Unit that Terremark, Four Seasons and later FSM would break the tie by directing the lodger to the Hotel. Indeed, the Four Seasons General Manager and corporate representative in another related action pending in state court verified under oath that this is in fact the meaning the Four Seasons attributes to this provision.  This is not how the provision has been carried out.

176.    Plaintiff always contemplated, however, that Four Seasons and Terremark (and later FSM) would create a level playing field on which the Hotel Units and Condominium Hotel Units would compete on a fair and honest basis.

177.    Plaintiff's representatives were told by all Defendants, at both of the meetings at the Project site, prior to executing the Purchase Agreements, through Mrs. Leon-Velarde and

41

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

Messrs. Cardenal and Montalvan, that the vast majority of lodgers would have a preference for either a Hotel Unit or a Hotel Condominium Unit, and that if both types of units were priced at market rates and marketed similarly, personal preferences and the laws of economics would allow them to attract a significant number of lodgers.

178.    Under no circumstances, however, did Plaintiff ever envision or consent to Defendants tilting the playing field in favor of renting the Hotel Units, and failing to market the Condominium-Hotel Units as promised.

179.    Nevertheless, through what can only be described as a systematic campaign of predatory pricing practices and willful failure to properly market the Condominium Hotel Units, Defendants have tilted to playing field in favor of renting the Hotel Units to the exclusion and at the expense of renting the Condominium Hotel Units.

180.    Terremark, later FSM, and Four Seasons' actions were motivated by an express intent to benefit themselves at the Condominium Hotel Units owners' expense.

181.    Four Seasons, Terremark and FSM have intentionally breached their fiduciary duty to Plaintiff,  which breaches are independent of and do not constitute direct breaches of the RPA, by:

a.      Pursuing its interests and the interests of its co-Defendants in derogation of Plaintiff's interests in having their Condominium Hotel Units rented;

b.      Referring to the Condominium Hotel as the "enemy" of the Four Seasons in written documentation;

c.      Failing to use reasonable efforts to promote, market and advertise Plaintiff's Condominium Hotel Units as rental property – for example, the Condominium Hotel Units are not easily viewed and cannot be booked on the Four Seasons web site;

d.      Directing rental opportunities away from Plaintiff and towards other luxury hotels.

e.      Unilaterally deciding that the Condominium Hotel Units would not be rented unless: (i) the Hotel was full and there was overflow of lodgers to the Condominium Hotel; or (ii) a long term lodger (which term cannot even be defined by the Four Seasons General Manager during his deposition in another similar case pending in state court) specifically requested a kitchen or laundry unit.

42

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

f.      Pricing the Hotel Units at much lower prices than the Condominium Hotel Units such that no reasonable prospective lodger would be interested in renting a Condominium Hotel Unit.  For example, the Hotel Units would be priced at $300.00 per night, while Condominium Hotel Units would be priced at $2,000 per night.

g.      When there was overflow and the Condominium Hotel Units were needed to house lodgers, Four Seasons, Terremark and later, FSM would steer low rated business into the Condominium Hotel Units while keeping the higher paying lodgers in the Hotel Units.

h.      Unilaterally deciding, without any contractual authority that the rental program would be structured on a cost-recovery model designed to prevent Plaintiff from earning meaningful returns on their investments.   Moreover, this structure completely disincentivized Four Seasons, FSM and Terremark from renting Condominium Hotel Units.

182.    None of these breaches are explicit breaches of the RPA or any contractual agreement, yet constitute breaches of fiduciary duty due to, *inter alia,* Plaintiff's position of weakness and dependence upon Four Seasons, Terremark, and later, FSM.

183.    Because of these breaches of fiduciary duty as rental agent to Plaintiff, Plaintiff has been injured.

184.    Begualg's lost profits from anticipated and promised rental income, the lack of marketability and diminution in value were foreseeable and actually caused by the illegal conduct complained of herein.  These damages actually and proximately flow from the violations complained of herein.  However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

WHEREFORE, Plaintiff demands judgment against Defendants FOUR SEASONS HOTEL LIMITED, TERREMARK BRICKELL II, LTD. and FSM HOTEL LLC for damages, including consequential, compensatory, and special damages, an award of costs and pre-and post-judgment interest and any such further relief as the Court deems just and appropriate.

**COUNT XI**
**BREACH OF PROFESSIONAL DUTY**
**PURSUANT TO§ 475.278, FLA. STAT.**
**(Interinvestments)**

43

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

185.    Plaintiff realleges paragraphs 1 through 109 as if fully alleged herein.

186.    Defendant Interinvestments, through its agents and representatives, Messrs. Cardenal and Montalvan acted as the transactional broker as defined by Section 475.278, Florida Statutes, in the purchase of the Condominium Hotel Units.

