UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-22153-Civ-SCOLA

BEGUALG INVESTMENT
MANAGEMENT, INC., *et al.*,

    Plaintiffs,

vs.

FOUR SEASONS HOTEL LIMITED, *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS
## AND MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants' Motions to Dismiss the Second Amended Complaint and Motion for Partial Summary Judgment (ECF Nos. 243, 244, and 245). All of the Defendants have collectively adopted the arguments asserted by the others. Having considered the motions, the record, the relevant legal authorities, and for the reasons explained in this Order, the Defendants' Motions to Dismiss are granted with respect to Count X (breach of fiduciary duty), and denied as to all other Counts. The Defendants' Motion for Partial Summary Judgment is denied.

### I.  BACKGROUND

This case involves allegations of fraud and breach of contract relating to the Plaintiff's purchase of several rental properties in Miami, Florida and subsequent enrollment of those properties into a rental agreement. According to the Second Amended Complaint, Gustavo Riojas and Bertha A. Simental are husband and wife and residents of the Republic of Mexico. Riojas and Simental received solicitations to invest in Condominium Hotel Units within the Four Seasons Hotel, located in Miami, Florida. These overtures initially came, in mid-to-late 2001, from Defendant Interinvestments Realty, Inc. (Interinvestments), which is a real estate consulting and brokerage firm. In July 2002, Riojas and Simental traveled from Mexico to Miami, Florida and met with agents of Interinvestments, as well as Karim Leon-Velarde, a sales agent for Millennium Partners, LLC (Millennium), Four Seasons Hotels Limited (Four Seasons), and

Terremark Brickell II, Ltd. (Terremark).[1]  Riojas and Simental eventually formed Begualg Investment Management, Inc. (Begualg), for the purpose of closing on and holding title to the Condominium Hotel Units purchased from the Four Seasons Defendants.

The Defendants are alleged to have acted together in a joint enterprise to defraud Begualg.  The essence of the allegations is that the Defendants, acting in concert, made a number of false promises in order to induce Begualg into purchasing multiple Condominium Hotel Units, which were to be subsequently enrolled in a rental agreement.  While Begualg would own the Condominium Hotel Units, they would be managed, maintained, marketed, and rented by the Four Seasons Defendants.  The fraudulent scheme, as alleged, relates to the promises of how the Condominium Hotel Units would be marketed and rented by the Four Seasons Defendants.  In short, Begualg alleges that it was promised that the Condominium Hotel Units would be marketed and rented in the same manner as the Four Seasons regular hotel units.  Begualg claims that was not the case and in actuality the Four Seasons subordinated Begualg's Condominium Hotel Units, promoting its own hotel units over Begualg's Units.

Begualg believed that Interinvestments was its agent throughout the negotiations and transactions.  Ultimately, Begualg purchased six Condominium Hotel Units and entered into a Rental Program Agreement for each of the Units with the Four Seasons Defendants.  The purchase agreements and the Rental Program Agreements were all in English.  However, neither Riojas nor Simental are fluent in English.  Begualg allegedly relied on Interinvestments to review the contracts and to interpret them.  Interinvestments advised Begualg that the contracts were completely consistent with all of the Defendants' pre-contractual promises.  As it turned out, the contracts were completely inconsistent in many ways, containing material terms that stated the exact opposite of what the Defendants had promised Begualg in the negotiations.  In addition to these allegations of fraud, Begualg also alleges that the Four Seasons Defendants are in breach of the Rental Program Agreement, having failed to properly market Begualg's Condominium Hotel Units.

Begualg's Second Amended Complaint contains claims against all of the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §

---

[1] The other named Defendant, FSM Hotel, LLC (FSM), allegedly assumed the rights and liabilities of Terremark.  FSM, Millennium, Terremark, and Four Seasons are collectively referred to as the Four Seasons Defendants.

