UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-22153-Civ-SCOLA

BEGUALG INVESTMENT
MANAGEMENT, INC., *et al.*,

    Plaintiffs,

vs.

FOUR SEASONS HOTEL LIMITED, *et al.*,

    Defendants.
_____/

## **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendants' Motions for Summary Judgment (ECF Nos. 413 & 418). Previously, this Court had denied the Defendants' motion for partial summary judgment. (Omnibus Order On Mot. Summ. J., ECF No. 303.) Following that Order, the Defendants moved for reconsideration, again reasserting the same arguments and evidence. The Court considered the Defendants arguments, again, and subsequently denied the motions for reconsideration. (Order Den. Mot. Recons., ECF No. 403.) Now, though their current motions for summary judgment, the Defendants again present the same arguments, and much of the same evidence, that has already been considered twice by this Court. In the few instances where the Defendants present additional evidence, the Plaintiff is able to cite to contrary evidence. Since there are material issues of fact, summary judgment is not warranted in this matter. For the reasons explained in this Order, the Defendants' Motions for Summary Judgment are denied.

### I. BACKGROUND

This case involves allegations of fraud and breach of contract relating to the Plaintiff's purchase of several rental properties in Miami, Florida and subsequent enrollment of those properties into a rental agreement. The Plaintiff, Begualg Investment Management, Inc., was established by Gustavo Riojas and Bertha A. Simental, who are husband and wife and residents of Mexico. Begualg has alleged that Riojas and Simental were initially courted by Defendant Interinvestments Realty, Inc. with the opportunity to invest in condominium hotel units within the Four Seasons Hotel, located in Miami. Begualg was formed for the purpose of purchasing,

and holding title to, condominium hotel units from the Defendants. In July 2002, Riojas and Simental traveled from Mexico to Miami and met with agents of Interinvestments, as well as Karim and Julian Leon-Velarde, sales agents for Defendants Millennium Partners, LLC, Four Seasons Hotels Limited, and Terremark Brickell II, Ltd.[1]

The Defendants are alleged to have acted together in a joint enterprise to defraud Begualg. The essence of the allegations is that the Defendants, acting in concert, made a number of false promises in order to induce Begualg into purchasing multiple Condominium Hotel Units, which were to be subsequently enrolled in a rental agreement. While Begualg would own the Condominium Hotel Units, they would be managed, maintained, marketed, and rented by the Four Seasons Defendants. The fraudulent scheme, as alleged, relates to the promises of how the Condominium Hotel Units would be marketed and rented by the Four Seasons Defendants. In short, Begualg alleges that it was promised that the Condominium Hotel Units would be marketed and rented in the same manner as the Four Seasons regular hotel units. Begualg claims that was not the case and in actuality Four Seasons subordinated Begualg's Condominium Hotel Units, promoting its own hotel units over Begualg's Units.

According to the allegations, Begualg believed that Interinvestments was its agent throughout the negotiations and transactions. Ultimately, Begualg purchased six Condominium Hotel Units and entered into a Rental Program Agreement for each of the Units with the Four Seasons Defendants. The purchase agreements and the Rental Program Agreements were all in English. Neither Riojas nor Simental are fluent in English. Begualg allegedly relied on Interinvestments to review the contracts and to interpret them. Interinvestments advised Begualg that the contracts were completely consistent with all of the Defendants' pre-contractual promises. As it turned out, the contracts were completely inconsistent in many ways, containing material terms that stated the exact opposite of what the Defendants had promised Begualg in the negotiations. In addition to these allegations of fraud, Begualg also alleges that the Four Seasons Defendants are in breach of the Rental Program Agreement, having failed to properly market Begualg's Condominium Hotel Units.

---

[1] The other named Defendant, FSM Hotel, LLC, allegedly assumed the rights and liabilities of Terremark. FSM, Millennium, Terremark, and Four Seasons are collectively referred to as the Four Seasons Defendants.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56[(c)] "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### III. DISCUSSION

#### A. Based On The Facts In This Case, There Is A Disputed Issue As To Whether Begualg Was On Actual Notice Of The Alleged Fraud.

The Defendants again argue that Begualg's claims are barred by the statute of limitations. This argument is premised on the undisputed fact that the contracts that Begualg entered into with the Four Seasons Defendants (the purchase agreement and the rental program agreement) directly contradicted many of the statements that Begualg was allegedly told prior to entering into these agreements. The Defendants argue that upon signing the purchase agreement and the rental program agreement Begualg was on actual and inquiry notice of the alleged fraud. Since this lawsuit was filed more than five years after these agreements were signed, the Defendants assert that the statute of limitations bars Begualg's fraud claims. Alternatively, the Defendants argue that when the rental properties did not produce the income allegedly promised by their agents, and/or when the rental properties were not advertised on the Four Seasons's website, as allegedly promised, this further put Begualg on inquiry notice of the alleged fraud.

