UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-22153-Civ-SCOLA

BEGUALG INVESTMENT
MANAGEMENT, INC., *et al.*,

    Plaintiffs,
vs.

FOUR SEASONS HOTEL LIMITED, *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS *IN LIMINE*

This case involves allegations of fraud and breach of contract relating to Begualg's purchase of several condominium units in Miami, Florida. The parties have filed several motions *in limine*. Specifically before the Court at this time is: (1) Defendants' Motion *in limine* to exclude evidence of statements that contradict written agreements (ECF No. 335 & 343), (2) Defendants' Motion *in limine* to exclude reports from Hotel Information Services, Inc. (ECF No. 344), (3) Begualg's Motion *in limine* to exclude references to Amaranta Orozco (ECF No. 412), and (4) Begualg's Motion *in limine* regarding references to accounting matters of *El Partido de la Sociedad Nacionalista* (ECF No. 346). For the reasons explained in this Order, all four of the motions *in limine* are denied.

### LEGAL STANDARDS

A motion *in limine* is made before a trial has begun for the purpose of excluding or including certain evidence. 20 Am. Jur. *Trials* 441 § 2 (1973). *In limine* rulings are not binding on a trial court and remain subject to reconsideration during course of trial. *Stewart v. Hooters of Am., Inc.*, 04-40-T-17, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial. *Id.* Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* "[A] court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (Middlebrooks, J.).

## DISCUSSION

1. <u>Defendants' Motion *In Limine* To Exclude Evidence Of Statements That Contradict Written Agreements Is Denied.</u>

The Defendants want to exclude any statements that contradict the terms of the parties' subsequent written contracts. In support, the Defendants cite a body of case law that stands for the general proposition that a person may not reasonably rely on representations that are expressly contradicted by later written agreements. This argument fails because of the nature of Begualg's claims.

The essence of Begualg's case is that the Defendants, acting in concert, made a number of false promises in order to induce Begualg into purchasing several condominium units. Begualg, whose agents only speak Spanish, allegedly relied on Interinvestments to review the English-only contracts and to interpret them. It is alleged that Interinvestments, in collusion with the other Defendants, advised Begualg that the contracts were completely consistent with all of the pre-contractual promises. If Begualg is believed, the contracts were completely inconsistent in many ways, containing material terms that stated the exact opposite of what the Defendants had promised Begualg in the negotiations.

As has been previously noted by the Court, Begualg's allegations here are analogous to an illustration in the current Restatement of Contracts.

> A and B reach an agreement that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms that are different from those agreed upon and induces B to sign it by telling him that it contains the terms agreed upon and that it is not necessary for him to read it. . . . B is blind and gets C to read the writing to him, but C, in collusion with A, reads it wrongly. B's apparent manifestation of assent is not effective.

Restatement (Second) of Contracts § 163, illustrations 3-4 (1981).

Under these circumstances, the Defendants legal position – that a person may not reasonably rely on representations that are expressly contradicted by subsequent written agreements – is not applicable. Parol evidence, namely a Defendants' contrary statements, are admissible to establish that a contract was procured by fraud. *Nobles v. Citizens Mortg. Corp.*, 479 So. 2d 822 (Fla. 2d DCA 1985); *accord Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1531 (11th Cir. 1983) ("[T]he parol evidence rule has no application where the claim is for fraudulently inducing a party to enter into the writing.").

2. Defendants' Motion *In Limine* To Exclude Reports From Hotel Information Services, Inc. Is Denied.

Reports containing hotel marketing data, prepared by a non-party vendor, are admissible through a hearsay exception. In a separate, state-court action, which involved similar allegations but different plaintiffs, Hotel Information Services, Inc. was hired to covertly contact the Four Seasons Hotel. The purpose was to determine if Four Seasons was appropriately marketing the plaintiffs' condominium units. Hotel Information Services is a company that conducts hotel market research and analysis. In other words, Hotel Information Services calls hotels using a pretext to gather information from the hotels and to determine how the hotels respond to various types of inquiries.

Hotel Information Services made several calls to the Four Seasons, each time pretending to be a potential customer presenting a scenario for which the plaintiffs' condominium units would be a suitable match. In nearly every instance, the Four Seasons reservation staff did not offer the condominium units as a solution for the customer's needs. The results of these phone calls were recorded in a series of reports prepared by Hotel Information Services.

The Defendants argue that the reports are inadmissible because they consist of double hearsay. The first level being the statements made by the Four Seasons's employees, the second being the reports of those statements. The statements made by the Four Seasons's reservation staff are not hearsay because they are an admission of a party opponent and being offered against the Four Seasons. *See* Fed. R. Evid. 801(d)(2)(D). The reports prepared by Hotel Information Services are hearsay, but they are admissible under the business record exception.

