UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-22153-Civ-SCOLA

BEGUALG INVESTMENT
MANAGEMENT, INC.,

    Plaintiff,
vs.

FOUR SEASONS HOTEL LIMITED, *et al.*,

    Defendants.
_____/

## **OMNIBUS ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES**

THIS MATTER is before the Court on the Defendants' Motion to Exclude Plaintiff's Expert Witness Scott Brush (ECF No. 341) and Defendants' Motion to Exclude Plaintiff's Expert Witness Rodolfo J. Aguilar (ECF No. 342). For the reasons explained in this Order, the motion to exclude Scott Brush is granted in part and denied in part. The motion to exclude Rodolfo J. Aguilar is denied.

### BACKGROUND

This case involves the purchase of several condominium units in Miami, Florida, and the enrollment of those condominium units in a Rental Program Agreement. Begualg Investment Management, Inc., is proceeding on two inconsistent, alternative theories of liability: fraud and breach of contract. The Defendants in this case are Four Seasons Hotel Limited, Millennium Partners, LLC, Terremark Brickell II, Limited, FSM Hotel, LLC and Interinvestments Realty, Inc.

On one hand, the Defendants are alleged to have acted in concert making a number of false promises to Begualg. The purpose of this purported conspiracy was to trick Begualg into purchasing multiple condominium hotel units under a contract that contained terms that were materially different from those negotiated by the parties. If successful in this theory of liability, the purchase and rental agreements would be void. Alternatively, Begualg alleges that the Defendants have breached the terms of the Rental Program Agreement. Under the Rental Program Agreement, the condominium hotel units would be managed, maintained, marketed, and rented by the Four Seasons Hotel. Essentially, the breach-of-contract allegations are that the

Defendants have not used reasonable commercial efforts to market Begualg's condominium units. If successful under this theory of liability, Begualg could recover any damages caused by the Defendants' wrongful conduct.

In support of its breach-of-contract theory, Begualg has proffered several expert witnesses. The Defendants have moved to exclude Begualg's hotel expert and its damages expert. The argument is that these experts are not qualified to give the opinions they are offering. The Defendants also contend that the experts' methodologies are flawed. For these reasons, the Defendants argue these experts should not be permitted to present their opinions to the jury.

## LEGAL STANDARDS

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court determining the admissibility of expert testimony under Rule 702 must engage in a three-part inquiry, considering whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

It is not the role of the trial court to make conclusions about the persuasiveness of the expert's opinions, rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) "[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Rosenfeld*, 654 F.3d at 1193 (quotations/citations omitted).

**DISCUSSION**

The briefing on the challenges to these experts has revealed a potential misconception by Begualg. At times, Begualg's arguments suggest that it may disregard the terms of the parties' contracts based upon its fraud allegations. In other words, Begualg appears to be attempting to infuse its fraud claims into its breach of contract claims. The purpose of this strategy seems to be to, in effect, rewrite the parties' agreements. Revision of the contracts is not the proper remedy for the type of fraud alleged here. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999 (11th Cir. 1986) (explaining that under a fraud-in-the-factum theory a contract is void as if "no contract existed between the parties").

The Court has previously addressed this issue in ruling on the Defendants' motion to dismiss. (Order 9, dated Apr. 5, 2012, ECF No. 303.) The Court noted that Begualg was entitled to plead its fraud claims and its breach of contract claims *in the alternative*. The Court explained that if Begualg is successful in proving its fraud allegations, including the fact that Interinvestments was an undisclosed agent of the other Defendants, then the contracts between the parties would be void. (*Id.*) Obviously, Begualg could not then succeed on a breach of contract claim because there would no longer be any contracts to be breached.[1] On the other hand, if Begualg is unable to prove its fraud claims its breach-of-contract claims will be solely grounded on the terms of the parties' written agreements. Begualg has not presented any argument or legal authority to support the suggestion that it may rewrite the terms of the parties' agreements to incorporate the Defendants' allegedly fraudulent statements.

A. *Expert Witness Scott Brush*

Scott Brush is offered as Begualg's expert on the hotel industry. Brush presents several opinions relating to the marketing, promotion and pricing of the condominium units. The starting point for Brush's opinions is the language in the Rental Program Agreement. The Rental Program Agreement reads that the Defendants "shall use reasonable commercial efforts" to rent Begulag's condominium units. Brush's opinions go to whether the Defendants' efforts in promoting the rental of Begulag's condominium units were reasonable.