187.    Acting in this capacity, Interinvestments had a statutory duty under Section 475.278, Florida Statutes, to:

    a) Deal honestly and fairly;

    b) Account for all funds;

    c) Use skill, care and diligence in the transaction; and

    d) Disclose all known facts that materially affect the value of residential real property and are not readily observable to the buyer.


188.    Defendant Interinvestments breached this statutory duty by:

    a) Failing to use reasonable skill, care, and diligence in determining the investment potential for Four Seasons' Condominium Hotel Units before declaring that that the Four Seasons rental program would be a profitable endeavor and a "great investment" for the Plaintiff ;

    b) Declaring that the Four Seasons rental program and the Condominium Hotel Units would be a profitable endeavor and a "great investment" while knowing that it was not market-tested and that entrance into the transactions was risky and speculative at best.

    c) Dishonestly conspiring with the Four Seasons, Millennium and Terremark to advertise and market the Four Seasons Condominium Hotel Units and rental program as a "great investment," without a factual basis for such claims.

    d) Failing to disclose all known facts not observable to Plaintiff  which materially affected the value of the properties at issue.  Interinvestments failed to disclose the fact that the rental program would be structured on a *cost-recovery model*

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

designed to prevent Plaintiff from earning meaningful returns on their investments.

198.    Interinvestments' breach of its statutorily-imposed duty as a transactional broker directly and proximately caused damages to Plaintiff.

199.    Begualg's lost profits, from anticipated and promised rental income the lack of marketability and diminution in value were foreseeable and actually caused by Interinvestments' illegal conduct complained of herein.  These damages actually and proximately flow from the violations complained of herein.  However, to the extent that these damages actually, but not necessarily flow from these violations law, they are special damages that have been specifically pled.

WHEREFORE, Plaintiff demands judgment against INTERINVESTMENTS REALTY, INC., for damages resulting from its breach of professional duty pursuant to Section 475.278, Florida Statutes, consequential damages, special damages and compensatory damages, and requests such further relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all matters so triable.

Respectfully submitted,

LIPSCOMB, EISENBERG & BAKER, PL
Attorneys for Plaintiff
2 South Biscayne Boulevard, PH 3800
Miami, Florida 33131
Tel.:  (786) 431-2228
Fax:  (786) 431-2229
dbaker@lebfirm.com
seisenberg@lebfirm.com


By:  /s/ Steven E. Eisenberg
     STEVEN E. EISENBERG
     Florida Bar Number: 441112
     Deborah B. Baker
     Florida Bar Number: 294380

45

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Steven E. Eisenberg
STEVEN E. EISENBERG

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

<u>**SERVICE LIST**</u>

Lawrence S. Gordon, Esq.
Email Address: lgordon@conroysimberg.com
Conroy, Simberg, Ganon, Krevans, Abel, et al.
Venture Corp. Center I
3440 Hollywood Boulevard, 2nd Floor
Hollywood, FL 33021
Telephone: (954) 961-1400
Facsimile: (954) 967-8577
*Counsel for FSM Hotel, LLC*
*Terremark Brickell II, Ltd.*
*Terremark Brickell II, Inc.*
*Millennium Partners Florida Property Management, LLC*
*Millennium Partners, LLC*

Roberto A. Torricella, Jr.
Email Address: rat@anania-law.com
Anania Bandklayder, Baumgarten & Torricella
100 SE 2nd Street
Miami Tower, Ste 4300
Miami, FL  33131-2144
Telephone: (305) 373-4900
Facsimile: (305) 373-6914
*Counsel for Interinvestments Realty, Inc.*

Ben Esco
Email: ben.esco@csklegal.com
Cole, Scott and Kissane
9150 South Dadeland Boulevard
Suite 1400
Miami, FL  33156-7855
Telephone: (305) 350-5300
Facsimile: (305) 373-2294
*Counsel for Millennium Tower Condominium Hotel Association*

James K. Parker, Esq.
Email Address: jparker@boydlawgroup.com
Boys Richards Parker & Colonelli, PL
Miami Tower, 36th Floor
100 SE 2nd Street
Miami, FL.  33131
Telephone: (305) 425-1045

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com

CASE NO.: 1:10-cv-22153

## SERVICE LIST (CONTINUED)

Facsimile: (786) 425-3905
*Counsel for Four Seasons Hotel Limited*

Gary Davidson
Email Address: mdiaz@diazreus.com
DIAZ REUG & TARG, LLP
100 SE 2nd Street
2600 Miami Tower
Miami, FL  33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050
*Attorney for Plaintiff*

*LIPSCOMB EISENBERG & BAKER, PL*

2 South Biscayne Blvd. Penthouse 3800  Miami, Florida 33131  T 786.431.2228  F. 786.431.2229  www.lebfirm.com