1961–1968 (2006) (Count I), conspiracy to violate the RICO Act (Count II), violation of Florida's Civil Remedies for Criminal Practices Act, Florida Statute Sections 772.101–772.19 (2010) (Count III), conspiracy to violate Florida's Civil Remedies for Criminal Practices Act (Count IV), fraudulent inducement (Count V), conspiracy to fraudulently induce (Count VIII), and false and misleading advertising (Count VI). Begualg has also brought claims against the Four Seasons Defendants for violation of Florida's Deceptive and Unfair Trade Practices Act, Florida Statute Sections 501.201–501.213 (2010) (Count VII), breach of contract (Count IX), and breach of fiduciary duty (Count X). Finally, Begualg has asserted a claim against Interinvestments for breach of professional duty (Count XI).

## II. LEGAL STANDARDS

### A. *Motion for Summary Judgment*

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56[(c)] "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the

moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### B. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

While detailed factual allegations are not required, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Id.* When considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

When a party makes allegations of fraud, "the circumstances constituting the fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are accused and to protect defendants from contrived charges of fraudulent behavior. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997). Rule 9(b) does not, however, abrogate the concept of notice pleading. *Id.* at 1371.

"Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. *Id.* at 1316-17.

### III. DISCUSSION

#### A. Defendants' Motion for Partial Summary Judgment Based On The Statute Of Limitations Having Expired.

The Defendants assert that all of Begualg's tort claims are barred by the statute of limitations. This argument is premised on the undisputed fact that the Rental Program Agreement that Begualg entered in December 2003 directly contradicted many of the statements that Begualg was told prior to entering into the Purchase Agreements and Rental Program Agreement. The Defendants argue that upon receipt of this Rental Program Agreement in 2003 Begualg was on notice of the alleged fraud. Since this lawsuit was filed in 2010, the Defendants assert that the statute of limitations bars Begualg's fraud claims. Alternatively, the Defendants argue that when the rental properties did not produce the income allegedly promised by their agents, this also placed Begualg on notice of the alleged fraud.

Begualg argues there is a genuine issue as to when it first learned of the Defendants' alleged fraud. Specifically, Begualg cites testimony that it did not become aware of the nature and extent of the Defendants' fraudulent conduct until 2008. Begualg argues that the statute of limitations does not bar its claims based upon the Delayed Discovery Doctrine. Begualg also argues that the statute of limitations does not bar the complaint based on the Rental Program Agreement's contrary terms because Begualg's allegations of fraud are broader in scope than simply the contrary terms found in the Rental Program Agreement.

Under Florida law, notice of fraudulent activity is imputed upon a person who has information sufficient to make him or her aware of circumstances that a reasonable person would investigate, where such an investigation would uncover the fraudulent activity. *Brooks Tropicals, Inc. v. Acosta*, 959 So. 2d 288, 296 (Fla. Dist. Ct. App. 2007). This imputed notice, also referred to as "inquiry notice," exists regardless of whether the individual actually undertook the investigation. *Id.*; *see also Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir. 2002) (defining "inquiry notice" as "the term used for knowledge of facts that would lead a

reasonable person to begin investigating the possibility that his legal rights had been infringed"). Where an individual receives documents which would alert a reasonable person of "evidence of the possibility of fraud" that person is on inquiry notice, regardless of whether he or she actually read the documents. *Franze*, 296 F.3d at 1254-55.

Where a buyer enters into a contract with a seller based upon material misrepresentations made by the *buyer's* agent, the buyer is bound by contract with the seller, so long as the seller is not culpable as to the misrepresentations. *See, e.g., Robert v. Rivera*, 458 So. 2d 786, 788-89 (Fla. Dist. Ct. App. 1984). In this scenario, the buyer may pursue a claim for breach of duty against his or her agent. *Id.*; *accord Ordziejeski v. Freudenberg*, 946 So. 2d 599, 601 (Fla. Dist. Ct. App. 2006) (permitting a complaint alleging fraud and breach of fiduciary duty to proceed against a real estate agent, where the agent advised a landowner to sell property to an associate realtor for $150,000 where the property was allegedly worth over $300,000). However, a different result may be reached where a party contracts directly with his or her agent. Where a party enters into a contract with an agent, and the contract is written in a language not understood by the party, the contract is void if the agent materially misrepresents the substance and terms of contract. *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999-1000 (11th Cir. 1986) (addressing a situation where a non-English speaking party was presented with a contract in English to open a securities account but was told it was a contract to open a money market account).