It is not disputed that Riojas and Simental, Begualg's principals, are not fluent in English, but that the contracts at issue were in English only. The Defendants argue that Begualg had an attorney review the Purchase Agreement prior to signing it, and therefore Begualg should be held to know that the terms of the contract differed from the alleged promises. (Mot. Dismiss 5, ECF No. 413.) Whether Begualg actually had an attorney review the Purchase Agreement, however, is a disputed fact. (Riojas Dep. 226:25-227:14, 229:9-24, June 23, 2011, ECF No. 242-4.) Alternatively, the Defendants have argued that Begualg never sought a translation of the Purchase Agreement from anyone, and should therefore be charged with knowledge of its contents. (Mot. Dismiss 9, ECF No. 413.) This too is a disputed fact, as Rojas, Begualg's agent, testified that he had Interinvestments's agents read and translate the Purchase Agreement, although not verbatim. (Rojas Dep. 224:19-25; 225:5-9; 226:25-227:14; 227:25-228:9, June 23, 2011, ECF No. 242-4.)

The Defendants rely on the case of *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311 (Fla. Dist. Ct. App. 1985) ("*Benton*"), to support their argument. *Benton* holds that "a party who voluntarily executes a document knowing it is intended to establish contractual relationships between the parties but without reading it is bound by its terms in the absence of coercion, duress, fraud in the inducement or some other independent ground justifying rescission." *Benton*, 467 So. 2d at 312. Here, Begualg has essentially alleged fraud in

4

the factum, a claim which if proven may justify rescission. Specifically, Begualg has asserted that it believed that Interinvestments was its agent while in actuality, Interinvestments was covertly working with the other Defendants. Begualg allegedly relied on Interinvestments to review the contracts and to interpret them. Interinvestments advised Begualg that the contracts were completely consistent with all of the Defendants' pre-contractual promises. As it turned out, the contracts were completely inconsistent in many ways, containing material terms that stated the exact opposite of what the Defendants had promised Begualg in the negotiations, and what Interinvestments allegedly confirmed were contained in the contracts.

The disputed issues of fact in this matter are not analogous to the facts in *Benton*. In *Benton*, "[t]here was no allegation or testimony whatsoever that the [defendants] prevented [the plaintiff] from reading the contract or induced her to refrain from reading it or in anyway prevented her from reading it or having it read to her by a reliable person of her choice." *Benton*, 467 So. 2d at 313. Here, Begualg has provided record citations to support its allegations that the Four Seasons Defendants and Interinvestments conspired to prevent Begualg from reading the contract or induced it to refrain from reading it, other than the review conducted by Interinvestments – which was allegedly grossly misleading, in furtherance of the fraudulent scheme.

As this Court has previously explained, based on Begualg's allegations in this case – that the contracts were in English, that Begualg was not fluent in English, and that it relied on its agent, Interinvestments (who turned out to be collusion with the other Defendants), to translate the material terms of the contract – this matter is the arena of fraud in the *factum* as described in *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998 (11th Cir. 1986). "Under this theory no contract existed between the parties." *Id.* at 999. "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 1999). However, "[w]here misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible. In such a case there is no contract at all." *Cancanon*, 805 F.2d at 999 (citing Restatement (Second) of Contracts § 163 (1977)). The current Restatement of Contracts provides an illustration that is helpful, given the allegations in this case:

> A and B reach an agreement that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms that are different from those agreed upon and induces B to sign it by telling him that it contains the terms agreed upon and that it is not necessary for him to read it. . . . B is blind and gets C to read the writing to him, but C, in collusion with A, reads it wrongly. B's apparent manifestation of assent is not effective.

Restatement (Second) of Contracts § 163, illustrations 3-4 (1981). If Interinvestments, acting as the clandestine agent for the Four Seasons Defendants, advised Begualg that the contracts included everything that had been previously discussed, when in fact the contracts contained completely contrary provisions then there was "ineffective assent to the contract." *Cancanon*, 805 F.2d at 1000.

### B. Based On The Facts In This Case, There Is A Disputed Issue As To Whether Begualg Was On Inquiry Notice Of The Alleged Fraud.

The Defendants also argue, again, that Begualg was on inquiry notice of the alleged fraud when the rental units did not produce the promised return on the investment, and/or when they were not advertised on the Four Seasons's website. This remains a fact dispute. Riojas has testified that he anticipated that there would reasonably be some lag time before the rental properties became profitable, and that his initial concerns about less than expected returns were explained away by the Defendants. (Riojas Dep. 250:16-251:5, June 23, 2011, ECF No. 242-4.) Simental has also testified that the Defendants repeatedly provided her with plausible excuses as to why there was a delay in generating the promised returns. (Simental Dep. 180:22-181:10, June 7, 2012, ECF No. 534-2.) There is also evidence that the Four Seasons's website was not operational in 2003, and it is not clear when the website became operational. (*See* Riojas Aff. ¶ 18, ECF No. 315-1.)