Records which are "kept in the course of a regularly conducted business activity" are admissible through a hearsay exception. Fed. R. Evid. 803(6). Under the exception, a report of an event may be admitted into evidence if it was made, near the same time of the event, from information transmitted by someone with knowledge. *Id.* It is also important that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*

Hotel Information Services's reports were made shortly after the phone calls were placed. These reports are based upon information transmitted by members of the Four Seasons's reservation staff who had personal knowledge. The Defendants argue that the reports should be excluded because they were prepared in anticipation of litigation. The Defendants reason that this indicates a lack of trustworthiness. Ordinarily, reports "prepared for purposes of litigation"

are not admissible under the business record exception. *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006). But, the unique nature of Hotel Information Services's business model makes this situation different. There is no evidence to suggest that Hotel Information Services was aware that it was preparing a report to be used in a lawsuit. (*See* Rothwell Dep. 8:9-18; 10:6-15, ECF No. 480-1.) Hotel Information Services simply followed its usual business practice in gathering market data about the Four Seasons. The Hotel Information Services's reports are admissible.

3. Begualg's Motion *In Limine* To Exclude References To Amaranta Orozco And Related Matters Is Denied.

Begualg wants to prevent the Defendants from suggesting that Amaranta Orozco had a romantic affair with Gustavo Riojas. Orozco is listed as a purchaser, along with Riojas, for one of the condominium units. Begualg claims that the Defendants' questions about Orozco suggest that Orozco and Riojas had an inappropriate romantic relationship. Begualg argues that any evidence about Orozco is irrelevant, or if relevant would be unfairly prejudicial, misleading to the jury, or would confuse the issues. The Defendants agree that any suggestion of an inappropriate romantic relationship between Orozco and Riojas would be improper. But the Defendants assert that some reference to Orozco is relevant and necessary since she is listed as a purchaser of one of the condominium units.

Begualg's primary concern – that evidence of Orozco will be introduced to suggest an inappropriate romantic relationship – is alleviated by the Defendants' concession that such a purpose would be improper. The determination of whether *any* evidence regarding Orozco may be admitted will be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *See Stewart v. Hooters of Am., Inc.*, 04-40-T-17, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). This motion *in limine* is denied.

4. Begualg's Motion *In Limine* Regarding References To Accounting Matters Of *El Partido de la Sociedad Nacionalista* Is Denied.

Evidence regarding a corruption investigation and sanctions by Mexican election authorities against a political party headed by Begualg's principals is not clearly inadmissible. The principals of Begualg, Gustavo Riojas and Bertha Simental, were once high-ranking officials in a Mexican political party, *El Partido de la Sociedad Nacionalista*. In 2003, Mexican election authorities were investigating *la Sociedad Nacionalista* for alleged improper payments made to two companies owned by Riojas. In December 2003, shortly after Begualg closed on the

condominium units in this case, Mexican authorities sanctioned and fined *la Sociedad Nacionalista* for these improper payments. The fines were for over $4 million (USD).

The Defendants want to offer evidence about the investigation and fines involving *la Sociedad Nacionalista*. According to the Defendants, this evidence makes it less probable that Riojas (and by extension Begualg) was defrauded. The argument goes, Riojas made the imprudent decision to purchase the condominium units without first having the contract translated into Spanish for him, or having an attorney review and explain the contract to him because *la Sociedad Nacionalista* was about to sanctioned. The Defendants will ask the jury to infer that Riojas wanted to invest the money before it was seized by the Mexican authorities.

The evidence of the investigation into and sanctions against *la Sociedad Nacionalista* is not clearly inadmissible. This is sort of evidentiary question that should be deferred until trial to allow questions such as foundation, relevancy, and prejudice to be resolved in context. *See Stewart v. Hooters of Am., Inc.*, 04-40-T-17, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). This motion *in limine* is denied.

## CONCLUSION

For the reasons explained above, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion *in limine* to exclude evidence of statements that contradict written agreements (ECF No. 335 & 343) is **DENIED**.

2. Defendants' Motion *in limine* to exclude reports from Hotel Information Services, Inc. (ECF No. 344) is **DENIED**.

3. Plaintiff's Motion *in limine* to exclude references to Amaranta Orozco and related matters (ECF No. 412) is **DENIED**.

4. Plaintiff's Motion *in limine* regarding references to accounting matters of *El Partido de la Sociedad Nacionalista* (ECF No. 346) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on February 27, 2013.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*Counsel of record*