The Defendants take particular issue with Brush's opinion that it was unreasonable for the Defendants not to have marketed the condominium units through the Hotel's central

---

[1] Begualg seems to have embraced this point. It has incorporated this line of reasoning in several of its arguments in this case. (*See, e.g.*, Pl.'s Resp. 4 n.2, ECF No. 347.)

reservation system, the Hotel's website, or a third party reservation system. The Defendants argue that through the Rental Program Agreement the parties agreed that the condominium units would not be marketed through the Hotel's central reservation system, the Hotel's website, or a third party reservation system. The Rental Program Agreement reads: "Reservations will not be accessed through the central reservation system and databases maintained by [Four Seasons] and its Affiliates." (Rental Agreement 6, ECF No. 1-8.)

Most of Brush's conclusions are not directly contradictory of the Rental Program Agreement. The Rental Program Agreement contains no express provision regarding the marketing of the condominium units on the Hotel's website or a third party reservation system because neither appear to be databases maintained by Four Seasons or any of its affiliates. Brush's opinions that the Defendants should have advertised the condominium units on the Hotel's website and a third party reservation system are permissible.

This testimony is permissible, despite the apparent misstatement by Brush in his deposition that the Rental Program Agreement excluded marketing of the condominium units through a third party reservation system. Brush later corrected this mistake. While likely fodder for cross-examination, Brush's mistaken belief about the terms of the Rental Program Agreement is not a sufficient basis to exclude him as an expert in this case.

Brush may not give an opinion that directly conflicts with unambiguous language in the Rental Program Agreement. Brush opines that it was unreasonable for the Defendants to not market the condominium units on the Hotel's central reservation system. But the Rental Program Agreement clearly reads that reservations of the condominium units will not be accessible through the Hotel's central reservation system. This opinion cannot stand. *See Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1307 (S.D. Fla. 2008) (Seitz, J.) (excluding an experts conclusion which ignored contractual provisions).

The Defendants also argue that Brush is not competent to render expert opinions regarding condominium hotel units. This argument is based on Brush's qualifications, and his methodology in arriving at his opinions in this case. Finally, the Defendants assert that even if Brush's opinions are admissible, they should be excluded under Federal Rule of Civil Procedure 403. The Defendants reason that the opinions would be likely to confuse or mislead the jury.

Brush is qualified to render an expert opinion in this case, and his methodology is adequate to support his conclusions. Brush has over forty years of experience in the hotel

industry.  He has worked in management, as a consultant, has served as an expert in litigation, and has taught college-level classes on the subject.  He has authored several publications regarding marketing in the hospitality industry.  In preparing to render his opinions in this case, he analyzed various reports and data groups containing information regarding occupancy rates, rental rates, and revenues.  Brush prepared a compilation of this data and compared it to the Four Seasons Hotel as well as two groups of similarly situated hotels.  The Defendants' attacks of Brush's qualifications, his methodology and his conclusions are more properly reserved for cross-examination.  *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 596 (1993).  Similarly, Brush's opinions should not be excluded under Federal Rule of Evidence 403.

The Defendants' motion to exclude Brush is granted in part, and denied in part.  Brush's isolated opinion regarding marketing the condominium units through the Hotel's central reservation system is excluded.  Except for this single exception, Brush's expert opinions will not be excluded, and may be presented to the jury.

### B. Expert Witness Rodolfo J. Aguilar

Rodolfo J. Aguilar's testimony is presented regarding the amount of damages Begualg has suffered because of the Defendants' alleged breach of the Rental Program Agreement.  Aguilar's opinions on damages are predicated upon several underlying conclusions.  For example, in order for Aguilar to calculate how much money Begualg has lost due to the Defendants' allegedly overpricing the condominium units, Aguilar must assume an appropriate rate at which the condominium units should have been offered.  The Defendants take issue with four of Aguilar's underlying conclusions: occupancy rate, rental rates, expenses, and capitalization rates.

#### 1. Occupancy Rates

Aguilar's damages calculations are based on his conclusion that the occupancy rate for the condominium units would have been the same as the occupancy rate for regular hotel units if not for the Defendants' misconduct.  Although Aguilar's testimony on how he reached this conclusion is shaky, he ultimately explains that he vetted this conclusion through Begualg's hotel expert, Scott Brush.  (Aguilar Dep. 57: 8-21, Feb. 28, 2012, ECF No. 342-1.)