As an initial matter, the fact that Begualg's allegations of fraud are broader in scope than the contrary terms found in the Rental Program Agreement is not relevant to a statute of limitations analysis. The statute of limitations begins to run upon a plaintiff discovering the possible invasion of his or her rights; it is not necessary for a plaintiff to be aware of every aspect or element of his or her claim. *See Korman v. Iglesias*, 825 F. Supp. 1010, 1014 (S.D. Fla. 1993) (citing *Breitz v. Lykes-Pasco Packing Co.*, 561 So. 2d 1204, 1205 (Fla. Dist. Ct. App. 1990)).

The Defendants' argument that Begulag was on notice of the alleged fraud upon receipt of the Rental Program Agreement also fails based on the record before the Court. There is record evidence that Riojas, Begualg's principal, is not fluent in English, but that the Rental Program Agreement was in English only. (Riojas Dep. 95:6, Sept. 26, 2011, ECF No. 242-6; 59:18-23, Sept. 27, 2011, ECF No. 242-8.) Begualg has asserted that Interinvestments was its agent, and that Interinvestments reviewed the contracts, in English, before Begualg signed them.

(Riojas Dep. 66:7-9, 104:24 – 105:1, Sept. 26, 2011, ECF No. 242-6.)  Begualg has further alleged that it entered into the English contracts based on assurances from Interinvestments that the terms and conditions were consistent with the representations that had been made by the Defendants.  (*See* Second Am. Compl. ¶ 72; *see also* Riojas Dep. 228:4-6, June 23, 2011, ECF No. 242-4.)

While Begualg's causes of action against Interinvestments arose at the time he entered into the contract, those claims did not accrue until the time that Begualg, exercising due diligence, reasonably should have learned about the facts giving rise to the claims.[2]  The Defendants correctly argue that Begualg was on inquiry notice regarding his fraud claims against all Defendants, and all of his claims against Intervestments, at the time when he received the Rental Program Agreement in Spanish.  However, the record is not clear when Riojas received the Spanish translation of the Rental Program Agreement.  (*See* Riojas Dep. 230:10-13, June 23, 2011, ECF No. 242-4.)

Without further allegations, Begualg would have a cause of action against its agent, Interinvestments, but would be bound by its contracts with the other Defendants.  *See Robert v. Rivera*, 458 So. 2d 786, 788-89 (Fla. Dist. Ct. App. 1984).  However, Begualg has also alleged that despite its belief that Interinvestments was its agent, Interinvestments was actually working in concert with, and as an agent of, the other Defendants.  (*See, e.g.,* Second Am. Compl. ¶¶ 12, 48, 122.)  The Defendants have not cited to any record evidence to refute this allegation.  Since Begualg has alleged Interinvestments and the other Defendants were co-conspirators and agents of each other, this case is basically a situation where a party entered into a contract with its agent, where the agent is alleged to have materially misrepresented the substance and terms of the contract.  *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999-1000 (11th Cir. 1986).  Given these unrefuted allegations, there is a genuine issue as to when Begualg should have reasonably known of its claims against all of the Defendants.

---

[2]  There is an important distinction between when a cause of action arises, as opposed to when it accrues.  A claim arises when all of the elements of the cause of action have occurred, in other words, a claim arises at the time when it can legally be maintained.  The term accrual relates to the statute of limitations.  A claim does not accrue until the injured party has notice of the possible invasion of his or her legal rights.  *F.D.I.C. v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1556 (S.D. Fla. 1993) (Marcus, J.); *Korman v. Iglesias*, 825 F. Supp. 1010, 1015 (S.D. Fla. 1993).  In some circumstance a claim may arise and accrue at the same instant, however, in other situations a claim may arise but not accrue until a later time.