Given this evidence, there are disputed issues of fact as to (1) whether Begualg's failure to discover the fraud under these circumstances was reasonable, and (2) whether the Defendants' allegedly fraudulent reassurances convinced Begualg to delay filing suit. Under the first instance the Delayed Discovery Doctrine may toll the statute of limitations; while under the second circumstance the Doctrine of Equitable Estoppel may toll the statute of limitations. *See Black Diamond Properties, Inc. v. Haines*, 69 So. 3d 1090, 1094, 1094 n.2 (Fla. Dist. Ct. App. 2011).

### C. There Is Some Evidence To Support Begualg's Allegations That Defendant Interinvestments Coordinated And Conspired With The Other Defendants To Defraud Begualg.

The Defendants next argue that "there is not a shred of evidence that Interinvestments conspired with [the other] Defendants in defrauding Interinvestments's own client." (Mot. Summ. J. 6, ECF No. 413.) Begualg has provided numerous examples of circumstantial evidence that Interinvestments was working in coordination with the other Defendants. (Pl.'s Resp. Def.'s Stmt. Undisputed Facts ¶ 6, ECF No. 502.) Perhaps the most compelling evidence is the testimony from Simental regarding the circumstances surrounding the signing of the rental program agreement. According to Simental, she asked specific questions about the rental program agreement to Julian Leon Velarde, an agent of the Four Seasons Defendants. (Simental Dep. 50:1-13, June 6, 2012, ECF No. 534-1.) Velarde responded to her questions, indicating which paragraph of the rental program agreement contained the terms that he was describing to her. (*Id.*) Simental explained that she would then rely on Emilio Cardenal, an agent of Interinvestments, to read the agreement and confirm what Velarde was telling her. (*Id.*) As it turned out, according to Begualg, Velarde's representations were entirely misleading as the agreement actually read the complete opposite of many of his alleged assertions. Accepting Simental's testimony as true, this is compelling evidence that Cardenal and Velarde were working together in order to deceive Begualg. Accordingly, Begualg has presented some evidence that Interinvestments conspired with the other Defendants in defrauding Interinvestments's own client.

### D. The Defendants Have Failed To Show That There Is No Genuine Issue Over The Issue Of Damages, Even If The Plaintiff's Damages Expert Is Excluded.

The Defendants have separately moved to exclude the testimony from the Plaintiff's damages expert, Rodolfo J. Aguilar. Through their Motions for Summary Judgment, the Defendants argue that because the Plaintiff's damages expert's testimony is not reliable, "the essential damages element of each of the Plaintiff's claims must fail as a matter of law." (Mot. Summ. J., 17, ECF No. 418.) The entirety of the Defendants' argument is that Aguilar's testimony must be precluded since it is not reliable and because it is based on improper speculation. Even assuming, for the sake of argument, that Aguilar's testimony is excluded in this matter, the Defendants have failed to argue or explain why the Plaintiff would not be able to present other evidence to the jury to prove-up its damages claim. It seems plausible, given the

extensive discovery and the numerous depositions in this case, that sufficient evidence exists to allow the Plaintiff's to establish their damages claim, even without the use of an expert witness. *See Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 675 (Fla. Dist. Ct. App. 2011) ("Under Florida law, an inability to establish the amount of lost profits with absolute exactness will not defeat recovery.") (internal quotation omitted).

The Defendants have not made any argument that this is the type of case, or that these are the type of damages, for which an expert's opinion is required. Even if this Court were to accept the Defendants' argument that Aguilar's opinions should be excluded, it does not necessarily follow that there is no other evidence to establish Begualg's damages. Consequently, the Defendants have failed to carry their initial burden in moving for summary judgment.

## IV. CONCLUSION

Having considered the motions, the record, and the relevant legal authorities, it is **ORDERED and ADJUDGED** as follows:

1. Defendants FSM Hotel, LLC, Terremark Brickell II, Ltd., Millennium Partners, LLC, Millennium Partners Florida Property Management, LLC, and Terremark Brickell II, Inc.'s Motion for Summary Judgment (ECF No. 413) is **DENIED**.
2. Defendants Four Seasons's Motion for Summary Judgment (ECF No. 418) is **DENIED**.
3. Defendant's Motions for Hearing (ECF Nos. 421 & 416) are **DENIED**.
4. Defendant Interinvestments' Motion for Summary Judgment (ECF No. 297) is **DENIED as moot**, in light of the stipulation of dismissal as to this Defendant.
5. Relatedly, Plaintiff's Motion to Strike (ECF No. 496), Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 504), Defendants' Motion to Strike (ECF No. 535), and Defendant's Motion to Strike (ECF o. 537) are all **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on November 28, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*Counsel of record*