An expert witness's testimony may be formulated by using facts, data and conclusions of other experts so long as the testifying expert is presenting some independent findings.  *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) (Ungaro, J.).  Since Aguilar

has based his conclusions regarding occupancy rates on Brush's opinions, his testimony on this point is admissible. The Defendants clearly have a strong cross-examination ready for Aguilar on this issue. That cross-examination is the proper place to test Aguilar's findings. *See Daubert*, 509 U.S. at 596.

    2. Rental Rates

Aguilar's damages calculations are based on his conclusions of what reasonable rental rates for the condominium units should have been. Aguilar concludes that the rental rate for the one-bedroom condominium units should have been one-and-a-half times the amount charged for a one-bedroom hotel unit. Similarly, Aguilar concludes that the rental rate for the two-bedroom condominium units should have been two-and-a-half times the amount charged for a one-bedroom hotel unit.

When questioned about these conclusions, Aguliar indicated that he confirmed these rates after speaking with Scott Brush. (Aguliar Dep. 55:9-16; 59:8 – 60:7, Feb. 28, 2012, ECF No. 342-1.) Because Aguilar is permitted to rely on facts, data and conclusions of other experts, his rental rate conclusions, although unsteady, are admissible. Just because the Defendants appear to have a robust cross-examination available to them does not mean the expert should be excluded. *See Daubert*, 509 U.S. at 596.

    3. Expenses

The Defendants argue that Aguilar's opinions regarding the expenses factored into his damage conclusions are contrary to the parties' contracts. For example, Aguilar testified that he did not incorporate certain expenses required by the Rental Program Agreement and the condominium documents. (*See* Aguilar Dep. 71:18 – 73:6; 140:6-23, Feb. 28, 2012, ECF No. 342-1.) The reason given for not including these expenses was his opinion that the expenses were excessive. (*Id.*) When asked the basis for his opinion, he responded "Based upon my brain." (*Id.* at 141:1; *see also* 75:23-25 ("Q: What [expenses] you charged is based simply upon the world according to Dr. Aguilar? A: That's correct.").)

Despite Aguilar's seemingly clear assertion that he did not include in his calculations certain expenses that were agreed to by the parties, Aguilar later clarified these statements. In response to questions from Begualg's attorney, Aguilar said that he did factor into his calculations expenses required by the Rental Program Agreement and condominium documents. (Aguilar 57:2-17, Mar. 1, 2012, ECF No. 342-2.) Since this Court may not make credibility

determinations regarding expert testimony, Aguilar's testimony regarding his expense calculations is admissible. It is the function of a jury to parse out Aguilar's paradoxical testimony.

4. Capitalization Rates

The Defendants take issue with the capitalization rates selected by Aguilar. When pressed, Aguilar essentially said that the capitalization rates were selected based on his training and experience in the field of real estate appraisals. (*See, e.g.*, Aguilar Dep. 142:22 – 143:8, Feb. 28, 2012, ECF No. 342-1.) Aguilar further indicated that he confirmed the capitalization rates through a calculation involving the net operating income and the purchase price of a particular condominium unit. (Aguilar Dep. 71:1-14, Mar. 1, 2012, ECF No. 342-2.)

Aguilar is qualified to testify regarding the capitalization rates he selected to form the basis of his damages opinions. The Defendants' vigorous cross-examination and presentation of contrary evidence is the appropriate method of attacking Aguilar's shaky but admissible testimony. *See Daubert*, 509 U.S. at 596. This is also true regarding the Defendants' challenges to Aguilar's method of valuation.[2]

#### CONCLUSION

For the reasons explained above, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion to Exclude Testimony of Plaintiff's Expert Witness Scott Brush (ECF No. 341) is **GRANTED in part and DENIED in part**, consistent with this Order.
2. Defendants' Motion to Exclude Testimony of Plaintiff's Expert Witness Rodolfo J. Aguilar (ECF No. 342) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on March 6, 2013.

ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The Court has also considered and rejects the Defendants' argument that Aguilar should be excluded based upon his statements in connection with obtaining his temporary, Florida license. These are matters that go toward credibility and not toward his qualifications as an expert.