The Defendants' argument that Begualg was on notice of any alleged fraud when the Condominium Hotel Units did not generate the type of income purportedly promised also fails because there is a genuine issue of fact on this point. Riojas has testified that he anticipated that there would reasonably be some lag time before the rental properties became profitable, and that his initial concerns about less than expected returns were explained away by the Defendants. (Riojas Dep. 250:16-251:5, June 23, 2011, ECF No. 242-4.)  Given this testimony, there is an issue of fact as to (1) whether Begualg's failure to discover the fraud under these circumstances was reasonable, and (2) whether the Defendants' fraudulent reassurances convinced Begualg to delay filing suit.  Under the first instance the Delayed Discovery Doctrine may toll the statute of limitations; while under the second circumstance the Doctrine of Equitable Estoppel may toll the statute of limitations.  *See Black Diamond Properties, Inc. v. Haines*, 69 So. 3d 1090, 1094, 1094 n.2 (Fla. Dist. Ct. App. 2011).  Accordingly, summary judgment is not appropriate on the statute of limitations issue.

### B. Defendants' Motion To Dismiss Based On The Plaintiff's Inability To Claim Reasonable Reliance On Oral Representations In The Face Of Contradictory Language In The Written Contracts.

The Defendants assert that Begualg's fraud claims should be dismissed because Begualg's reliance on pre-contractual statements that were different from the terms of the contract is not reasonable as a matter of law.  This argument fails because, as described in Section III(A) above, Begualg has alleged that the contracts were in English, that Begualg was not fluent in English, and that it relied on its agent, Interinvestments (who also turned out to be collusion with the other Defendants), to translate the material terms of the contract.  These allegations bring the contract into the arena of fraud in the *factum* as described in *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998 (11th Cir. 1986).  "Under this theory no contract existed between the parties." *Id.* at 999.

"A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 1999).  However, "[w]here misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible.  In such a case there is no contract at all." *Id.* (citing Restatement (Second) of Contracts § 163 (1977)).  The current Restatement of Contracts provides an illustration that is helpful, given the allegations in this case:

> A and B reach an agreement that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms that are different from those agreed upon and induces B to sign it by telling him that it contains the terms agreed upon and that it is not necessary for him to read it. . . . B is blind and gets C to read the writing to him, but C, in collusion with A, reads it wrongly. B's apparent manifestation of assent is not effective.

Restatement (Second) of Contracts § 163, illustrations 3-4 (1981).

If Interinvestments, acting as the clandestine agent for the Four Seasons Defendants, advised Begualg that the contracts included everything that had been previously discussed, when in fact the contracts contained completely contrary provisions then there was "ineffective assent to the contract." *Cancanon*, 805 F.2d at 1000. If Begualg is ultimately able to prove that Interinvestments was in fact the undisclosed agent of the Four Seasons Defendants, and that the Defendants misstated the terms of the contracts to Begualg, then Begualg can set the contracts aside and proceed solely on its fraud claims. If on the other hand, Begualg is ultimately not able to prove that Interinvestments was involved in the alleged conspiracy with the Four Seasons Defendants, then Begualg will be left with its claim for breach of professional duty against Interinvestments, and its breach of contract claim against the Four Seasons Defendants.

### C. Defendants' Motion To Dismiss Based On The Economic Loss Rule.

The Defendants argue that Begualg's fraud claims, as well as the related conspiracy to commit fraud claims, should be dismissed because the substance of these claims is expressly addressed in the written contracts executed by Begualg. "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Mac-Gray Svcs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. Dist. Ct. App. 2005). However, as has already been stated, if Begualg is able to prove its allegations the contracts between the parties will be void. Given this legal framework, the Economic Loss Rule does not bar Begualg's claims, because it will either be able to recover for its fraud claims, or for its breach of contract claim, but not both. *Cf. Cancanon*, 805 F.2d at 1000. This type of pleading in the alternative is permissible under Federal Rule of Civil Procedure 8(d).

### D. Defendants' Motion To Dismiss Based On Failure To State a Claim.

The Defendants argue that the "Plaintiff continues to lump all defendants together without providing a sufficient statement of each defendant's specific conduct and has failed to supply the who, what, where, when, how [sic] of the alleged conduct that constituted a pattern of racketeering activity." (Mot. to Dismiss 5, ECF No. 244; *see also* Mot. to Dismiss 4-5, ECF No.

245.) The Defendants also argue that Begualg has not satisfied the pleading requirements for its RICO claims, nor has it satisfied the pleading requirements for its general fraud claims under Federal Rule of Civil Procedure 9(b). (*See generally* Mot. to Dismiss 7-14, ECF No. 245.)

Begualg responds by citing to multiple paragraphs of the Second Amended Complaint where there are detailed allegations relating to the who, what, when, where, and why of the alleged pattern of fraudulent activity. (Resp. in Opp'n 2-3, ECF No. 264; Resp. in Opp'n 4, ECF No. 265.) Begualg also cites to several paragraphs where it alleges with precision the relationships between the various Defendants, their agents, and each other. (*Id.*) Finally, Begualg refers to portions of the Second Amended Complaint containing detailed allegations describing the specific predicate acts that the Defendants engaged in with respect to the RICO counts, as well as each of the Defendants' role in the alleged RICO enterprise. (*See* Resp. in Opp'n 6-9, ECF No. 265.)

The Court finds that Begualg has satisfied its burden of adequately pleading its fraud and RICO claims. The Second Amended Complaint provides sufficient detail regarding the alleged fraudulent statements and predicate acts, specifically who made them, where and when they were made, and why and how they were fraudulent. By way of example, the Second Amended Complaint explains that Karim Leon-Velarde, while holding herself out as, and acting as, agent for Terremark, Four Seasons, and Millennium, repeatedly promised Begualg that the Condominium Hotel Units would be advertised and rented in exactly the same way as Four Seasons' traditional hotel rooms, and that the Condominium Hotel Units would be a profitable investment property precisely because the units would be associated with and part of the regular operation of the Four Seasons Hotel. (Second Am. Compl. ¶¶ 31, 35, & 37, ECF No. 229.) Begualg further alleges Interinvestments, acting as an agent for Terremark, Four Seasons, and Millennium, sent brochures and correspondence containing false and misleading information to Begualg's principals in Mexico. (*Id.* at ¶¶ 12, 28.) According to Begualg, Interinvestments, through Emilio Cardenal and Ricardo Montalvan represented that the Condominium Hotel Units would be a profitable investment because the Units would be marketed and rented in the same manner as the Four Seasons Hotel Units. (*Id.* at ¶¶ 37, 40, 43, 45, 48.)

According to Begualg, in July 2002, Leon-Velarde contacted Begualg in Mexico via telephone and through multiple e-mail and mail correspondences to reassure Begualg that the Condominium Hotel Units would be fully integrated into the Four Season's regular operation

and lodging database. (*Id.* at ¶¶ 57-58.) As it turned out, the contract that was provided, in English only, that was reviewed and approved by Interinvestments, was completely contrary to the Defendants' promises. (*Id.* at 71-73.) The Second Amended Complaint is full of other very detailed factual allegations beyond these examples. Begualg has provided a detailed description of the alleged conspiracy between the Defendants, including explaining the object of the conspiracy and identifying the various agents of each of the alleged co-conspirators. For these reasons, Begualg has satisfied the pleading requirements for its RICO claims, and its general fraud claims, as well as the related conspiracy claims.

### E. Defendants' Motion To Dismiss The Breach Of Fiduciary Duty Claim Based On The Economic Loss Rule

The Four Seasons Defendants argue that the breach of fiduciary duty claim is barred by Florida's Economic Loss Rule. In short, the Four Seasons Defendants assert that the Economic Loss Rule forecloses this claim because the breach of fiduciary duty claim is inextricably intertwined with the breach of contract claim. Begualg counters that because it has alleged breaches of fiduciary duty which are separate and distinct from its breach of contract claims, that it may maintain this separate claim.

The Economic Loss Rule prevents a plaintiff from pursuing a tort claim to recover solely for economic damages against a defendant who has allegedly breached his or her contract with the plaintiff. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.

*Id.* at 536-37. "While the economic loss rule does not automatically bar a breach of fiduciary duty claim, the rule does apply when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract." *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1192-93 (M.D. Fla. 2008) (citing *Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006)).

Begualg's breach of fiduciary duty claim is based on the allegations that the Four Seasons Defendants were "functioning as Plaintiff's rental agents," "with the exclusive authority to rent, market and manage Plaintiff's Condominium Hotel Units." (Second Am. Compl. ¶¶ 169, 171, ECF No. 229.) The crux of this claim is the allegation that the Four Seasons Defendants prioritized the rental of its own hotel units over the rental of Begualg's Condominium Hotel Units. (*See* Second Am. Compl. ¶ 181, ECF No. 229.) As such, this claim is necessarily predicated on the agreement by the Four Seasons Defendants to rent Begualg's Condominium Hotel Units. This rental agent relationship is established and defined by the Rental Program Agreement. A careful review of Begualg's breach of fiduciary duty claim reveals that it is necessarily dependent upon, and inextricably intertwined with, Begualg's claim for breach of contract, namely the breach of the Rental Program Agreement. Through this breach of fiduciary duty claim, Begualg is seeking to "circumvent the contractual agreement by making a claim for economic loss in tort." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Begualg "is, in effect, seeking to obtain a better bargain than originally made." *Id.* Accordingly, Begualg's breach of fiduciary duty claim is dismissed.

### F. Defendants' Motion To Dismiss The Claim For False And Misleading Advertising.

The Defendants assert that because the alleged misleading statements were not made to a member of the general public of Florida, the allegations are insufficient. (Mot. to Dismiss 16, ECF No. 245.) Additionally, the Defendants argue that the allegedly misleading communications with Begualg's principals in Mexico were not "advertisements," under the meaning of the controlling statute. (*Id.* at 17.) Begualg argues that it has sufficiently alleged that some of the advertisements were communicated in Florida, and that these communications adequately constituted false and misleading advertisements. (Resp. in Opp'n 14-15, ECF No. 265.)

"It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Fla. Stat. § 817.41(1) (2011).

> The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or

> personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

Fla. Stat. § 817.40(5) (2011).

Here, Begualg has alleged that the Defendants, through their named agents, knowingly made false statements, both orally and in writing, in order to induce Begualg into purchasing the Condominium Hotel Units, and also to induce Begualg into entering the Rental Program Agreement. (Second Am. Compl. ¶¶ 143-146.) Begualg has specifically delineated the precise advertisements which it contends were misleading, as well as how and why those advertisements were misleading. (*Id.* at ¶ 145-46.) Moreover, Begualg has alleged that at least some of these statements were made to Begualg's agents while they were in Florida. (*Id.* at ¶ 145.) Begualg's allegations are sufficient to survive the Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the reasons detailed in this Order, and having considered all of the arguments made by the parties, as well as the relevant legal authorities, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion to Dismiss and for Partial Summary Judgment (ECF No. 243) is **DENIED**.

2. Defendants' Motion to Dismiss (ECF No. 244) is **GRANTED in part and DENIED in part**. Count X (breach of fiduciary duty) is dismissed with prejudice. The Motion is denied as to all other claims.

3. Defendants' Motion to Dismiss (ECF No. 245) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on April 5, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*Counsel of record*